## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| PAUL WILSON, TYLER HOUSTON, and JAMES BESTERFIELD on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WHOLE FOOD MARKET, INC. and THE WHOLE FOODS MARKET INC., BENEFITS ADMINISTRATIVE COMMITTEE<br><br>Defendants. | **Civil Action No.: 1:25-cv-85**<br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Paul Wilson, Tyler Houston, and James Besterfield, individually and on behalf of the Class defined below of similarly situated persons, allege the following against Whole Food Market, Inc. ("Whole Foods") and the Whole Foods Market Inc., Benefits Administrative Committee (the "Committee") (collectively, "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.    It is both unfair and unlawful for companies like Whole Foods to impose discriminatory and punitive health insurance surcharges on employees who use nicotine products. This lawsuit challenges the Defendants' practice of imposing such surcharges on participants in the Whole Foods Market Group Benefit Plan (the "Plan"). Because Defendants' wellness program fails to comply with the strict regulatory requirements that wellness programs must meet to qualify for the safe-harbor exception under federal law, Defendants have subjected Plan participants to unlawful tobacco surcharges in violation of the Employee Retirement Income Security Act of 1974

("ERISA"). By circumventing the critical regulatory safeguards, Defendants have deprived participants of their rights under ERISA and undermined the protections intended to ensure fairness, nondiscrimination, and compliance in employer-sponsored wellness programs.

2.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans can only impose these surcharges in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago. The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, as opposed to being a "subterfuge for discriminating based on a health factor." The need for these safeguards is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues. The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs. The goal is to ensure that wellness programs operate equitably, promote genuine health improvements, and do not perpetuate systemic inequities within the workforce.

3.      Outcome-based programs,[1] such as smoking cessation programs, must offer a "*reasonable* alternative standard" for all individuals unable to meet the initial health requirement,

---

[1] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

ensuring access to the same "full reward," including avoiding the tobacco surcharge for the entire plan year. Put simply, a "reasonable alternative standard" is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). That means, even if an individual takes until the end of the year to complete the wellness program, he or she must be provided with retroactive reimbursements for the months the individual paid the surcharge prior to satisfying the alternative standard. The Departments made this requirement clear when they stated it is "[t]he intention of the Departments in these final regulations is that, regardless of the type of wellness program, *every individual participating in the program should be able to receive the full amount of any reward or incentive*, regardless of any health factor." 78 Fed. Reg. 33158, 33160 (emphasis added). Employers must also clearly communicate the availability of this alternative standard in all plan materials referencing tobacco-related premium differentials, including plan documents and summary plan descriptions ("SPDs").

4.      The Plan fails to offer the requisite reasonable alternative standard as mandated by law because it fails to provide "all similarly situated individuals" with the "full reward." The Plan makes clear that if participants complete the alternative standard, the surcharge will stop on a *prospective* basis but participants "will *not* receive a refund for any previous surcharge payments." By refusing to provide retroactive reimbursement, Defendants deny participants the opportunity to achieve the "full reward," as required by law. This failure prevents "all similarly situated individuals" from obtaining the "full reward," rendering the wellness program discriminatory and noncompliant with regulatory standards. Moreover, the Plan fails to meet the notice requirements necessary for a lawful wellness program. Materials describing the tobacco surcharge do not include sufficient disclosures about contact information or detailed guidance on how to participate in the

alternative program. It also neglects to inform participants that their physicians' recommendations for alternative standards will be accommodated. These omissions deprive participants of critical information needed to fully understand and exercise their rights under the wellness program. Because the wellness program does not meet the necessary criteria, Defendants cannot assert an affirmative defense that their wellness program is non-discriminatory, meaning the tobacco surcharge is unlawful and discriminatory in violation of ERISA.

5.      Plaintiffs are current and former employees of Whole Foods who paid, and continue to pay, the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed, and continues to impose, an additional financial burden on Plaintiffs and those similarly situated.

6.      Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for plan-wide equitable relief to prevent Whole Foods from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

**PARTIES**

7.      Plaintiff Paul Wilson is, and at all times mentioned herein was, an individual citizen of the State of California residing in the County of Los Angeles. Mr. Wilson is, and at all relevant times, was an employee of Whole Foods who paid the tobacco surcharge associated with the health insurance offered through his employer during his employment.

4

8.      Plaintiff Tyler Houston is, and at all times mentioned herein was, an individual citizen of the State of Kansas residing in the County of Sedgwick. Mr. Houston was an employee of Whole Foods until November 2022 who paid the tobacco surcharge associated with the health insurance offered through his employer during his employment.

9.      Plaintiff James Besterfield is, and at all times mentioned herein was, an individual citizen of the State of Missouri residing in the County of St. Louis. Mr. Besterfield was an employee of Whole Foods until December 2021 who paid the tobacco surcharge associated with the health insurance offered through his employer during his employment.

10.     Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

11.     Defendant Whole Foods is a leading global organic and natural foods supermarket chain headquartered in Austin, Texas, and is a wholly-owned subsidiary of Amazon.com, Inc. Whole Foods employs over 100,000 people globally and operates over 400 stores in North America.

12.     Upon information and belief, the Committee is an unincorporated association based in Austin, Texas. The Committee is a named fiduciary under the Plan

13.     At all times relevant to this lawsuit, Defendants operated one or more health and welfare plans which were available for Whole Foods employees. Recently filed public documents show the Plan has over 95,000 active participants as of January 1, 2024. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter

jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15.     This Court has personal jurisdiction over Defendants because they are headquartered in Texas and the claims of Plaintiffs and all others similarly situated arise from the acts and omissions of Defendants with respect to its activities and conduct concerning Plaintiffs within the State of Texas, and Defendants have purposefully availed themselves of the privilege of conducting business within the State of Texas.

16.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendants are headquartered in this District and this is a District in which Defendants may be found.

## FACTUAL BACKGROUND

### I.     DEFENDANTS' TOBACCO SURCHARGE VIOLATE ERISA'S ANTI-DISCRIMINATION RULE

#### A.  Statutory and Regulatory Requirements

17.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1). While the statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. §

1182(b)(2)(B)), these "wellness programs"— to qualify for the safe harbor exception — must strictly adhere to the mandated regulatory requirements.

18.     To avoid unlawful discrimination, ERISA § 702, 29 U.S.C. § 1182, mandates that plans meet the criteria outlined in the nondiscrimination regulations. These regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives, must meet detailed requirements to qualify for the safe harbor.

19.     As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status."[2] "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount*** of any reward or incentive, regardless of any health factor." *Id.* (emphases added).

20.     While ERISA permits employers to implement wellness programs that incentivize healthy behavior, the regulations mandate that the program must provide a *reasonable* alternative standard or waiver to individuals who fail to meet the initial health requirement. The Departments have made clear that wellness programs must not be "overly burdensome" or operate as a "subterfuge for discriminating based on a health factor." *See* 78 Fed. Reg. 33158, 33163.

21.     To start, wellness programs must genuinely promote health, not merely serve as a revenue generator. This "reasonable design" requirement is meant to ensure that the wellness program improves participants' health, is not "overly burdensome," and "is not a subterfuge for discrimination based on a health factor." *see* 29 C.F.R. § 2905.702(f)(4)(iii). Determining whether a wellness program is reasonably designed "is based on all the relevant facts and circumstances."

---

[2] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (emphasis added).

*Id.* Outcome-based wellness programs, such as smoking cessation programs, "must provide a reasonable alternative standard to qualify for the reward, for all individuals who do not meet the initial standard that is related to a health factor, in order to be reasonably designed." 78 Fed. Reg. 33158, 33163; *see* 29 C.F.R. § 2905.702(f)(4)(iv). Next, wellness programs must "be available to all similarly situated individuals." *Id.* Plans must provide a "reasonable alternative standard" to individuals who do not meet the initial health requirement, such as quitting tobacco use. The alternative, which could include participation in a smoking cessation program, must allow "the same, full reward." *Id.* In other words, participants must be provided with an avenue to avoid the tobacco surcharge for the entire plan year. Employers must also clearly communicate the availability of this alternative standard in all relevant plan materials that discuss a premium differential based on tobacco use. *Id.* at 33166; 29 C.F.R. § 2905.702(f)(4)(v).

22.     The regulations require plans and issuers to "disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including ***contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated*.**" 29 C.F.R. § 2590.702(f)(4)(v) (emphasis added). Further, the regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally ***required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents*** . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." 78 Fed. Reg. 33158, 33166. Plans that fail to provide retroactive reimbursements or adequate notice violate these requirements and do not qualify for the safe-harbor exception. *See id.*, 33160 ("these final regulations set forth criteria for a program of health promotion . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on

health status . . . . That is, these ***rules set forth criteria for an affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions") (emphases added).

**B. Defendants Cannot Avail Themselves of ERISA's Safe Harbor for Reasonable Wellness Programs**

23.    Defendants' wellness program violates ERISA and its implementing regulations by failing to provide participants with the "full reward" required under 29 C.F.R. § 2590.702(f)(v)(iv). Specifically, Defendants' wellness program imposes a tobacco surcharge without providing retroactive reimbursement or adhering to the strict notice and procedural requirements mandated by law.

24.    Under the Plan, tobacco users are charged a $20 surcharge per paycheck (increased to $30 in 2024), equating to an annual amount of approximately $520 ($780 for 2024). While participants may enroll in a tobacco cessation program, such as the Quit for Life program, completion of the program only removes the surcharge ***prospectively***. There is no provision for retroactive reimbursement, regardless of when participants complete the program, in direct violation of ERISA's requirement to provide the "full reward" to all similarly situated individuals.

25.    Plan materials explicitly state that participants who successfully complete the tobacco cessation program will pay non-tobacco user rates beginning the first of the following month. However, the Plan provides no mechanism for refunding surcharges already paid, as confirmed in the 2022 SPD, which states:

> "If you complete the tobacco cessation program, you will receive the non-tobacco user discount on your medical premium contributions effective the first of the month following your completion of the program, but ***you will not be eligible for the discount retroactive to the beginning of the calendar year***."

26.    Similarly, the 2024 Benefits Guide reiterates that participants who complete the program will not receive refunds for previously paid surcharges:

> "If you complete the tobacco cessation program on or after January 1, 2024, you will begin paying non-tobacco user contribution rates on the first of the following month; however, **you will not receive a refund for any previous surcharge payments**."

27.    By failing to provide retroactive reimbursements, Defendants deny participants the "full reward," rendering the wellness program discriminatory and noncompliant with ERISA's regulatory framework.

28.    Additionally, the Plan imposes higher rates on tobacco users for Voluntary Life and Accidental Death & Dismemberment ("AD&D") insurance, as well as for critical illness coverage. According to the 2024 Benefits Guide, tobacco users' attestations affect rates for these coverages for the entire calendar year, with no opportunity for mid-year adjustments based on cessation. Plaintiff Houston paid for critical illness coverage and paid more than his non-tobacco-using colleagues. These additional premium upcharges further compound the discriminatory financial burden placed on tobacco users, in violation of ERISA's anti-discrimination provisions.

29.    From at least 2021 through 2024, and, upon information and belief, for years prior, Defendants charged an annual tobacco surcharge. Each plan year, Defendants administered a policy on all participants who self-identify as someone who uses tobacco products with a periodic and regular surcharge ($20) that was deducted from each of their paychecks. Plaintiffs paid this surcharge during this period and many continue to pay it.

30.    Because Defendants failed to provide a *reasonable* wellness program that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year — their wellness program fails to comply with the regulatory requirements, and, in turn, the program cannot qualify for the safe-harbor exception. Accordingly, the Plan violates ERISA's anti-discrimination provisions.

### C. Defendants Failed to Provide the Required Notice to Participants

31.    As discussed, ERISA's implementing regulations require employers to clearly communicate the availability of a reasonable alternative standard to participants in all plan

materials discussing premium differentials, including the plan document and SPD. Defendants fail to meet these notification requirements in multiple respects.

32.     While the SPD and Benefits Guide mention a tobacco cessation program, these materials fail to disclose how participants can obtain additional contact information or guidance about enrolling in the wellness program. Further, these materials fail to provide any information on a reasonable alternative that would enable participants to avoid the surcharge for the entire year, violating the notice requirements. These materials also omit any mention that participants' physicians' recommendations will be accommodated, as required by ERISA's wellness program regulations. These deficiencies deprive participants of the information necessary to fully understand and exercise their rights

33.     Defendants also fail to include information about the wellness program in the Plan Document and, upon information and belief, Defendants have other communications regarding the tobacco surcharge and wellness program that do not address participants' rights to an alternative standard or the ability to eliminate surcharges retroactively.

### D.  Defendants' Self-Dealing and Mismanagement of Plan Funds

34.     Defendants control the administration of the tobacco surcharge, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks. These amounts are not placed in a trust account for the Plan but are instead deposited into Whole Foods' general accounts.

35.     By retaining these funds, Whole Foods earns interest on the withheld surcharges and reduces its own financial contributions to the Plan. This practice constitutes self-dealing and violates ERISA's fiduciary duty requirements, which mandate that Plan assets be managed exclusively in the interest of participants and beneficiaries.

36.     Defendants have fiduciary responsibilities to ensure that these funds are used to support coverage for participants' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendants increased Whole Foods's own bottom line allowing it realize

financial benefits it would not have otherwise realized without imposing these surcharges, in violation of ERISA's fiduciary duty standards. In sum, these practices demonstrate that Defendants' wellness program is an unreasonable, revenue-generating scheme disguised as a health initiative, directly contravening ERISA's requirements and purpose.

## CLASS DEFINITION AND ALLEGATIONS

37.    Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

38.    Plaintiffs propose the following Class and Subclass definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class** (the "**Tobacco Class**")
> All individuals residing in the U.S. who paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Whole Foods.
>
> **Critical Illness Subclass**
> All Tobacco Class members who paid higher premiums for Critical Illness insurance based on their or their spouse's status as a tobacco user in connection with their participation in a welfare plan offered by Defendants.

39.    Excluded from the Class are Whole Foods's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

40.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and Subclass before the Court determines whether certification is appropriate.

41.    The proposed Class and Subclass meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

42.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains thousands of participants who have

been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

43. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendants' tobacco surcharge discriminates against participants based on a health status related factor;

    b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

    c. Whether Defendants notified participants in all the plan materials describing the surcharge of the avenues by which participants could avoid the tobacco surcharge and obtain the "full reward";

    d. Whether Defendants' wellness program violates ERISA and the applicable regulations;

    e. Whether Defendants properly notified participants of the availability of reasonable alternative standard to avoid the tobacco surcharge;

    f. Whether Defendants provided the required statement that participants' personal physicians' recommendations would be accommodated;

    g. Whether Defendants breached their fiduciary duties by collecting and retaining the tobacco surcharge and additional premiums for insurance;

    h. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of its wellness program to ensure compliance with ERISA and applicable regulations;

    i. Whether Whole Foods breached its fiduciary duty by failing to properly monitor and overlook the activities of the Committee to ensure compliance with ERISA and the applicable regulations;

    j. The appropriate mechanisms to determine damages on a class-wide basis

44. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are

entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

45. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

46. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

47. Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendants will be allowed to profit from

their unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182)

48.    Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–47 of this Complaint.

49.    Defendants improperly impose an unlawful surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $20 per paycheck (and $30 starting in 2024) on participants who use tobacco, and by charging some participants more than others based on a health status-related factor, Defendants are violating ERISA § 702(b), 29 U.S.C. § 1182(b).

50.    29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on tobacco users, without offering a reasonable alternative standard that provides the "full reward" to "all similarly situated individuals," Defendants' wellness program fails to qualify under the safe-harbor exception and constitutes a discriminatory wellness program, discriminating against individuals like Plaintiffs who were designated as tobacco users.

51.     Defendants' imposition of the tobacco surcharge is a violation of ERISA § 702 and the implementing regulations, including but not limited to 29 C.F.R. § 2590.702(f)(4). Defendants' wellness program for tobacco users fails to provide retroactive reimbursement. Participants who complete the program may be able to avoid the surcharge once completing the program but on a *prospective* basis only. To comply with ERISA and the regulations, the Plan must issue retroactive reimbursements, regardless of when participants complete the program. By failing to provide an avenue for participants like Plaintiffs to obtain the "full reward" of the wellness program, Whole Foods failed to provide a compliant wellness program.

52.     Additionally, the Plan's tobacco wellness program does not provide the proper notice to participants. The Plan fails to provide contact information for obtaining a reasonable alternative standard and fails to provide the requisite statement that recommendations of participants' individual physicians would be accommodated. For failing to adhere to the regulatory notice requirements, Defendants' wellness program violates the implementing regulations and is discriminatory in violation of ERISA. Further, Defendants failed to include the requisite notice of the wellness program in the Plan document, in violation of the DOL Regulations

53.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and members of the Class may enforce pursuant to 29 U.S.C. § 1132(a)(3).

54.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT II
## BREACH OF FIDUCIARY DUTY
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

55.    Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–47 of this Complaint.

56.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

57.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendants chose to use Plan assets to exclusively benefit Whole Foods, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges and additional premiums for critical insurance coverage from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

58.    Each year, the Committee administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its wellness programs, including the decision to administer a wellness program in a manner that violated the regulations and ERISA, as discussed herein. Each year, the Committee exercised discretionary authority with respect to the administration and implementation of the unlawful wellness program by administering a wellness program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year and dictated the eligibility criteria and penalties for noncompliance, including the refusal to provide any retroactive reimbursement.

59.     The Committee controlled and disseminated the contents of the SPD and Benefits Guides, which fail to provide participants with contact information for the alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied that alternative standard; maintained a policy of refusing to reimburse surcharges that were improperly or unlawfully assessed; did not adequately account for individualized circumstances, such as participants' health conditions or physicians' recommendations; and did not notify participants that their physicians' recommendations would be accommodated with regard to Defendants' wellness program. These actions reflect the Committees active role in administering a discriminatory wellness program in violation of ERISA and applicable regulations.

60.     The Committee also breached its fiduciary duties by assessing and collecting the unlawful tobacco surcharges and increased premiums for critical illness and other insurances in violation of ERISA and the applicable regulations. To that extent, Committee breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. The Committee acted disloyally by causing Plaintiffs and members of the Class to pay tobacco surcharges and higher premiums for additional insurance coverage that were unlawful because they were associated with a non-compliant wellness program.

61.     ERISA also imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. In allowing the Committee to impose an unlawful tobacco surcharge in connection with a non-compliant wellness program in violation of ERISA, Whole Foods breached its fiduciary duties to supervise and monitor the Committee. Whole Foods also failed to monitor the frequency with which the Committee reviewed the terms of the wellness program to ensure compliance with ERISA.

62.     As a result of the imposition of the unlawful and discriminatory tobacco surcharges, as well as the higher premiums for insurance, Whole Foods enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendants breached their fiduciary duties by prioritizing their financial interests over the interests of Plan participants by deducting from participants'

paychecks the amounts of the surcharges without properly administering retroactive refunds for the tobacco surcharge to individuals who completed the wellness program. By administering the wellness program in a manner that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco wellness program, the Committee administered a program that disproportionately benefited Whole Foods at the expense of Plan participants. This practice resulted in an unjust enrichment to Whole Foods at the expense of Plan participants, demonstrating a failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

63.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Whole Foods caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). Whole Foods is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

64.    By retaining the amounts of the tobacco surcharges and higher premiums associated with additional insurance, Whole Foods increased its own monies and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with the "full reward" to which they are entitled, Whole Foods improperly benefitted from its own wellness programs at the expense of Plan participants.

65.    Defendants also breached their fiduciary duties by: failing to properly disclose material information about the wellness program to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not

19

conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness program (and the Plan) to ensure they properly complied with the regulatory requirements regarding the reasonableness of the program, the "full reward" to "all similarly situated individuals," in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiffs and the Class to incur unlawful and discriminatory surcharges. Had Defendants conformed with their fiduciary duties under ERISA, they would not have administered a non-compliant wellness program and/or would have reviewed the terms of the Plan and the wellness programs regularly to ensure they complied with ERISA and the implementing regulations.

66.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

67.     Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendants are liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through their violations, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, appointing Plaintiff Houston as Subclass representative, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharges and higher premiums for insurance coverage;

D. A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting an unreasonably restrictive wellness program that violated ERISA's anti-discrimination provisions and for failing to adequately monitor the actions of the Plan's fiduciaries and the wellness program to ensure the terms thereof complied with ERISA and the applicable regulations;

E. An Order requiring Defendants to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendants charged for the surcharges;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of its collection of the unlawful and discriminatory nicotine and vaccine surcharges;

J. Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges and increased premiums for additional insurance coverage are unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations;

disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L.  An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: January 17, 2025                    Respectfully submitted,


                                           **SIRI & GLIMSTAD LLP**

                                           By: /s/ *Walker D. Moller*
                                           _____
                                           Walker D. Moller
                                           Oren Faircloth (*pro hac vice* forthcoming)
                                           Scott Haskins (*pro hac vice* forthcoming)
                                           745 Fifth Avenue, Suite 500
                                           New York, New York 10151
                                           Tel: (212) 532-1091
                                           E: wmoller@sirillp.com
                                           E: ofaircloth@sirillp.com
                                           E: shaskins@sirillp.com

                                           *Attorneys for Plaintiffs and the Proposed Class*