**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| PAUL WILSON, TYLER HOUSTON, and JAMES BESTERFIELD on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No.: 1:25-cv-00085-DAE |
| v. | ) ) | |
| WHOLE FOOD MARKET, INC., and THE WHOLE FOODS MARKET, INC. BENEFITS ADMINISTRATIVE COMMITTEE, | ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Whole Foods Market, Inc. ("WFM") and the WFM Benefits Administrative Committee (the "Committee") (collectively, "Defendants") respectfully submit this motion to dismiss Plaintiffs' Class Action Complaint ("Complaint") for lack of standing under Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Paul Wilson, Tyler Houston, and James Besterfield's ("Plaintiffs'") Complaint is one of many new class action litigations attacking the validity of tobacco wellness programs that have been offered under employer-sponsored group health plans for decades. Plaintiffs challenge the design of a tobacco wellness program created to incentivize participants to stop using tobacco offered in connection with the Whole Foods Market Group Benefit Plan ("Plan"), claiming that Defendants created and operated the program in violation of Sections 404, 406, and 702(b) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs' Complaint, however, relies on a selective reading of ERISA's statutory text paired with a blind eye to the fact that the terms of this Plan's wellness program comport even with Plaintiffs' tortured reading of ERISA.

1

As a threshold issue, Plaintiffs lack constitutional standing because they do not allege that they ever attempted to participate or participated in the tobacco cessation program.  Moreover, even if Plaintiffs have standing to assert their claims, their Complaint lacks substantive merit because the Plan's tobacco wellness program complies with ERISA.  Nothing requires WFM to provide retroactive refunds of tobacco surcharges or a more detailed notice of the wellness program than what was provided by WFM.  Finally, Count II, which asserts fiduciary breach and prohibited transaction claims, is not plausible because the design of the challenged program is not a fiduciary act, and Plaintiffs do not allege a loss to the Plan.  Plaintiffs' Complaint should be dismissed.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

**I.      WFM, THE PLAN AND WFM'S TOBACCO-FREE WELLNESS PROGRAM.**

WFM is a leading global organic and natural foods supermarket chain.  WFM's related entities employ over 100,000 people globally and operate over 500 stores in North America.  Compl., ¶ 11, ECF No. 1; www.//media.wholefoodsmarket.com/about/.  WFM sponsors the Plan to provide health benefits for eligible employees and their dependents.  *Id.* at ¶ 13.

Among many other benefits to participants, the Plan includes a wellness program to promote healthy lifestyles and prevent diseases by living tobacco free.[1]  The program is simple

---

[1] Declaration of Stacey Cerrone ("Cerrone Decl."), Ex. A, 2022 Summary Plan Description ("SPD") at p. 11, Ex. B 2024 Benefits Enrollment Guide at pp. 32-37.  Plaintiffs' Complaint directly references and quotes several plan documents, including the 2022 SPD and 2024 Benefits Guide.  *See* Complaint, ¶¶ 25-26, 32, 59.  The Court may therefore take judicial notice of these documents when evaluating Defendants' Motion to Dismiss.  *See Ranch, LLC v. Blue Cross,* No. SA-19-CV-1211-OLG (HJB), 2023 U.S. Dist. LEXIS 137344, at *12 (W.D. Tex. June 6, 2023) ("In deciding a Rule 12(b)(6) motion to dismiss, '[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'") (quoting *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022)); *see also Franks v. Prudential Health Care Plan,* 164 F. Supp. 2d 865, 872 (W.D. Tex. 2001) (considering plan documents attached to a defendant's motion to dismiss because they were referenced in the plaintiff's complaint and were central and necessary to its claims).  Those documents are attached to the accompanying Declaration of Stacey Cerrone, contemporaneously filed herewith.

and straightforward.  Under this program, Plan participants certify during yearly open enrollment whether they have used tobacco products over the past six months.  Cerrone Decl., Ex. A at pp.10-11, Ex. B at pp. 33-37.  Those that certify as such pay a tobacco surcharge for the medical plan and other benefits including critical illness insurance for the next Plan year.  *Id., see also* Compl., ¶¶ 24-26, 28.  If tobacco users cannot stop using tobacco products, they can still avoid the tobacco surcharge by completing WFM's tobacco cessation program, Quit for Life, at WFM's cost.  Cerrone Decl., Ex. A at pp.10-11, Ex. B at p. 32.

Participants who complete the Quit for Life program have their surcharge removed prospectively for the rest of the Plan year starting from the first month following completion of the program.  Cerrone Decl., Ex. A at pp.10-11, Ex. B at p. 33; Compl., ¶¶ 24-26.  The Benefits Enrollment Guide ("Benefits Guide") explains that the Quit for Life program is a customized plan and provides both a phone number and link to the website to learn more and to enroll in the program.  Cerrone Decl., Ex. B at pp. 32, 39.  In addition to the website link and phone number, the Benefits Guide also explains that more information about the program can be found on WFM's intranet, Innerview.  *Id.* at p. 33.

## II.     PLAINTIFFS' COMPLAINT.

Plaintiffs allege that they are WFM employees who paid the tobacco surcharge.  Compl., ¶¶ 7-9.  Plaintiffs admit WFM offered the Quit for Life tobacco cessation program and cite to both the 2022 SPD and the 2024 Benefits Guide that includes a link and phone number to enroll and obtain more information about the program.  Compl., ¶¶ 25-26; Cerrone Decl., Ex. B at pp. 32, 39.  Plaintiffs do not allege that they ever enrolled in the tobacco cessation program, attempted to enroll in the tobacco cessation program, or requested a waiver or additional information from the Plan administrator concerning the surcharge or tobacco cessation program.  Compl., ¶¶ 7-9.

Plaintiffs' Complaint asserts two counts predicated on alleged flaws in WFM's wellness program.  In Count I, Plaintiffs allege Defendants violated 29 U.S.C. § 1182, ERISA Section 702 by: 1) administering an unlawful tobacco wellness program that did not provide retroactive reimbursement to tobacco users who completed the tobacco cessation program; and 2) failing to provide Plan participants with proper notice of the Plan's tobacco wellness program.  *Id.* at ¶¶ 51, 52.  In Count II, Plaintiffs re-cast the alleged statutory violations in Count I as breaches of ERISA's fiduciary duties and prohibited transactions causing a loss to the Plan in violation of 29 U.S.C. § 1132(a)(2), ERISA Section 502(a)(2).  *Id.* at ¶¶ 56-67.

**THE STATUTORY AND REGULATORY BACKGROUND**

**I.        THE 1996 ADDITION OF WELLNESS PROGRAMS TO ERISA.**

In 1996, HIPPA added Section 702(b) to ERISA, which provides that a group health plan cannot require any individual to pay a health plan premium greater than that of a similarly situated individual enrolled in the plan based on any health status-related factor.[2]  Section 702(b)(2) goes on to provide that this provision does *not* prevent a plan from establishing "premium discounts or rebates . . . in return for *adherence* to programs of health promotion and disease prevention," otherwise known as "wellness programs."[3]

---

[2] 29 U.S.C. §1182(b)(1) (emphasis added).  Section 702(b) applies to "group health plans," not to employee benefit plans generally.  Thus, benefits plans which do not provide "medical care" to employees or their dependents, such as life insurance plans or disability insurance plans, are not subject to the terms of ERISA Section 702(b).  *See* 29 U.S.C. § 1191(b)(a); *Swenson v. Lincoln Nat'l Life Ins. Co.*, No. 17-0417, 2018 U.S. Dist. LEXIS 103298, at *13 (W.D. La. June 18, 2018) (recognizing the legal distinction between life insurance plans and "group health plans" as defined by ERISA).

[3] 29 U.S.C. §1182 (b)(2) (emphasis added).

## II.    THE DOL'S 2001 PROPOSED REGULATIONS AND 2006 FINAL REGULATIONS.

The Department of Labor ("DOL") regulates ERISA, and, as such, promulgated regulations on ERISA's wellness programs.  On January 8, 2001, the DOL first issued proposed rules to identify what it considered a "bona fide wellness program."  Regarding tobacco surcharges, the DOL maintained that it can be unreasonably difficult for an individual to stop smoking due to an addiction to nicotine.  That difficulty would trigger a duty by a plan to provide a "reasonable alternative standard" such as a smoking cessation program.[4]  The DOL provided the following example of what it deemed a compliant wellness program:

> It is unreasonably difficult for Individual *E* to stop smoking cigarettes due to an addiction to nicotine (a medical condition).  The plan accommodates *E* by requiring *E* to participate in a smoking cessation program to avoid the surcharge.  *E* can avoid the surcharge for as long as *E participates* in the program . . . .

*Id.* at 1434 (ex. 6) (emphasis added).

Significantly, the DOL did not suggest that employers must reward smokers on a retroactive basis before their participation in a cessation program, as Plaintiffs assert here.  Indeed, the participation requirement to lift a tobacco surcharge was directly in line with Congress's command in Section 702(b) that wellness programs can only reward "*adherence*" to their requirements.  On December 13, 2006, the DOL issued final regulations on wellness programs wherein it repeated the example from its 2001 proposed regulations.[5]

## III.    THE 2010 AFFORDABLE CARE ACT AMENDMENTS TO ERISA.

On March 23, 2010, the Affordable Care Act ("ACA") amended ERISA to incorporate

---

[4] Notice of Proposed Rulemaking for Bona Fide Wellness Programs, 66 Fed. Reg. 1421, 1423 & n. 1 (Jan. 8, 2001) (citing to DSM IV and Surgeon General report that nicotine can be addicting).
[5] Nondiscrimination and Wellness Programs in Health Coverage in the Group Market, 71 Fed. Reg. 75014, 75045 ex.5 (Dec. 13, 2006) (to be codified at 29 C.F.R. 2590.702(f)(4)(ex.6)).

Section 2705 of the Public Health Safety Act ("PHSA") regarding, *inter alia*, wellness programs.[6] In addition to reiterating the "adherence" requirement in ERISA Section 702(b), PHSA Section 2705 confirmed that wellness programs should "be reasonably designed to promote health or prevent disease."[7] In relevant part, Section 2705 defines a program "reasonably designed to promote health or prevent disease" as one that has a reasonable chance of "improving the health of, or preventing disease in, *participating* individuals . . . ." *Id.* (emphasis added).

Importantly, while Section 702(b)(2)(B) of ERISA refers only to premium rebates or discounts,[8] Section 2705 of the PHSA introduced a third category: "rewards:"

> If any of the conditions for obtaining a premium discount or rebate *or other reward* for participation in a wellness program is based on an individual satisfying a standard that is related to a health status factor, such wellness program shall not violate this section if the requirements of paragraph (3) are complied with.[9]

Paragraph 3 referenced in the above quote then specifically defines "reward" as including the absence of a surcharge: "A reward may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), *the absence of a surcharge* . . . ."[10]

PHSA Section 2705 also provides that "the full reward under the wellness program shall be made available to all *similarly situated individuals*."[11] Section 2705 then drops the word "full" and states "[t]he reward is not available to all similarly situated individuals for a period unless the

---

[6] *See* ERISA § 715, 29 U.S.C. § 1185d, and PHSA § 2705, 42 U.S.C. § 300gg-4. The ACA did not amend ERISA §702(b) directly. Through ERISA §715, ERISA incorporated PHSA Section 2705 into ERISA.

[7] 42 U.S.C. § 300gg-4(j)(3)(B).

[8] See 29 U.S.C. § 1182(b)(2)(B) ("Construction. Nothing in paragraph 1 shall be construed…to prevent a group health plan…from establishing premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention.").

[9] 42 U.S.C. § 300gg-4(j)(1)(C).

[10] 42 U.S.C. § 300gg-4 (j)(3)(A) (emphasis added).

[11] 42 U.S.C. § 300gg-4(j)(3)(D) (emphasis added).

6

wellness program allows … for a reasonable alternative standard"—in this case participation in the tobacco cessation program.[12]  Further, if plan materials describe the terms of the wellness program, the PHSA provides that those materials must also disclose the availability of this reasonable alternative standard.[13]  Plan materials that merely mention the wellness program, however, are not required to make that disclosure.  *Id*.

PHSA Section 2705 also defines the "similarly situated individuals" who qualify for an alternative standard that offers the reward as "any individual for whom, for that period, it is unreasonably difficult *due to a medical condition* to satisfy the otherwise applicable standard." [14]

Critically, nowhere does Section 2705 mention a retroactive refund for a period when a qualified participant is not participating in a reasonable alternative standard, nor does the statute suggest that "full reward" means a retroactive refund.

## IV.    THE 2013 REVISED, FINAL REGULATIONS.

On June 2, 2013, the DOL issued revised final regulations.  In the preamble to the 2013 regulations, upon which Plaintiffs rely,[15] the DOL stated that a wellness program must have "a reasonable chance of improving the health of, or preventing disease in, *participating* individuals."[16]

When discussing tobacco cessation programs specifically, the DOL posited in the preamble that for plans like WFM's that have an outcome-based standard that an individual not use tobacco, a reasonable alternative standard would be an educational seminar, and that "as clarified in an example in the final regulations, an individual who attends the seminar is *then entitled* to the

---

[12] 42 U.S.C. § 300gg-4(j)(3)(D)(i)-(ii) (emphasis added).
[13] 42 U.S.C. § 300gg-4(j)(3)(E).
[14] 42 U.S.C. § 300gg-4(j)(3)(D)(i) (emphasis added).
[15] *See* Compl., ¶¶ 3, 20, 22 (quoting language from the preamble to the 2013 regulations).
[16] Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33162 (June 3, 2013) (to be codified at 29 C.F.R. § 2590.702(f)(4)(iii) (emphasis added).

reward . . . ."[17]  Again, it does not suggest a retroactive refund.

Example Six of the regulations, referenced in the quote above, is found in the regulations at 29 C.F.R. § 2590.702(f)(4)(vi) and specifically discusses tobacco surcharges and cessation programs.  The example says nothing of a retroactive refund of a surcharge.  Instead, it suggests – as it must to fit within the statutory definition of "reward" – that a surcharge can be *avoided* if a participant participates in a cessation program, not that a surcharge must be *refunded* for a time when a participant had not completed or even begun a cessation program.

## V.    THE DOL'S 2014 FREQUENTLY ASKED QUESTIONS.

Following the DOL's release of the 2013 Regulations, it released a set of Frequently Asked Questions ("FAQs") to provide more guidance.[18]  In those FAQs, the DOL explicitly addressed tobacco surcharges, but in no way suggested that plan sponsors must provide retroactive rebates to participants who complete a cessation program mid-year.[19]

## ARGUMENT

The Complaint alleges that WFM's tobacco wellness program does not comply with ERISA Section 702(b).  The Complaint boils down to an argument that: (1) the Plan was required to retroactively rebate tobacco surcharges to anyone who participated in the Quit for Life program, no matter when they completed it, rather than only providing prospective waivers of the surcharge; and (2) Plan materials did not disclose the availability of a legally compliant reasonable alternative standard.  These allegations are not sufficient to withstand dismissal.

---

[17] Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. at 33164 (emphasis added).

[18]  *See* FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation ("DOL FAQs"), Jan. 9, 2014, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/affordable-care-act-implementation-faqs-part-xviii-mental-health-parity.pdf.

[19] *Id.* at Q8.

8

As an initial matter, Plaintiffs lack standing for their claims because the Complaint does not allege that Plaintiffs ever completed, participated in, or attempted to participate in the cessation program that they challenge. In other words, Plaintiffs' alleged harm—paying the tobacco surcharge—was caused by their own inaction of not taking any reasonable steps to avoid the surcharge through a reasonable alternative standard, not because of WFM's design of the wellness program and related notices.

But even if Plaintiffs had standing to bring their claims, the Complaint fails on the merits. The statutory claims in Count I fail because, even taking the allegations of the Complaint as true, WFM's tobacco wellness program was in full compliance with the best interpretation of the relevant statutory provisions and the entire Complaint is premised on the inaccurate assertion that WFM is required to offer a retroactive refund of the tobacco surcharge. The derivative fiduciary duty and prohibited transaction claims in Count II fail for similar reasons, but these claims also fail because an employer does not engage in a "fiduciary act" when designing a plan's wellness program and Plaintiffs do not allege a loss to the Plan and therefore cannot recover under ERISA Section 502(a)(2).

## I.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS.

### A.  Legal Standards Related to Article III Standing.

The question of standing is a "threshold issue" that must be decided before the merits. *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) ("[S]tanding is a threshold issue that we consider before examining the merits.") (quoting *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016)). Important here, "there is no ERISA exception to Article III," nor can Plaintiffs circumvent the requirements of Article III by invoking the class action procedures of Fed. R. Civ. Proc. 23. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Rather, all plaintiffs must adequately allege (i) they suffered an injury that is concrete, particularized, and actual or imminent, (ii) that is traceable to

defendant's conduct, and (iii) that the injury is redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Defendants may challenge these elements on the face of a complaint (a facial attack) or by alleging that underlying facts do not support a finding that the standing elements are satisfied (a factual attack). *Gen. Land Off. of Tex. v. Biden,* 71 F.4th 264, 277 (5th Cir. 2023). Here, Defendants asserts a facial attack on Plaintiffs' standing.

### B. Plaintiffs Lack Standing Because They Have Not Alleged an Injury Arising out of the Alleged Conduct.

Bare allegations that a defendant violated a statute, without pleading how that specific violation caused Plaintiffs to suffer a concrete injury that is traceable to the defendant's challenged conduct, do not satisfy Article III's standing requirements. *TransUnion LLC*, 594 U.S. at 440; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330-31 (2016) (the alleged violations "must affect the plaintiff in a personal and individual way"); *Calogero v. Shows, Cali & Walsh, L.L.P.,* 95 F.4th 951, 958 (5th Cir. 2024); *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 936-37 (5th Cir. 2022).

The alleged statutory violation underlying the Complaint is not the imposition of the tobacco surcharge, but rather that WFM did not offer a retroactive refund of the surcharge once a participant completed the cessation program.[20] But Plaintiffs have not alleged any personal, concrete injury arising out of the design of WFM's program. Plaintiffs do not allege that they participated in the cessation program and only received a prospective waiver, that they would have completed the program had retroactive rebates been offered, or that they attempted to participate in the cessation program. In other words, Plaintiffs have not alleged that they would have been eligible for *any* reward under WFM's program, let alone the retroactive rebates identified in their Complaint. Plaintiffs cannot suffer an injury from an allegedly non-compliant program in which

---

[20] Indeed, Plaintiffs agree that tobacco wellness programs are generally permissible. Compl., ¶¶ 20-21.

they never participated.  *See Laufer v. Mann Hosp., LLC*, 996 F.3d 269, 272-73 (5th Cir. 2021) (holding that a plaintiff lacked standing to litigate a hotel's alleged violations of the Americans with Disabilities Act when she had not attempted to book a room); *see also Nwaorie v. United States,* No. 19-20706, 2023 U.S. App. LEXIS 9652, at *11 (5th Cir. Apr. 21, 2023) (holding that a plaintiff lacked standing to challenge the legality of a Customs and Border Patrol policy to which she had not submitted); *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2018 U.S. Dist. LEXIS 218049, at *14 (N.D. Cal. Sep. 20, 2018) (holding that plaintiff could not "allege that he was injured by Defendants' allegedly overly-complicated program if he never actually experienced that program."); *Daugherty v. Univ. of Chi.*, No. 17 C 3736, 2017 U.S. Dist. LEXIS 155948, at *17-19 (N.D. Ill. Sep. 22, 2017) (holding that plaintiffs who did not participate in CRP and TIAA loan programs did not have standing to challenge those programs under ERISA).

*Laufer* is instructive.  There, the plaintiff alleged a hotel owner violated the Americans with Disabilities Act ("ADA") by failing to identify rooms accessible to disabled guests in its online listings. 996 F.3d at 272.  But the plaintiff failed to allege that she had attempted to book a room at the hotel in question, or even that she intended to do so.  *Id.*.  Finding that the plaintiff could not have suffered a concrete injury from statutory violations that did not directly affect her or interfere with her plans, the court dismissed the plaintiff's complaint for lack of standing.  *Id.* at 272-73.

The same is true here.  Plaintiffs cannot claim they could have been injured by the cessation program if they had participated in it; they must have actually participated and suffered an injury. Rather, Plaintiffs claim that their injury is the financial harm of paying the tobacco surcharge, but that purported "injury" is not traceable to the conduct at issue, which is the alleged failure to provide retroactive rebates to Plan participants who complete a tobacco cessation program.  Again, Plaintiffs do not allege that they participated in a tobacco cessation program, nor do they allege

11

that they would have enrolled had WFM retroactively rebated the surcharges. Plaintiffs' payment of the tobacco surcharge is traceable to their own inaction – not WFM's design of the cessation program. To put it differently, even if WFM had operated the tobacco wellness program in the exact way that Plaintiffs claim it should have been run, they would have *still* paid the tobacco surcharge for the entire Plan year because they never took steps to participate in or complete the cessation program they challenge.

### C. Plaintiffs Lack Standing to Assert Claims Regarding the Sufficiency of Notice Provided to Plan Participants Because "Informational Injuries" Do Not Confer Article III Standing.

The Supreme Court explained in *TransUnion* that it is not enough to allege that information required to be disclosed by a statute was not received. Plaintiffs must allege some kind of "downstream consequence" suffered *as a result* of not receiving that information. *TransUnion,* 594 U.S. at 442 (internal citation omitted); *see also Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 937 (5th Cir. 2022) (holding that plaintiffs lacked standing to sue upon being denied information to which they were allegedly entitled under the National Voting Rights Act because they had not alleged concrete "downstream consequences"); *Laufer*, 996 F.3d at 273 (holding that a plaintiff had not suffered a concrete "informational injury" where she failed to "allege at least that the information had 'some relevance' to *her*") (emphasis in original) (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019)).

Here, Plaintiffs nitpick the content of the Plan disclosures. But they do not allege any consequences personally suffered *from these alleged flaws*. Plaintiffs do not allege that they could not or did not participate in the cessation program *because* of the alleged defects, nor do they allege that a different or additional notice would have changed their behavior. Plaintiffs' bare, conclusory assertions are not sufficient to plausibly plead Article III standing. *TransUnion,* 594 U.S. at 442; *Spokeo*, 578 U.S. at 341; *Laufer*, 996 F.3d 271. Plaintiffs' Complaint should be dismissed.

12

## II.    PLAINTIFFS' COMPLAINT FAILS ON THE MERITS.

### A.    Legal Standards Under Federal Rule of Civil Procedure 12(b)(6).

The Supreme Court has recognized that Rule 12(b)(6) motions are an "important mechanism for weeding out meritless claims" in putative ERISA class actions. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  Under the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint must "state a claim to relief that is *plausible* on its face." *Twombly,* 550 U.S. at 570 (emphasis added).  A "plausible" claim is one that is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To determine plausibility, the court begins by stripping out of the pleading conclusory statements, which are not entitled to a presumption of truth, then evaluates whether the well-pled factual allegations that remain (if any) plausibly give rise to an entitlement to relief. *See id*. at 679. A complaint merely reciting a cause of action or conclusory legal statements without support is insufficient. *Id.* at 678-79.  And a plaintiff who establishes only "conceivable" or "possible" misconduct has not "nudged his claims…across the line" to plausibility." *Id*. at 680.

### B.    ERISA and the PHSA Do Not Require Retroactive Rebates of Tobacco Sur- charges.

ERISA Section 702(b) and PHSA Section 2705 allow group health plans to offer a wellness program "reward" in the form of "the absence of a surcharge" in return for a plan participant's "*adherence* to programs of health promotion and disease prevention."[21]  Section 2705 also states that "the full reward under the wellness program shall be made available to all similarly situated

---

[21] PHSA Section 2705, 42 U.S.C. § 300gg-4 (j)(3)(A); ERISA §702(b)(2)(B), 29 U.S.C. § 1182(b)(2)(B) (emphasis added).

individuals" and then clarifies that "[t]he reward is not available to all similarly situated individuals" unless the wellness program provides "a reasonable alternative standard," which in this case is the cessation program, for those individuals for whom compliance with the ordinary standard is not medically advisable or is "unreasonably difficult due to a medical condition."[22]

WFM's tobacco wellness program does just that. As an initial matter, while WFM generously makes the program's "reasonable alternative standard" available to all plan participants, the relevant provisions of Section 2705 of the PHSA are implicated *only* for those individuals for whom compliance with the program's initial standard, in this case tobacco abstinence, is medically inadvisable or unreasonably difficult due to a medical condition (e.g., nicotine addiction).[23] Plaintiffs have not alleged that engaging in tobacco abstinence would have been medically inadvisable or unreasonably difficult, meaning they have not alleged facts to show the applicability of Section 2705 of the PHSA to their situation. *Id.*

Furthermore, WFM's tobacco wellness program complies with ERISA Section 702(b) and PHSA Section 2705. If a tobacco user cannot comply with the program's initial standard of tobacco avoidance, the participant can complete the reasonable alternative standard (the cessation program). Upon doing so, the participant obtains the same reward (*i.e.*, the absence of a surcharge) and pays the same amount in premiums as a non-tobacco user on a going forward basis.

Under Plaintiffs' contrary view, plans are required to allow participants to game the system by using tobacco all year long, or potentially for several years, and then enrolling in a cessation program at the end of the year to obtain a refund of surcharges retroactively for the entire time spent smoking. Plaintiffs' only support for their interpretation of the statute is language from the

---

[22] 42 U.S.C. § 300gg-4(j)(3)(D)(i).
[23] 42 U.S.C. § 300gg-4(j)(3)(D)(i).

preamble of the 2013 Final Regulations.  Compl., ¶¶ 3, 20, 21, 22.  But a preamble to an agency regulation is not the law. *Blanco v. Samuel*, 91 F.4th 1061, 1076 (11th Cir. 2024) (citing *AT&T Corp. v. FCC*, 970 F.3d 344, 350 (D.C. Cir. 2020)); *see also Wyeth v. Levine*, 555 U.S. 555, 580 (2009).

Indeed, the Administrative Procedure Act ("APA"),[24] requires agencies to jump through various procedural hoops before issuing "legislative" or "substantive" rules, including giving notice of the rule, allowing parties to comment on the rule's merits, and responding to the comments. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015); 5 U.S.C. § 553(b)-(c).  No such requirements are imposed for "interpretive" rules, such as those contained in a regulatory preamble. *Id.;* 5 U.S.C. § 553(b)(A).  If such interpretative rules were entitled to the full effect of law, then the procedural guardrails of the APA would be rendered effectively toothless.

But, as elaborated below, even if the language from the 2013 preamble were to be treated as proper regulation rather than mere commentary, the agency's interpretation does not match the best reading of the statute and thus is owed no deference by this Court.

### 1.    *Loper Bright abrogated the deferential Chevron Review doctrine.*

In *Loper Bright Enterprises v. Raimondo*, the United States Supreme Court abrogated the previously established doctrine of *Chevron* deference under which a properly promulgated agency regulation was treated as the controlling legal rule if Congress had not spoken to the precise matter at issue.  603 U.S. 369, 371-374 (2024).  In its place, the Supreme Court instructed that lower courts are to return to the APA's basic textual command: independently interpret the statute and effectuate the will of Congress. *Id.* at 2263.

Now, rather than declare an agency's interpretation "permissible," courts should use every

---

[24] 5 U.S.C. § 551.

tool at their disposal to determine the best reading of the statute. *Id.* at 395. Thus, after *Loper Bright*, the DOL's interpretation of ERISA Section 702(b) and PHSA Section 2705 are no longer the controlling legal rule; the Court's interpretation of the statute controls. 603 U.S. 369; *see also Federation of Am. for Consumer Choice, Inc. v. United States DOL*, 742 F. Supp. 3d 677, 693-94 (E.D. Tex. July 25, 2024) (applying same to stay the DOL's expanded fiduciary rule).

### a. Requiring refunds of the tobacco surcharge before adherence to a wellness program is not the best read of the statutes.

*Loper Bright* requires the Court to parse the texts of ERISA Section 702(b) and PHSA Section 2705 using the traditional tools of statutory interpretation. Terms that the statute leaves undefined should be given their "ordinary, contemporary, common meaning." *Rest. Law Center v. United States Department of Lab.*, 120 F. 4th 163, 171 (5th Cir. 2024) (citations omitted).

The dispute here turns primarily on the statutory meaning of "adherence" in ERISA Section 702(b)(2). Although the statutes do not define the term, several contemporary dictionaries define "adherence" or "adhere" to mean "the fact of someone behaving exactly according to rules, beliefs, etc." or "obedience to a rule or policy," or "to bind oneself to observance."[25] In other words, "adherence" is an ongoing and prospective endeavor, and a program designed to encourage and reward a person's "adherence" to a requirement should be equally prospective.

But in their Complaint, Plaintiffs do not discuss this term or its implications. Instead, Plaintiffs focus on the preamble's "full reward" phrase to argue that plan participants who complete a cessation program must receive a retroactive refund of the surcharge for the full year (*i.e.*, during

---

[25] *Adherence*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/adherence (last visited March 26, 2025); *see also, e.g.*, *Adherence*, WOLTERS KLUWER BOUVIER LAW DICTIONARY (Desk Ed. 2012) ("Adherence usually implies obedience to a rule or policy."); *Adherence*, BLACK'S LAW DICTIONARY (12th Ed. 2024) ("adherence . . . [b]ehaviour that accords with a particular rule, belief, principle, etc."); https://www.merriam-webster.com/dictionary/adhere (last visited March 26, 2025).

a time they had not completed the cessation program).  Compl., ¶ 21.  Plaintiffs' take on "full reward" would mean that a participant who does nothing until December and *then* completes a cessation program also should have the full year's surcharge refunded.  In that scenario, however, the participant was not *adhering* to a program of health until the very end of the year.  In short, Plaintiffs' spin on "full reward" would render the statutory adherence requirement meaningless.

### b.    Interpreting "full reward" to mean a retroactive refund of surcharges is not the best reading of the wellness statutes.

Receiving a "reward" – here, "the absence of a surcharge" – as defined under the statutes, requires "adherence" to a wellness program, like a cessation program.[26]  Thus, until Plan participants participate in a cessation program, they are not adhering to a program, and as such, are not entitled to the reward of the absence of a surcharge.  Given the adherence requirement, it simply cannot be said that the best reading of the statutes would equate reward (again, in this context, the absence or removal of a surcharge) with a retroactive refund dating back to a time when the participant was not adhering to a wellness program.

Even the DOL acknowledged in the 2013 regulations that the definition of "reward" includes "*avoiding a penalty* (such as the absence of a premium surcharge or other financial or nonfinancial disincentives)."[27]  By common understanding, a thing cannot be avoided retroactively.  "Avoid" relates to prospective activity:  you cannot logically "avoid' something that has already happened.[28]  In other words, under the statute, a plan is entitled to impose a surcharge until a participant completes a cessation program.  That surcharge cannot be "avoided" retroactively because it has already been imposed.  As such, "avoiding a penalty" in this context

---

[26] 42 U.S.C. § 300gg-4 (j)(3)(A); 29 U.S.C. § 1182(b)(2)(B).
[27] 29 C.F.R. § 2590.702(f)(1)(i) (emphasis added).
[28] *See, e.g.,* CAMBRIDGE DICTIONARY, "Avoid" means "to try to prevent something bad from happening."  https://dictionary.cambridge.org/us/dictionary/english/avoid (last visited March 26, 2025).

17

refers to something in the future, that is, the participant is entitled to have the surcharge removed prospectively once they complete a cessation program.

Similarly, under Plaintiffs' reading of "full reward," the design of the wellness program would incentivize participants to continue to smoke and wait until near the end of the year to enroll in and complete a cessation program, knowing they could have the surcharge refunded for the entire year. But a design that incentivizes continued smoking violates the statutory requirement that a wellness program "shall be reasonably designed to promote health or prevent disease."[29]

Plaintiffs' suggestion that retroactive refunds are required is also belied by the DOL's own FAQ. As noted above, in those FAQs, the DOL explicitly addressed tobacco surcharges and nowhere stated that plan sponsors are required to provide retroactive rebates to participants who complete a cessation program mid-year.[30]

Plaintiffs' take on "full reward" also would read out of the definition of "reward" that a wellness program is permitted to structure a reward as "the absence of a surcharge."[31] As mentioned above, even the DOL regulation speaks to the avoidance of a surcharge, not the rebate of a surcharge, when it defines "reward" as including "avoiding a penalty (such as the absence of a premium surcharge or other financial or nonfinancial disincentives)."[32]

Finally, Plaintiffs' proposed interpretation of "full reward" cannot be reconciled with the rest of the sentence in which the phrase is included in the statute. To recap, Section 2705 of the PHSA provides that "the full reward under the wellness program shall be made available to all

---

[29] 42 U.S.C. § 300gg-4(j)(3)(B).
[30] DOL FAQs at Q8 (emphasis added).
[31] 42 U.S.C. § 300gg-4 (j)(3)(A).
[32] Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. at 33160; 29 C.F.R. § 2590.702(f)(1)(i).

similarly situated individuals."[33]   Section 2705 then states, "[t]he reward is not available to all similarly situated individuals for a period unless the wellness program allows … for a reasonable alternative standard,"[34] which in this case is the cessation program.   Critically, nowhere does Section 2705 mention a retroactive refund for the period before completion of a reasonable alternative standard.  And nowhere in this detailed statute does it suggest that "full reward" means a retroactive refund under those circumstances.

And, in any case, the statute requires only that the "full reward" be afforded to all participants "similarly situated." *Id.*  But to say that someone who enrolls in a cessation program in January is "similarly situated" to someone who continues to smoke for the remainder of the year and only enrolls in a cessation program at the last minute defies common sense.  The participant who smokes until December exposes themselves to a greater health burden and the plan to a greater economic burden for the entire year due to increased risk of health issues, but under Plaintiffs' theory, the participant who smoked all year, and therefore did not adhere to the wellness program, should be rewarded for smoking all year.

This "thank you for smoking" approach plainly is not the best read of a statute which requires that wellness programs "be reasonably designed to promote health or prevent disease."[35] Indeed, Plaintiffs' interpretation would gut the value and effectiveness of wellness programs designed to promote healthy behaviors, like tobacco avoidance.  After all, if a plan participant can accrue rewards for the time they spend outside of adherence to the program, what incentive have they to adhere throughout the year?

Considering the undisputed health benefits from quitting tobacco use (documented by the

---

[33] 42 U.S.C. § 300gg-4(j)(3)(D).
[34] 42 U.S.C. § 300gg-4(j)(3)(D)(i)-(ii).
[35] 42 U.S.C. § 300gg-4(j)(3)(B).

federal agencies with expertise on these issues) and Congress's command that only those who "adhere[] to a program of health promotion and disease prevention," are entitled to a reward, Plaintiffs' contrary take on the statutes is not a "best" reading under *Loper Bright*.[36]  Because Plaintiffs' claims rest entirely on an incorrect reading of the statutes and rely exclusively on the preamble, which does not enjoy the force and effect of law, and is inconsistent with the statutes, their claims should be dismissed.

### C.    Plaintiffs' Alleged Notice "Deficiencies" Do Not Support a Claim

Plaintiffs allege in Count I that WFM's tobacco wellness program is deficient because the Plan's Summary Plan Description ("SPD"), Benefits Guide, and Plan Document do not 1) disclose how participants can obtain additional contact information or guidance about enrolling in the wellness program, 2) fail to provide any information on a reasonable alternative that would enable participants to avoid the surcharge for the entire year, and 3) omit any mention that participants' physicians' recommendations will be accommodated.  Compl., ¶¶ 32-33.

First, Plaintiffs' notice claim is a circular regurgitation of their statutory claim in that it faults WFM for not giving notice of a reasonable alternative standard that would allow all participants to avoid paying the surcharge for the entire year.  Compl., ¶ 32.  This allegation depends on Plaintiffs' erroneous interpretation of ERISA Section 702.  As noted above, that argument fails as a matter of law, as does any portion of the Complaint that relies upon it.

---

[36] The U.S. Centers for Disease Control and Prevention ("CDC") details that cigarette smoking is the *leading cause* of preventable disease and death in the U.S., killing more than 480,000 Americans each year.  *See* Smoking & Tobacco Use | About Health Effects of Cigarette Smoking |CDC at https://www.cdc.gov/tobacco/about/index.html (last visited March 26, 2025).  The CDC pulls no punches in listing all the negative health effects and health care costs from continued cigarette smoking, and notes "*[q]uitting smoking is one of the most important actions people can take to improve their health*.  This is true regardless of their age or how long they have been smoking."  Benefits of Quitting Smoking, CDC, https://www.cdc.gov/tobacco/about/benefits-of-quitting.html (last visited March 26, 2025).

Second, Plaintiffs ignore that the regulation does not require details of a reasonable alternative standard if the terms of the wellness program are not described in the document.[37] Plaintiffs do not allege that the Plan or any documents, other than the SPD and Benefits Guide, include the terms of the wellness program such that the reasonable alternative standard must also be detailed.

Finally, Plaintiffs' allegations are contradicted by the plain text of the referenced documents.  Both the Plan's SPD and Benefits Guide explicitly inform participants who use tobacco products that they can avoid the surcharge by participating in the WFM's Quit for Life tobacco cessation program, the wellness program's "reasonable alternative standard" that WFM has made available to all participants at no cost.  Cerrone Decl., Ex. A at p. 11; Ex. B at pp. 32-33, 39.  These documents also provide Plan participants with phone numbers to call and website to go to should they have any questions about the program or want to enroll.  *See* Cerrone Decl., Ex. A at pp. 32, 34, Ex. B at pp. 9, 32, 39.  The Benefits Guide and website also state that the program can be customized.  The Plan document, which consists of the Plan's various SPDs, necessarily contains the same information.  Cerrone Decl., Ex. A at p. 2.  Plaintiffs do not identify a single other document that is allegedly deficient.  Thus, Plaintiffs' notice claims fail.

### D.    Plaintiffs' Fiduciary Breach and Prohibited Transaction Claims Must Be Dismissed.

Count II of Plaintiff's Complaint recasts Count I's statutory violations as a breach of ERISA's fiduciary duties and a prohibited transaction in violation of 29 U.S.C. §§ 1104 and 1106 and seek a remedy under ERISA Section 502(a)(2).  Count II suffers the same fate as Count I because the Plan's tobacco wellness program does not violate ERISA.  *Supra* § II.B-C.  Count II also fails because Defendants' design of the tobacco wellness program was not a fiduciary act or

---

[37] 29 C.F.R. §2590.702(f)(3)(v).

transaction, which places it outside the reach of 29 U.S.C. §§ 1104 and 1106. Finally, Count II fails because ERISA Section 502 (a)(2) does not provide a remedy where the Plan itself did not suffer a loss, as is the case here.

### i. Plaintiffs do not allege fiduciary acts or prohibited transactions.

WFM's design of the tobacco wellness program is not a fiduciary act. "In every case charging breach of ERISA fiduciary duty…the threshold question is…whether [defendant] was acting as a fiduciary." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Drafting a plan, or an underlying wellness program, or determining what benefits are offered under a plan are not fiduciary decisions under ERISA. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (holding that when an employer alters a plans' terms it acts in a settlor rather than a fiduciary capacity); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (holding that ERISA does not require employers to offer certain plan benefits nor does it prevent employers from changing plan benefits in a way that may be detrimental to participants). Here, because Plaintiffs' Complaint takes aim at the terms of the Plan's tobacco wellness program—its plan design—it falls outside the scope of ERISA's fiduciary duties and neither the design of the plan nor the specific implementation of the plan according to that design can give rise to a claim of breach of those duties. *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-cv-541, 2022 U.S. Dist. LEXIS 23849, at * 7-9, 34 (S.D. Ohio Feb. 10, 2022) (dismissing fiduciary breach claims because a challenge to the design and implementation of a tobacco wellness program is a challenge to settlor, not fiduciary conduct); *see also Arnett v. Aetna Life Ins. Co.,* No. H-15-2723, 2016 U.S. Dist. LEXIS 184512, at *6-7 (S.D. Tex. Apr. 14, 2016) (withholding premiums from a check is a ministerial and not a fiduciary function and does not give rise to a breach of fiduciary duty claim); *In re Unitedhealth Group PBM Litig.*, No. 16-cv-3352 (JNE/BRT), 2017 U.S. Dist. LEXIS 208328, at *37 (D. Minn. Dec. 19,

2017) (quoting *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002)) ("'there can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms.'").

Plaintiffs' prohibited transaction claims fail for the same reasons. *Lockheed Corp.*, 517 U.S. at 892-895 (administering ERISA plans in accordance with the plan's terms falls outside the scope of prohibited transactions); *In re Unitedhealth Group PBM Litig.*, 2017 U.S. Dist. LEXIS 208328, at *37.

### ii.   Plaintiffs do not allege a loss to the Plan.

The relief for fiduciary breach claims under Section 502(a)(2) is limited to recovering losses to the plan which inure to the plan as a whole. *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919-20 (8th Cir. 1994). Here, the Complaint alleges Plaintiffs suffered losses because they paid a tobacco surcharge, but the Complaint does not identify any losses *to the Plan*. *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237-38. (5th Cir. 1995). Indeed, Plaintiffs do not allege that the Plan was out any money at all – only that it was somehow unfair that, because of the collected surcharges, WFM was required to contribute less from its general assets to fund the Plan's liabilities. Compl., ¶¶ 35, 57. Because such allegations do not show any loss to the Plan, they cannot support a valid claim under Section 502(a)(2) and must be dismissed.[38]

### CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice.

---

[38] Defendants do not argue that there is no mechanism to challenge the Plan's statutory compliance, just that a fiduciary breach claim under ERISA Section 502(a)(2) is not the appropriate mechanism to raise this claim. Indeed, Count II seeks the same relief as the alleged statutory violations in Count I.

Dated:  March 27, 2025

Respectfully submitted,

/s/ Stacey C.S. Cerrone
Stacey C.S. Cerrone, LA Bar No. 25860 *
Alex E. Hotard, LA Bar No. 37732 *
JACKSON LEWIS P.C.
601 Poydras Street, Suite 1400
New Orleans, LA 70130
Tel: (504)208-5827
Fax: (504) 208-1759
Stacey.Cerrone@jacksonlewis.com
Alex.Hotard@jacksonlewis.com

*Admitted pro hac vice

Lauren Hope Whiting, TX Bar No. 24084091
JACKSON LEWIS P.C.
93 Red River St., Suite 1150
Austin, Texas 78701
Tel: (512) 362-7100
Fax: (512) 362-5574
Lauren.Whiting@jacksonlewis.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

On March 27, 2025, a true and correct copy of *Defendants' Motion to Dismiss Plaintiffs' Complaint* was submitted to the Western District of Texas, via the court's CM/ECF system and forwarded to the following counsel of record:

Oren Faircloth
Scott Haskins
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
ofaircloth@sirillp.com
shaskins@sirillp.com

Walker D. Moller
SIRI & GLIMSTAD LLP
1005 Congress Ave., Suite 925-C36
Austin, TX 78701
wmoller@sirillp.com

/s/ *Stacey C.S. Cerrone*
Stacey C.S. Cerrone
(admitted *pro hac vice*)

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| PAUL WILSON, TYLER HOUSTON, and JAMES BESTERFIELD on behalf of herself and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>v. )<br>)<br>WHOLE FOOD MARKET, INC., and THE )<br>WHOLE FOODS MARKET, INC. )<br>BENEFITS ADMINISTRATIVE )<br>COMMITTEE, )<br>)<br>Defendants. ) | Civil Action No.: 1:25-cv-00085-DAE<br><br>CLASS ACTION |

**DECLARATION OF STACEY C.S. CERRONE**

I, **STACEY C.S. CERRONE**, hereby declare as follows:

1.      I am an attorney-at-law and a Principal with the law firm of Jackson Lewis P.C, attorneys for Defendants Whole Foods Market, Inc. ("WFM") and the WFM Benefits Administration Committee in the above-captioned action.

2.      I submit this declaration in support of Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

3.      Attached hereto as **Exhibit A** is a true and accurate copy of the Summary Plan Description for The Whole Foods Market Group Benefit Plan, effective January 1, 2022.

4.      Attached hereto as **Exhibit B** is a true and accurate copy of the Annual Benefits Enrollment Guide for 2024.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: March 27, 2025

　　　　　　　　　　　　　　　　　　　　 _/s/ Stacey C.S. Cerrone_
　　　　　　　　　　　　　　　　　　　　 STACEY C.S. CERRONE

# EXHIBIT
# A



# The Whole Foods Market Group Benefit Plan

## SUMMARY PLAN DESCRIPTION

### Umbrella One

### General Eligibility, Rights, and Claims

**Effective January 1, 2022**

# *About the Summary Plan Description (SPD)*

Whole Foods Market is the Plan Sponsor of the Whole Foods Group Benefit Plan (the Plan). The Plan is composed of several Component Plans as detailed below. This Umbrella One SPD describes the Plan's general eligibility requirements, the claims process, and your rights under the Plan. This Umbrella One SPD is supplemented by each Component Plan's SPD, and any Summary of Material of Modifications (SMMs) issued for the Plan or any Component Plan. Taken together, Umbrella One and each Component Plan constitute the Plan.

IMPORTANT INFORMATION

In all cases, all of the Plan's SPDs taken together constitute the Plan document, and are the final authority on Plan terms. This SPD replaces all previous SPDs and Plan documents. Whole Foods Market reserves the right to terminate or amend any and all of its employee benefits plans or programs. Participation in the plans and programs is neither a contract, nor a guarantee of future employment.

**COMPONENT PLANS**

The Plan consists of the following Component Plans :

- The Whole Foods Market Health Plan

- The Whole Foods Market Vision Plan

- The Whole Foods Market Dental Plan

- The Whole Foods Market Disability Plan

- The Whole Foods Market Health Savings and Spending Plan

- The Whole Foods Market Severance Pay Plan

This section of the SPD explains who is eligible for Whole Foods Market medical, dental and vision benefits. Eligibility for the disability, savings and spending accounts, and the severance pay plan are explained in each Component Plan's section of the SPD.

| Questions? |
|---|
| To find information about you or your dependent's eligibility for WFM's health care plans, access the WFM Benefits Service Center website at benefits.wholefoods.com (also available via Innerview). |
| You may also call the WFM Benefits Service Center at **888-681-2249**, 7:00 a.m. to 7:00 p.m. CT, Monday through Friday. |

# Table of Contents

Table of Contents.................................................................................................... 3

Eligibility................................................................................................................. 4

Coverage Levels .................................................................................................... 9

When Coverage Begins ......................................................................................... 9

When to Enroll ....................................................................................................... 9

Paying for Coverage .............................................................................................11

Making Mid-Year Enrollment Changes..................................................................12

Benefits if You Take a Leave of Absence...............................................................20

When Coverage Ends............................................................................................21

Continuation of Coverage under COBRA...............................................................23

Important Plan Information.....................................................................................31

Notice of Rights and How to File a Claim or Appeal ..............................................32

# Eligibility

You and your dependents are eligible for health care coverage as shown below. You must verify your dependents' eligibility for coverage as explained in the *Verification of Dependent Eligibility* section (Hawaiian Team Members should consult the Hawaii specific health plan benefits booklet to identify the applicable eligibility requirements).

| Category | Description |
|---|---|
| Team Member | <ul><li>Full-time, Team Members who work 30 hours or more per week.</li><li>Eligible first of the month after 60 days</li><li>**Part time, temporary Team Members, contractors and interns are not eligible**</li></ul> |
| Legal spouse | <ul><li>Your husband or wife under federal law</li></ul> |
| Domestic partner | <ul><li>Same or opposite sex</li><li>See the *Domestic Partners* section for more information</li></ul> |
| Common law spouse | <ul><li>Only in states where a common law spouse is recognized</li></ul> |
| Children under age 26 | <ul><li>Biological children</li><li>Adopted children or children placed with you for adoption</li><li>Stepchildren</li><li>Foster Children</li><li>Domestic partner's children</li><li>Children for whom you are legal guardian</li></ul> |
| Disabled children age 26 or older | <ul><li>Enrolled in the Plan before reaching age 26, or, if the WFM Team Member is a new hire and has a disabled child(ren) age 26 or older, the Dependent Child's Statement of Disability form must be completed and submitted to BCBSTX for medical review</li><li>Incapable of self-sustaining employment because of physical or mental handicap, mental illness or mental disorder</li><li>Primarily dependent on you **and** claimed as a dependent on your most recently filed federal tax return prior to the year your disabled child reaches age 26 (see IRS Publication 501: Exemptions, Standard Deduction, and Filing Information. This publication is also available on the IRS web site at **www.irs.ustreas.gov** or by calling **800-TAX-FORM** (800-829-3676)) and each year thereafter to continue coverage. Copies of your federal tax return will be requested by the Benefits Service Center each year during Annual Enrollment to verify continued eligibility.</li><li>Medical proof of disability must be submitted to BCBSTX within 31 days after the child reaches age 26 or, if the WFM Team Member is a new hire, as soon as possible, and at intervals determined by the medical carrier thereafter</li></ul> |
| Qualified Medical Child Support Order (QMCSO) | <ul><li>Coverage required under a QMCSO, as described in the *Qualified Medical Child Support Order (QMSCO)* section.</li></ul> |

**Please note that in this SPD, when a spouse is referenced, this also includes a domestic partner or common law spouse (in states where a common law spouse is recognized).**

## Qualified Medical Child Support Order (QMCSO)

A QMCSO is any judgment, decree or order which assigns to a child the right to receive health benefits under the Plan. QMCSOs include a court-approved settlement agreement, issued by a domestic relations court or other court of competent jurisdiction, or through an administrative process established under state law which has the force and effect of law in that state. Whole Foods Market, the Plan Administrator, determines whether the order is qualified under the terms of ERISA and applicable state law.

Children who may be covered under a QMCSO include children born out of wedlock, those not claimed as dependents on your federal income tax return, children who do not reside with you, and children for whom you do not provide financial support. However, children who are no longer eligible, due to their age for example, cannot be added under a QMCSO.

If you have general questions regarding the QMCSO process, please contact the WFM Benefits Service Center.

See *Changes Because of a Qualified Medical Child Support Order (QMCSO)* section for additional information about QMCSOs.

## Domestic Partners

Your domestic partner of the same or opposite sex may be covered if you are living together in a domestic arrangement meeting the following conditions, and one of you is a Team Member eligible to be enrolled in the Plan:

- You have an exclusive mutual commitment to each other, similar to that of marriage,

- You are each other's sole domestic partner and intend to remain so indefinitely,

- Neither of you is legally married,

- You are not related by blood to a degree of closeness which would prohibit legal marriage in the state in which you legally reside,

- You are both at least 18 years of age and legally competent to enter into a contract,

- You are currently residing together and have resided together in a common household for at least 12 consecutive months and intend to reside together indefinitely,

- It has been at least 12 months since either domestic partner has filed a Statement of Termination of a previous domestic partnership, or since a final divorce decree naming either domestic partner was granted,

- You share joint responsibility for each other's common welfare, living expenses, and financial obligations. Such joint responsibility for each other's common welfare, living expenses, and financial obligations may be demonstrated by the existence of at least two of the following forms of documentation,

  - A qualifying domestic partnership agreement; for example, a legally binding agreement between two individuals creating personal and financial interdependence,

5

- A co-parenting agreement,

- An adoption agreement,

- A joint deed, mortgage or lease of at least a one-year duration; or if month-to-month, proof that it has existed for at least six months,

- The designation of the other domestic partner as the primary beneficiary of a life insurance policy,

- The designation of the other domestic partner as the primary beneficiary of a retirement contract,

- The designation of the other domestic partner as the primary beneficiary in a will,

- A durable property or health care power of attorney naming the other domestic partner as attorney-in-fact for the purposes therein,

- Joint ownership of a motor vehicle,

- A joint bank account, or

- A joint credit account or other liability.

## *Verification of Dependent Eligibility*

If you elect coverage for yourself and your eligible dependents, you must attest that your eligible dependents meet all Plan eligibility requirements. To do this, you must submit to the WFM Benefits Service Center within 31 days after enrollment, **copies** of the required documents verifying dependent eligibility by:

- Uploading the documents to the WFM Benefits Service Center website (click on "Upload Documents" on the Home screen (lower left side of the page under "Additional Items to Explore"), or

- Mailing copies to:

  WFM Benefits Service Center
  P.O. Box 908
  Bellaire, TX 77402

WFM maintains the right to request documentation from you at **any** time to ensure that your dependents meet the eligibility criteria. In the event you provide a false certification or false or misleading information, you will be required to reimburse WFM for all amounts paid by WFM on your behalf and coverage will be dropped for all non-eligible dependents, retroactively to the date of enrollment. Any fraudulent attempt to secure or maintain coverage for a non-eligible person may lead to disciplinary action, up to and including termination of employment.

When submitting verification of dependent eligibility, please keep the following in mind:

- **If mailing, send only copies**; the documents will not be returned.

- Put your **name and employee ID on every page**; your employee ID is on your paystub next to "EMP NO."

Send only the first page of your federal tax return; this will have a list of your dependents.

6

This table shows the documents which may be required for each type of dependent you enroll.

| Dependent | Required Documents |
|---|---|
| Legal spouse | <ul><li>Government-issued marriage certificate **and** federal tax return issued within the last two years listing your spouse, or</li><li>Government-issued marriage certificate **and** proof of joint ownership issued within the last six months, or</li><li>Government-issued marriage certificate only (if married within last 12 months)</li></ul> |
| Domestic partner | <ul><li>Certificate of domestic partner registration **and** proof of joint ownership issued within the last six months, or</li><li>Notarized affidavit of domestic partnership (the affidavit is available on the Forms tab of the Resources page on the WFM website) **and** proof of joint ownership issued within the last six months</li></ul> |
| Common law spouse | <ul><li>Notarized affidavit of common law marriage **and** proof of joint ownership issued within the last six months, or</li><li>Notarized affidavit of common law marriage **and** federal tax return issued within the last two years listing your spouse</li></ul> |
| Biological Children | <ul><li>Government-issued birth certificate (including parents' names)</li></ul> |
| Adopted Children | <ul><li>Adoption placement agreement or petition for adoption (including child's date of birth), or</li><li>Adoption certificate (including child's date of birth)</li></ul> |
| Stepchildren | <ul><li>Government-issued birth certificate (including parents' names), government-issued marriage certificate **and** federal tax return issued within the last two years listing your spouse, or</li><li>Government-issued birth certificate (including parents' names) **and** government-issued marriage certificate only (if married within the last 12 months), or</li><li>Government-issued birth certificate (including parents' names), notarized affidavit of common law marriage **and** proof of joint ownership issued within the last six months, or</li><li>Government-issued birth certificate (including parents' names), notarized affidavit of common law marriage **and** federal tax return issued within the last two years listing your spouse, or</li><li>Government-issued birth certificate (including parents' names), government-issued marriage certificate **and** a proof of joint ownership issued within the last six months</li></ul> |
| Foster Children | <ul><li>Foster placement documentation (including child's date of birth)</li></ul> |

7

| Dependent | Required Documents |
|---|---|
| Domestic Partner's Children | ▪ Government-issued birth certificate (including parents' names), notarized affidavit of domestic partnership, **and** proof of joint ownership issued within the last six months, or<br>▪ Government-issued birth certificate (including parents' names), certificate of domestic partner registration, **and** proof of joint ownership issued within the last six months |
| Children for Whom You Are the Legal Guardian | ▪ Government-issued birth certificate **and** court-ordered document of legal custody |
| Disabled Children Age 26 or Older | ▪ There are **two** criteria that must be met. The child must be eligible under the WFM plan and must meet the medical eligibility requirements of the carrier. For the eligibility under WFM's plan, you must provide the same documentation described above for a child under age 26, based on whether the child is your biological child, adopted child, stepchild, or your domestic partner's child, or a child for whom you are the legal guardian, plus<br>▪ Your most recently filed federal tax return claiming the child as a dependent. You will be required to provide this on an annual basis for as long as you cover the disabled child.<br>▪ If the child is eligible under the Plan, the applicable medical carrier will review the matter to determine if the child meets the medical eligibility criteria. |

Documents proving joint ownership are:

▪ Mortgage statements,

▪ Credit card statements,

▪ Bank statements,

▪ Municipality or county property tax bill, and

▪ Current, non-expired residential leasing agreements listing both parties' names as co-owners.

The joint ownership may be established prior to the current year; however, the statement provided must be issued within the last six months, or still current if a residential lease.

Proof of marriage must be a government-issued marriage license or marriage certificate, including the date of your marriage.

Birth certificates must be government-issued birth certificates listing parents' names.

Hospital-issued certificates are only acceptable for children age three months and under.

Please call the WFM Benefits Service Center or visit the WFM website for more information about dependent eligibility verification.

## Coverage Levels

You may enroll under one of the following types of coverage for Medical, Dental, or Vision Plan coverage. You may select a different coverage level for each Plan.

| Coverage Level | Who Is Covered |
|---|---|
| Team Member only | You only |
| Team Member + Child(ren) | You and one or more dependent child(ren) |
| Team Member + Spouse/DP | You and your spouse or domestic partner |
| Team Member + Family | You, your spouse/domestic partner, and one or more of your child dependent(s) |

## When Coverage Begins

You benefits begin on the 1st of the month following 60 days of employment. You have 31 days from your date of hire to make your benefit elections. If you do not make an election within these 31 days, you will have no coverage and you must wait until the next Annual Enrollment period or until you experience a qualifying life event to enroll (see *Qualifying Life Events*).

Your eligible dependents' coverage under the Plan will begin on the same date as your coverage, if you enroll your dependents at the same time as yourself. If you enroll them later due to a qualifying life event or during Annual Enrollment, coverage does not apply retroactively, but will be effective as of the date of the life event or January 1 of the new calendar year, as appropriate.

It is strongly advised that you retain your enrollment confirmation statement any time you make a change to your benefits, including as a new hire, when you experience a qualifying life event, or when you enroll during Annual Enrollment. You should review your enrollment confirmation statement to ensure it correctly reflects your choices, as well as compare it to your first few pay statements to ensure your deductions are being taken properly. If there is a discrepancy, please contact the WFM Benefits Service Center immediately.

**Timing of payroll deductions for new hires and Team Members who experience qualifying life events:** Any benefit premium deductions that you are responsible for via payroll deduction will be **retroactively** deducted back to your hire date or to the effective date of the qualifying life event, as applicable. Depending upon the timing of your enrollment within the 31-day window, this may result in double or triple deductions in the pay check following your enrollment or life change. Your normal per pay period deductions will resume the following paycheck.

## When to Enroll

You may enroll in the health care plans:

- When you are first eligible, or
- During Annual Enrollment.

9

In some instances, you may be able to make mid-year enrollment changes if you experience certain qualifying life events (see the *Making Mid-Year Enrollment Changes* section).

## *Enrolling When First Eligible*

You may enroll in medical, dental, and/or vision coverage by logging in to the WFM website at **benefits.wholefoods.com (also available via Innerview)**, or by speaking with a representative over the phone at **888-681-2249** Monday through Friday, 7 am – 10 pm CT).

## *Enrolling During Annual Enrollment*

Each year during the Annual Enrollment period, usually held in October, you may enroll for coverage, change your coverage level, or waive coverage.

Annual Enrollment elections will be effective January 1 through December 31 of the following calendar year.

| During **every** Annual Enrollment, you will need to attest to: |
|---|
| ▪ Your tobacco user status |

**If you do not take action to make any changes to your elections during Annual Enrollment:**

▪ Your current medical, dental and/or vision coverage will continue at the same coverage levels, subject to any applicable changes in premium contributions.

▪ Coverage for your eligible enrolled dependents will continue.

▪ Flexible Spending Accounts (FSAs) (Traditional Health Care FSA, HSA-Compatible FSA and Dependent Care FSA) and the Health Savings Account (HSA) contributions will not continue. **You are required to enroll in the FSAs and HSA during each Annual Enrollment**. Please see the Savings and Spending Accounts section of this Summary Plan Description for more information.

# Paying for Coverage

WFM and you, the Team Member, share the cost of coverage. The amount you pay is based on the plans you choose and the number of dependents you cover, if any.

Your Annual Enrollment Guide, posted annually in October to the Innerview website, will have information about your per-paycheck cost for coverage. You can also contact the WFM Benefits Service Center for information on plan costs.

Your medical, dental and vision contributions, as well as any spending account contributions are made on a pre-tax basis. However, if you cover your domestic partner and/or your domestic partner's children and they are not tax dependents, your contributions will be made on a post-tax basis and you will pay taxes on the value of this coverage (this is called imputed income). Please see IRS Publication 17, "Your Federal Income Tax," for a discussion of the definition of a tax dependent. The publication is available at **www.irs.gov/forms_pubs**.

Please notify the WFM Benefits Service Center if your domestic partner and/or your domestic partner's children are tax dependents. See "Paying for Domestic Partner Coverage" for more information.

## *Non-Tobacco User Discount*

If you use tobacco products, including but not limited to cigarettes, pipes, cigars, chewing tobacco, snuff, e-cigarettes (vaping) or any other type of smoking or smokeless tobacco, you will **pay a surcharge** for your medical premiums and supplemental life insurance coverage.

**Medical Premiums**

- If you complete the tobacco cessation program, you will receive the non-tobacco user discount on your medical premium contributions effective the first of the month following your completion of the program, but you will not be eligible for the discount retroactive to the beginning of the calendar year.

**Supplemental Life Insurance and Critical Illness**

The tobacco use attestation that you make during Annual Enrollment or when you enroll as a new hire applies to your Supplemental Life Insurance rate and/or your critical illness rate for the full calendar year. If you use tobacco products and successfully complete the tobacco cessation program, your Supplemental Life Insurance rate and/or critical illness rate will be reduced in the following plan year when you attest to your new tobacco status during Annual Enrollment.

*Paying for Domestic Partner Coverage*

The cost of coverage for a domestic partner is the same as the cost for a spouse, and the cost of coverage for a domestic partner's child(ren) is the same as the cost for a dependent child.

Under federal tax law, if your enrolled domestic partner and/or their children do not qualify as tax dependents under section 152 of the Internal Revenue Code, you pay the full cost of coverage on a post-tax basis. The value of the coverage is considered "imputed income," which will be taxable. The value is calculated by determining the excess of the fair market value (FMV) of the coverage over the post-tax amount you paid for the coverage.

Imputed income is not a deduction from your pay, but an amount added to your taxable income each payroll period and can be found as a line item on your pay statement. In addition, WFM will report the annual amount of this imputed income on your W-2 Form at the end of each year.

If your covered domestic partner and their children qualify as tax dependents under section 152 of the Code, you will pay for coverage on a pre-tax basis, and there are no tax implications for you. Please notify the Benefits Service Center if your domestic partner and/or your domestic partner's children are tax dependents.

**Because these tax requirements are complex, before enrolling your domestic partner and their children, you should consult a tax professional about the tax implications for you.** To review the qualifications of a section 152 dependent, see IRS Publication 17, "Your Federal Income Tax," at www.irs.gov/forms_pubs/pubs.html.

**Please Note:** In general, state income tax treatment of domestic partner benefits is the same as the federal income tax treatment. However, certain benefits for domestic partners and their children who are not your federal tax dependents may be eligible for special state income tax treatment in a few select states. Please speak with your tax advisor regarding whether your domestic partner and their children qualify for the special state income tax treatment. If they do qualify, you must notify the WFM Benefits Service Center immediately of this special state income tax status.

# Making Mid-Year Enrollment Changes

Federal law sets rules for when you can change benefit coverage elections outside of Annual Enrollment. In general, the benefit plans and coverage levels you choose at Annual Enrollment remain in effect for the following calendar year. However, you may be able to change your elections between annual enrollment periods if you experience a qualifying life event, as explained in the *Qualifying Life Events* section below and in the *Coverage and Cost Events* section.

You must make changes within 31 days **after** a qualifying event (60 days if eligibility for Medicaid or CHIP coverage or eligibility for state premium assistance changes) has occurred by contacting the WFM Benefits Service Center by phone or online.

**You may not pre-report qualifying life events.** The change will be effective on the date of your status change. The Plan Administrator will determine whether a requested change is due to a qualifying life event and is on account of and consistent with a qualifying life event.

In order to change your benefit elections due to an eligible event, you will be required to show proof verifying that the event has occurred (e.g., copy of marriage or birth certificate, or divorce decree, etc.) and you will be subject to completing dependent verification if enrolling a new dependent.

| Special Note Regarding Domestic Partner Coverage |
| --- |
| The events qualifying you to make a mid-year election change described in this section also apply to events related to a qualified domestic partner. However, IRS rules generally do not permit you to make a mid-year change "on a pre-tax basis" for such events unless they involve a tax dependent. Thus, if you make a mid-year change due to an event involving your domestic partner, that change must generally be made "on a post-tax basis." (Exceptions may be made if your domestic partner makes an election change under his or her employer's plan in accordance with IRS regulations.) |

## *Qualifying Life Events*

The following is a list of qualifying life events and the changes to your elections that may be allowed (as long as you meet the consistency requirements, as described in the *Consistency Requirements* section).

All changes are effective on the actual date of the event, as long as they are initiated within 31 days of the event date.

| Qualifying Life Event | Action Allowed | | | |
| --- | --- | --- | --- | --- |
| | Self | Spouse | Domestic Partner | Other Verified Dependents |
| **Legal Marriage Status** | | | | |
| Marriage | Add/Drop | Add | No change | Add/Drop |
| Death of spouse | Add | Drop | No change | Add/Drop |
| Divorce/Legal Separation | Add | Drop | No change | Add/Drop |
| Annulment | Add | Drop | No change | Add/Drop |
| **Change in Domestic Partner Status** | | | | |
| Enter a domestic partnership | Add/Drop | No change | Add | Add (domestic partner's children only) |
| End a domestic partnership | Add | No change | Drop | Drop (domestic partner's children only) |

13

| Qualifying Life Event | Action Allowed | | | |
|---|---|---|---|---|
| | Self | Spouse | Domestic Partner | Other Verified Dependents |
| Death of a domestic partner | Add | No change | Drop | Drop (domestic partner's children only) |
| **Children's Eligibility** | | | | |
| Birth/Adoption of a child Placement of child for adoption | Add/Drop | Add/Drop | Add/Drop | Add/Drop |
| Death of a child | No change | No change | No change | Drop (that child only) |
| Appointment of legal guardianship of a child | Add | Add | Add | Add |
| Child becomes eligible for coverage | Add | No change | No change | Add (that child only) |
| Child becomes ineligible for coverage | No change | No change | No change | Drop (that child only) |
| Qualified Medical Child Support Order | Add/Drop | No change | No change | Add/Drop (that child only) |
| **Employment Status** | | | | |
| You are no longer eligible for coverage <br><br> *You must enroll yourself and any dependents dropping coverage in another health plan (satisfying the Affordable Care Act's definition of minimum essential coverage) effective no later than the first day of the second month after you drop coverage* | Drop | Drop | Drop | Drop |

| Qualifying Life Event | Action Allowed | | | |
|---|---|---|---|---|
| | Self | Spouse | Domestic Partner | Other Verified Dependents |
| Your employment status changes from union to non-union or from non-union to union (which changes the benefit plans available to you)<br><br>*You will be notified at your preferred email address on record with the WFM Benefits Service Center to enroll/change your affected benefits and your new coverage will start on the first of the month following the transfer or eligibility change* | Add/Drop/ Change | Add/Drop/ Change | Add/Drop/ Change | Add/Drop/ Change |
| Spouse becomes eligible for other coverage (for example, begins employment or work status changes from part-time to full-time) | Drop | Drop | No change | Drop |
| Domestic partner becomes eligible for other coverage (for example, begins employment or work status changes from part-time to full-time) | Drop | No change | Drop | Drop |
| Child becomes eligible for other coverage (for example, begins employment or work status changes from part-time to full-time) | No change | No change | No change | Drop |

15

| Qualifying Life Event | Action Allowed | | | |
|---|---|---|---|---|
| | Self | Spouse | Domestic Partner | Other Verified Dependents |
| Spouse loses eligibility for other coverage (for example, employment ends or work status changes from full-time to part-time) | Add | Add | No change | Add |
| Domestic partner loses eligibility for other coverage (for example, employment ends or work status changes from full-time to part-time) | Add | No change | Add | Add |
| Child loses eligibility for other coverage (for example, employment ends or work status changes from full-time to part-time) | Add | No change | No change | Add |
| You start an unpaid leave of absence | Drop | Drop | Drop | Drop |
| You return from an unpaid leave of absence | Add | Add | Add | Add |
| **Medicare/Medicaid or under CHIP** | | | | |
| Team Member, spouse or dependent change in eligibility for Medicare, Medicaid, or CHIP coverage | Add/Drop | Add/Drop | Add/Drop | Add/Drop |
| **Loss of Employer Provided Coverage** | | | | |
| Team Members who locate to a geographic location resulting in a change to their coverage options under the WFM Health Plan | Add/Drop | Add/Drop | Add/Drop | Add/Drop |

16

**Enrollment in a Health Plan Offered through the Health Insurance Marketplace**

If you are eligible for a special enrollment period to enroll in Health Insurance Marketplace coverage, or you want to enroll in Marketplace coverage during the Marketplace's annual open enrollment period, you may drop group health plan coverage under this Plan, even if you remain eligible for coverage under this Plan. You (and any dependents whose coverage is dropped at this time) must intend to enroll in Marketplace coverage that is effective no later than the day immediately following the last day your coverage under this Plan is dropped. (You are not permitted to change your Health Care FSA election because you intend to enroll in a plan offered through the Marketplace.)

## *Coverage and Cost Events*

In some instances, you can make changes to your benefits coverage for other reasons, such as mid-year events affecting your cost or coverage, as described below. If the change occurs to another employer's plan, you may be required to show proof verifying these events have occurred.

You must contact the WFM Benefits Service Center within 31 days after a cost event has occurred; otherwise, your next opportunity to make changes will be the next annual enrollment period or when you have a qualifying life event or other applicable event, whichever occurs first.

| Some Examples of Coverage and Cost Events |
| --- |
| If there is an overall reduction under a Plan option that reduces coverage to participants in general, participants enrolled in that option may elect coverage under another option providing similar coverage (if the other Plan option permits). |

| Event | Description |
| --- | --- |
| The Plan adds or eliminates an option in the middle of the plan year (calendar year) | ▪ You and your eligible dependents can elect different coverage in accordance with Internal Revenue Service (IRS) regulations. |
| Coverage is significantly limited or ends | ▪ You and your eligible dependents can elect different coverage in accordance with IRS regulations. |
| Your coverage is significantly restricted (if the restriction is equivalent to a complete loss of coverage or ceases entirely) | ▪ You may revoke your elections and elect coverage under another option that provides similar coverage.<br>▪ If no other similar coverage is available, you may revoke your existing election. |

17

| Event | Description |
|---|---|
| The annual enrollment period for your spouse's/domestic partner's coverage | ▪ You may make a corresponding mid-year election change.<br>▪ For example, if your spouse has medical coverage through his/her employer and that plan has Annual Enrollment in July, you may end WFM coverage for your children at that time so your spouse can cover them under his/her plan. |
| Another employer's plan allows your spouse or other dependent to change his or her elections in accordance with IRS regulations because of a qualifying life event | ▪ You may make a corresponding mid-year election change to your coverage. |
| Your cost for coverage increases or decreases significantly during the year | ▪ You may make a corresponding election change.<br>▪ For example, you may elect another Plan option with similar coverage, or drop coverage if no coverage is available. |
| There is a significant decrease in the cost of a Plan option during the year | ▪ You may enroll in that Plan, even if you declined to enroll in that Plan earlier. |

Any change in the cost of your Plan option that is not significant will result in an automatic increase or decrease, as applicable, in your share of the total cost.

18

## *Consistency Requirements*

Except for election changes due to a HIPAA and or Medicare/CHIP special enrollment, the changes you make to your coverage must be "due to and consistent with" your qualifying life event. To satisfy the federally required "consistency rule," your qualifying life event and corresponding change in coverage must meet both of the following requirements:

| Requirement | Description |
|---|---|
| Effect on eligibility | ▪ Except for election changes due to a HIPAA special enrollment, the qualifying life event must affect eligibility for coverage under the Plan or under a plan sponsored by the employer of your spouse, domestic partner, common-law spouse (in states where a common-law spouse is recognized) or other dependent.<br>▪ For this purpose, eligibility for coverage is affected if you become eligible (or ineligible) for coverage or if the qualifying life event results in an increase or decrease in the number of your dependents who may benefit from coverage under the Plan. |
| Corresponding election change | ▪ The election change must correspond with the qualifying life event.<br>▪ For example, if your dependent loses eligibility for coverage under the terms of the Plan, you may cancel medical coverage only for that dependent. |

## *Other Rules*

### Special Enrollment Events under HIPAA

Under the Health Insurance Portability and Accountability Act (HIPAA), you have special enrollment rights under certain circumstances. If you do not enroll yourself or your eligible dependents for medical coverage because you have other health insurance or group health plan coverage, you may be able to enroll yourself or your eligible dependents during the year if you or your eligible dependents lose eligibility for that other coverage (or if the other employer stops contributing toward your or your dependents' other coverage), provided that you request enrollment within 31 days after your other coverage ends. In addition, if you have a new dependent as a result of marriage, birth, adoption or placement for adoption, you may be able to enroll yourself, your spouse and your new eligible dependent children, provided that you request enrollment within 31 days after the marriage, birth, adoption or placement for adoption.

19

| If… | Then You Can Enroll… |
|---|---|
| You get married | <ul><li>Yourself</li><li>Yourself and your spouse</li><li>Yourself and your new child(ren)</li><li>Yourself, your spouse and your new child(ren)</li></ul> |
| You have a baby or adopt a child | <ul><li>Yourself</li><li>Yourself and your spouse</li><li>Yourself and your new child</li><li>Yourself, your spouse and your new child</li></ul> |
| You lose your other coverage | <ul><li>Yourself</li><li>Yourself and your spouse</li><li>Yourself and your child(ren)</li><li>Yourself, your spouse, and your child(ren)</li></ul> |
| Your spouse's coverage ends | <ul><li>Yourself and your spouse</li></ul> |
| Your child's coverage ends | <ul><li>Yourself and your child</li></ul> |

If you request a change due to a special enrollment event within the 31-day timeframe, coverage will be effective the date of marriage, birth, adoption or placement for adoption. For all other events, coverage will be effective the first of the month following your request for enrollment. If you miss the 31-day deadline, you will have to wait until the next Annual Enrollment period — or for a new qualifying life event or another special enrollment right — to enroll.

The Plan must allow a HIPAA special enrollment for you and your eligible dependents if they lose Medicaid or CHIP coverage because they are no longer eligible, or they become eligible for a state's premium assistance program. You have 60 days from the date of the Medicaid/CHIP event to request enrollment under the Plan. If you request this change, coverage will be effective the first of the month following your request for enrollment. Specific restrictions may apply.

## Changes Because of a Qualified Medical Child Support Order (QMCSO)

If the Plan receives a QMCSO requiring the Plan to provide health coverage to your child or foster child who is your dependent, the Plan will automatically change your benefit elections to provide coverage for the child in accordance with the order. Coverage will begin on the date specified in the order, or if none is specified, the date of the order. If the Team Member is enrolled in medical coverage, the child will be added to that plan. If the Team Member is not enrolled in medical coverage, both the Team Member and child will be enrolled in the lowest-cost option unless otherwise specified/elected by the Team Member. Any applicable premium changes will be effective retroactively to the date coverage began.

You may also decrease your coverage for a child, if the court order requires the child's other parent to provide coverage and your spouse's or former spouse's plan actually provides that coverage. You also may make other corresponding changes to your benefit elections under the Plan, to the extent permitted by the Internal Revenue Code and the Plan.

You cannot drop coverage for a dependent covered under a QMCSO without a corresponding court order.

20

**Medicare or Medicaid Entitlement**

You may change an election for medical coverage mid-year if you, your spouse, your domestic partner or your eligible dependent(s) becomes entitled to or loses entitlement to coverage under Part A or Part B of Medicare, or under Medicaid. However, you are limited to reducing your coverage only for the person who becomes entitled to Medicare or Medicaid, and you are limited to adding medical/dental coverage only for the person who loses eligibility for Medicare or Medicaid.

**Family and Medical Leave Act**

You may drop coverage mid-year when you begin an unpaid leave, subject to the provisions of the Family and Medical Leave Act (FMLA). If you drop coverage or if you fail to make payments for coverage during your FMLA leave, you have the right to be reinstated to the same elections you made prior to taking your FMLA leave.

If you do not return to work at the end of your FMLA leave you may be entitled to purchase COBRA continuation coverage.

# Benefits if You Take a Leave of Absence

## *Paid Leave of Absence*

Provided your leave of absence does not exceed twelve months, your medical, dental and vision coverage will continue while you are an approved paid leave of absence. Your medical dental and vision coverage will also continue while you are receiving short-term disability benefits.  You may be billed directly for your contributions by the WFM Benefits Service Center on a monthly basis.

While you are receiving long-term disability benefits, you may continue benefit coverage at active rates for as long as you are considered an active Team Member, in accordance with the WFM Leave of Absence Policy. You will be billed directly for your contributions by the WFM Benefits Service Center on a monthly basis.

## *Family and Medical Leave Act*

If you are on an approved leave of absence and your leave is protected under the Federal Family and Medical Leave Act (FMLA), you may continue medical, dental, and vision coverage. Your dependents' coverage may also be continued. You will be subject to the same rules regarding deductibles, copayments and contributions as an active employee. For information regarding

21

FMLA, please refer to Innerview. Contact Sedgwick at **888-343-6898** for details on eligibility for an approved leave of absence or to request FMLA leave.

If you are on a paid leave concurrent with your FMLA leave, your salary continues in accordance with WFM policies and your benefit contributions may continue to be deducted from your paycheck.

If you are on an unpaid, FMLA-protected leave of absence, you will be billed by the WFM Benefits Service Center for your benefits on a monthly basis. Please contact the WFM Benefits Service Center for questions about your premiums while you are out on leave.

### *Non-FMLA Leaves*

If you are on an approved, unpaid, non-FMLA leave, you will be eligible to continue your benefits by paying your premiums directly to the WFM Benefits Service Center.

### *Continuing Benefits during Uniformed Services Leave*

Team Members who are members of the uniformed services of the United States will be granted leaves of absence in accordance with state and federal law to perform uniformed services duty or training.

You may continue your medical, dental, and/or vision coverage by continuing to pay the active Team Member rate of the required premiums for up to 12 months. After 12 months, you may continue coverage for up to an additional 24 months through COBRA, by paying the entire premium for such coverage, plus the 2% administrative fee.

Please see the *Continuation of Coverage under COBRA* section for more information.

Continuation of coverage will be available for you and your eligible covered dependents who are covered under the health plans on your final day of active employment. WFM-sponsored health plans do not provide coverage for claims incurred as a result of uniformed service activities.

# When Coverage Ends

Coverage generally ends as shown below.

| If... | Coverage Ends... |
| --- | --- |
| You leave WFM | The last day of the month in which your employment terminates |
| You fail to pay the premium | The last day of the month for which you paid the premium |
| You divorce your covered spouse or end your domestic partnership | The last day of the month in which the divorce becomes final or in which the partnership is dissolved |

22

| If... | Coverage Ends... |
|---|---|
| Your child reaches age 26 | The last day of the month in which your child turns age 26 |

Coverage for a handicapped dependent child will end on the last day of the benefit month in which the earliest of the following occurs:

- The termination of your coverage,

- The failure of your dependent child to satisfy the definition of dependent child for any reason other than age,

- Your dependent child becomes able to engage in self-sustaining employment, or

- Your child no longer qualifies as a federal tax dependent.

| Benefits After Termination |
|---|
| If you or any of your dependents are confined as an inpatient in an eligible facility on the date your coverage ends, benefits will be available for eligible services provided during the uninterrupted continuation of that stay, but only to the extent they would otherwise be available. |

## WFM Coverage and Medicare

When you or your eligible dependents are entitled to Medicare and are covered under the WFM Medical Plan, the WFM Medical Plan continues to be the primary plan if you are:

- An active Team Member age 65 or over who is entitled to Medicare benefits,

- A dependent spouse/domestic partner (of an active Team Member) age 65 or over who is covered under the WFM Medical Plan and who is entitled to Medicare benefits,

- A Social Security disabled participant covered by the WFM Medical Plan as an active Team Member and who is entitled to Medicare benefits, or

- An individual who became eligible for Medicare within the previous 30 months due to end-stage renal disease.

| Age | Employment Status | WFM Medical Plan | Medicare |
|---|---|---|---|
| Pre-65 | Active | Primary | Secondary |
| 65+ | Active | Primary | Secondary |
| Pre-65 | Terminated | Please see below for Medicare and COBRA coordination details | |
| 65+ | Terminated | Secondary | Primary – Parts A & B |

## Medicare and COBRA Coordination

- If your Medicare benefits (Part A or B) become effective **on or before** the day you elect COBRA coverage, you can continue COBRA coverage in addition to having Medicare. In this situation, Medicare is always the primary payer, and COBRA coverage is secondary.

- If you are age 65 or older, upon separation from WFM, you will need to enroll in Medicare upon your loss of active employer coverage. You will not have another Medicare special enrollment window when COBRA coverage ceases.

- If you become entitled to Medicare **after** you've elected COBRA, your COBRA benefits cease. If COBRA covers your spouse and/or dependent children, their coverage may be extended for up to 36 months because you've qualified for Medicare.

- For additional questions, call 800-MEDICARE (800-633-4227) or visit **www.medicare.gov**.

# Continuation of Coverage under COBRA

The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) is a federal law that allows Plan participants to continue medical, dental, and/or vision coverage under specified circumstances when coverage would otherwise be lost. To continue coverage, you or your covered dependents must apply for continuation of coverage and pay the required premium before the deadline for payment. COBRA coverage durations are generally 18 or 36 months dependent upon the reason for loss of coverage. There are a few specific circumstances in which the duration may be extended, such as a second "qualifying event" or disability. See below for more information.

COBRA continuation coverage must be identical to the coverage provided under the Plan to similarly situated Team Members or covered dependents. This means that if the coverage for similarly situated active Team Members or dependents is modified, your coverage will also be modified.

**You may have other options available to you when you lose group health coverage.** For example, you may be eligible to buy an individual plan through the Health Insurance Marketplace. By enrolling in coverage through the Marketplace, you may qualify for lower costs on your monthly premiums and lower out-of-pocket costs.

Additionally, you may qualify for a 30-day special enrollment period for another group health plan for which you are eligible (such as a spouse's/domestic partner's plan), even if that plan generally does not accept late enrollees.

## When You Are Eligible for COBRA

### Qualifying Events

**If you are a Team Member of WFM** covered under the Plan, you have the right to choose COBRA continuation coverage if you lose your coverage because of:

- A reduction in your hours of employment,

- Termination of employment (for reasons other than gross misconduct on your part), or

- The end of leave under the Family and Medical Leave Act.

**If you are a spouse/domestic partner** covered under the Plan, you have the right to COBRA continuation coverage if you lose coverage because of:

- The death of your spouse/domestic partner,

- The termination of your spouse's/domestic partner's employment (for reasons other than gross misconduct) or reduction in your spouse's/domestic partner's hours of employment,

- Divorce or legal separation from your spouse; if your spouse (the Team Member) reduces or eliminates your coverage in anticipation of a divorce or legal separation, and a divorce or legal separation later occurs, then the divorce or legal separation may be considered a qualifying event for you, or

- Your spouse/domestic partner becoming covered by Medicare and losing his/her other coverage due to this eligibility.

**If you are a dependent child** covered under the Plan, you have the right to COBRA continuation coverage if you lose coverage because of:

- The death of the covered parent,

- The termination of the covered parent's employment (for reasons other than gross misconduct) or reduction in the covered parent's hours of employment,

- The covered parent's divorce or legal separation,

- You become covered by Medicare and lose your other coverage due to this eligibility, or

- You lose eligibility as a "dependent child" under the Plan.

### Qualified Beneficiaries

Qualified beneficiaries include you and your dependents (spouse, domestic partner, and dependent children) who were covered under the Plan at the time of a qualifying event that would otherwise result in a loss of coverage.

25

If you have a child (either by birth, adoption or placement for adoption) while you have COBRA continuation coverage, and you enroll the new child for coverage, the new child will be considered a "qualified beneficiary" for COBRA coverage.

Any other newly acquired dependent child will not be considered a qualified beneficiary but may be added to your continuation coverage if enrolled in a timely fashion, subject to the Plan's rules for adding a new dependent.

Any child covered because of a QMCSO is entitled to the same rights to elect COBRA as any other eligible dependent child.

| Special Rules for Qualified Domestic Partners |
|---|
| Although domestic partners and their eligible dependent children are generally not considered qualified beneficiaries for purposes of legal entitlement to COBRA continuation coverage, WFM makes COBRA coverage available to covered domestic partners and their eligible dependent children. Accordingly, eligible dependents for purposes of receiving COBRA coverage include domestic partners and their dependent children.<br><br>If you have enrolled your domestic partner and his or her eligible dependent children for coverage under the Plan and you terminate your domestic partnership, you must notify the WFM Benefits Service Center within 31 days after the event. Your domestic partner and his or her eligible dependent children will thereafter be eligible to elect to receive COBRA continuation coverage under the Plan as described in this section. |

## Your Duties

**To enroll a new dependent child for COBRA coverage:** If you have a child (either by birth, adoption or placement for adoption) while you are on COBRA continuation coverage, you must contact the WFM Benefits Service Center at **888-681-2249** within 31 days to enroll the child for coverage. You will need to provide written notice of the new child's birth, adoption or placement for adoption. The notice must include the same information listed in "Verification of Dependent Eligibility" on page 6.

If you do not notify the WFM Benefits Service Center within the 31 days, you will not be able to enroll the child in coverage.

**If an enrolled dependent becomes eligible for COBRA continuation coverage:** You or a family member must provide notice to the WFM Benefits Service Center within 31 days from the date of the divorce, legal separation or child losing dependent status (or, if later, the date coverage would normally be lost because of the event).

The WFM Benefits Service Center has the right to request supporting documentation such as: divorce decree, separation agreement, or dependent child(ren)'s birth certificate(s).

**Note**: Any newly enrolled dependent is subject to dependent verification.

If you or a family member does not provide this notice to the WFM Benefits Service Center within that 31-day period, any family member who loses coverage will not be eligible for COBRA continuation coverage.

26

If you or your family member fails to notify the WFM Benefits Service Center and any claims are mistakenly paid for expenses incurred after the date coverage would normally have ended because of the divorce, legal separation or a child losing dependent status, then you and your family members will be required to reimburse the employer-sponsored group health plans for any claims mistakenly paid.

### WFM's Duties

WFM has the responsibility to notify the WFM Benefits Service Center within 31 days of a qualifying event that is the Team Member's death, termination of employment or reduction of hours.

## Electing COBRA

After the WFM Benefits Service Center is notified that a qualifying event has happened, it will notify the qualified beneficiaries within 14 to 21 days of their right to choose COBRA continuation coverage.

An election to continue coverage under COBRA must be made within 60 days after the later of:

- The date coverage would end because of a qualifying event, or
- The date of receipt of the notice.

If you do not choose COBRA continuation coverage within the election period, your coverage will end as of the date of the qualifying event.

If you waive your rights to COBRA and change your mind within the 60-day period, you may revoke your waiver and still elect COBRA coverage as long as it is within the 60-day election period. In this case, your COBRA coverage will be effective as of the date you revoked your waiver of coverage.

When first electing coverage, coverage will be the same as the coverage before the qualifying event occurred. During Annual Enrollment, different coverage may be elected if it is available.

### Separate Elections

Each qualified beneficiary has a right to independently elect COBRA coverage. For example, even if you do not elect COBRA coverage, other family members who are qualified beneficiaries may elect to be covered under COBRA.

During Annual Enrollment, each qualified beneficiary is entitled to make a separate election among the types of coverage. So, a spouse/domestic partner or dependent child may elect different coverage than the Team Member elects.

You or your spouse/domestic partner can also make the COBRA election on behalf of all qualified beneficiaries and a parent or legal guardian may make the election on behalf of a minor child. And at subsequent Annual Enrollments, a spouse/domestic partner or dependent child may elect a different coverage from the coverage the Team Member elects.

## *How Long COBRA Coverage Will Continue*

| Qualifying Event | How Long COBRA Continues |
|---|---|
| You stop working for WFM (for reasons other than gross misconduct) | Coverage for you and your eligible dependents continues for up to 18 months after the date coverage would otherwise end* |
| You reduce your hours | Coverage for you and your eligible dependents continues for up to 18 months* |
| You die | Coverage for your eligible dependents may continue up to 36 months |
| You and your spouse divorce | Coverage for your eligible dependents may continue up to 36 months |
| You and domestic partner dissolve your relationship | COBRA-like** coverage for your eligible dependents may continue up to 36 months |
| Your dependent child loses eligibility | Coverage for your eligible dependents may continue up to 36 months |
| You become eligible for Medicare and within 18 months you stop working for WFM or you reduce your hours | Coverage for your eligible dependents (but not you) may continue up to the later of 36 months from the date you become enrolled in Medicare or 18 months from employment termination or reduction in hours |

\* COBRA coverage may be extended to 36 months from the initial event if another qualifying event occurs during the initial 18-month COBRA period or during a 29-month COBRA period. See the *Second Qualifying Event* section.

\*\*Domestic partners and their children are not considered to be COBRA-qualified beneficiaries and the loss of coverage for such covered individuals is not considered a COBRA event. However, coverage offered during a continuation period that mirrors COBRA for this group is considered "COBRA-like."

28

## Second Qualifying Event

COBRA coverage for a spouse/domestic partner or dependent child can be extended from 18 months (or 29 months in case of a disability extension) to 36 months if there is a second qualifying event during the initial period. Second qualifying events include your death, divorce, or a child losing dependent status (if such a qualifying event would have resulted in a loss of coverage under the Plan for an active Team Member or a dependent). In no event will coverage continue beyond 36 months from the initial qualifying event or the date coverage would have been lost due to the initial qualifying event.

You or a representative acting on your behalf must notify the WFM Benefits Service Center of the second qualifying event within 60 days after the later of the date:

- Of the second qualifying event, or

- On which the qualified beneficiary would have lost coverage as a result of the second qualifying event (if it had occurred while the qualified beneficiary was still covered under the Plan as an active participant).

The WFM Benefits Service Center has the right to request supporting documentation verifying the occurrence of the second qualifying event, as described in "Verification of Dependent Eligibility" on page 6.

If the above procedures are not followed, or if the notice is not provided within the 60-day notice period, there will be no extension of COBRA coverage due to a second qualifying event.

## Disability Extension

You and/or your covered family members are eligible for an additional 11 months of continuation coverage after the expiration of the 18-month period if:

- You are entitled to COBRA due to your termination of employment or reduction in hours, and

- The Social Security Administration determines that you or a covered family member was disabled before or within the first 60 days of COBRA coverage, and

- You notify the WFM Benefits Service Center within 60 days after the Social Security Administration's disability determination and before the end of the initial 18-month COBRA continuation period.

The notice must include a copy of the Social Security Administration's determination of disability. You must mail a copy of the Social Security Administration's determination of disability letter to the WFM Benefits Service Center or upload a copy to the WFM Benefits Service Center website.

Coverage may be extended by any eligible family members, even if the disabled person does not extend coverage.

If the above procedures are not followed, or if the notice is not provided within the 60-day notice period, there will be no disability extension of COBRA coverage.

If, during the extended continued coverage period, the Social Security Administration determines that the qualified beneficiary is no longer disabled, the individual must notify the WFM Benefits

29

Service Center of this redetermination within 31 days of the date it is made and COBRA coverage will end no earlier than the first of the month that begins more than 31 days after the date of the final determination by the Social Security Administration that the qualified beneficiary is no longer disabled. The notice must be provided in the same manner as described above, and include the same information required for, a notice of disability as described above.

If a qualified beneficiary is disabled and another qualifying event occurs within the 29-month continuation period, then the continuation coverage period is 36 months after the termination of employment or reduction in hours.

## Cost of COBRA Coverage

Under the law, you are required to pay the full cost of covering yourself and any eligible dependents, if applicable (and subject to any applicable government subsidy). In addition, there is a 2% administrative fee, making your payment responsibility a total of 102% of the cost of coverage.

If your COBRA coverage is extended from 18 to 29 months due to a disability and the individual with the disability elects to extend COBRA coverage for the additional 11 months, you may be required to pay up to 150% of the cost of covering yourself and any eligible dependents, if applicable. This cost increase begins with the 19th month of COBRA coverage, provided that the disabled individual is one of the individuals who elected the disability extension.

The cost of group health coverage changes periodically. If you elect COBRA coverage, you will be notified of any cost changes.

## When COBRA Coverage Becomes Effective

COBRA coverage is always retroactive to the date of the loss of coverage. However, coverage will not be in place until you elect it and make the required payment. You have an initial grace period (45 days from the date of your initial election) to make your first premium payment. Although you are not required to issue your first payment for COBRA continuation coverage until 45 days after you make application, it is strongly recommended that you include your initial payment with the application.

Claims for reimbursement will not be processed and paid until you have elected COBRA and made the first payment for it. If you do not make your first payment for COBRA coverage within 45 days after the date of your timely election, you will lose all rights to COBRA under the Plan.

Your first payment must cover the cost of COBRA coverage from the time your coverage under the Plan would have otherwise terminated up through the end of the month before the month in which you make your first payment. You are responsible for making sure that the amount of your first payment is correct. You may contact the COBRA Administrator to confirm the correct amount of your first payment.

After the first payment, you must pay for coverage every month. Payments are due by the first day of each month to which the payments apply (payments must be postmarked on or before the end of a 30-day grace period). If you pay part, but not all of the premium, and the amount you

30

paid is not significantly less than the full amount due, you will have 30 days from the end of the initial 30-day grace period to pay the outstanding amount due.

COBRA premiums can be paid by check, money order, or via Electronic Funds Transfer from your bank account to the COBRA administrator.

## *Early Termination of COBRA*

Your COBRA coverage may be cut short because:

- WFM no longer provides group health coverage to any of its Team Members,

- The premium for your continuation coverage is not paid in a timely fashion (within the grace period), or

- You first become entitled to (that is, covered by) Medicare, after electing COBRA.

COBRA coverage may also be terminated for any reason the Plan would terminate coverage of a participant not receiving COBRA coverage (such as fraud). In addition, WFM reserves the right to terminate your coverage retroactively in the event it determines you are not eligible for COBRA.

## *COBRA and FMLA*

If you are on Family and Medical Leave Act (FMLA) leave, and lose coverage due to non-payment, that does not make you eligible to continue coverage under COBRA. However, should you decide not to return to active employment by the last day of your FMLA leave, your termination from WFM will be considered a COBRA qualifying event and, at that time, you may elect to continue your coverage under COBRA. Your continuation coverage will begin on the earliest of the following:

- When you definitively inform WFM that you are not returning at the end of the leave, or

- The end of the leave, assuming you do not return to work.

## *Other Information*

### Keep Your Plan Informed of Address Changes

To protect your and your family's rights, you should keep WFM and the WFM Benefits Service Center informed of any changes in you and your family members' addresses.

For active Team Members, address changes can be made through Workday. When updating your address, please be sure to update both permanent and mailing addresses, as applicable, to ensure proper delivery of any future communications.

For inactive Team Members, please contact the WFM Benefits Service Center.

It is also a good idea to update your information with a personal email address so you can receive email communications. For active Team Members, there is an option to denote a preferred email address for communications. If no option is chosen, all email communications will be sent to your work email address.

You should always keep a copy, for your records, of any notices you send to or receive from WFM or the WFM Benefits Service Center.

Contacting the COBRA Administrator

If you have any questions about COBRA coverage or the application of the law, contact the WEX at **866-402-2887** or online at www.wexinc.com.

You may also contact the nearest Regional or District Office of the U.S. Department of Labor's Employee Benefits Security Administration (EBSA). Address and phone numbers of regional and district EBSA offices are available through EBSA's website at **www.dol.gov/ebsa**.

# Important Plan Information

### Name and Address of the Plan Administrator

> Whole Foods Market Benefits Administrative Committee
> C/O Julie Cunningham, Chairperson
> 550 Bowie Street
> Austin, Texas 78703-4677
> (888)-681-2249

This booklet contains a summary in English of your plan rights and benefits under the Plan. If you have difficulty understanding any part of this booklet or would like translation assistance, please contact the Plan Administrator, Monday through Friday, between 9 a.m. and 5 p.m. Central Standard Time.

### Name and Address of the Plan Sponsor

> Whole Foods Market, Inc.
> 550 Bowie Street
> Austin, Texas 78703-4677

### Identification numbers:

> The federal employer identification number of the Plan Sponsor is 74-1989366.
>
> The three-digit plan identification number is 502.

### Type of plan and administration:

> The Plan provides welfare and fringe benefits as stated above in the listing of the Component Plans.

### Plan funding:

> The Plan is an ERISA self-insured group health plan funded out of the general assets of the Plan Sponsor.

### Service of process:

> The name, title and address of the person upon whom service of legal process may be brought is:

32

Whole Foods Market Benefits Administrative Committee
C/O Julie Cunningham, Chairperson
550 Bowie Street
Austin, Texas 78703-4677
(888)-681-2249

**Fiscal year:**

The Plan's financial records are maintained on the basis of the twelve-month period ending each December 31st.

# Notice of Rights

**Your ERISA Rights**

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all participants are entitled to:

**Receive information about your Plan and Benefits**

- Examine, without charge, at the Plan Administrator's office and at other specified locations such as worksites and union halls, all documents governing the Plan, including collective bargaining agreements, insurance contracts and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the EBSA.

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated SPD. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report (SAR).

**Continue Group Health Plan Coverage**

- You may have the right to continue health care coverage for yourself, Spouse or dependents if there is a loss of coverage under the Plan as a result of a Qualifying Event. You, your Spouse or your covered dependents may have to pay for such coverage. Review this SPD and the documents governing the Plan on the rules governing your COBRA continuation coverage rights.
- Reduction or elimination of exclusionary periods of coverage for pre-existing conditions under the Plan. If you had creditable coverage from another group health plan or health insurance issuer before you became a participant in this Plan, you should be provided a certificate of creditable

33

coverage, free of charge, from the other plan when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage or when your COBRA continuation coverage ceases, if you request it before losing coverage or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a pre-existing condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage under this Plan.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called fiduciaries of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including the Company, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your Claim for Benefits under the Plan is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a Claim for Benefits that is denied or ignored, in whole or in part, and you have exhausted all applicable administrative remedies under the Plan, you may file suit in state or federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a medical child support order, you may file suit in federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your Claim is frivolous.

**Assistance With Your Questions**

If you have questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory; or at

34

Division of Technical Assistance and Inquiries Employee Benefits Security Administration

U.S. Department of Labor

200 Constitution Avenue N.W. Washington, D.C. 20210

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## Mental Health Parity and Addiction Equity Act

The Mental Health Parity and Addiction Equity Act (MHPAEA) is a federal law that requires a group health benefits plan to provide parity between Mental Health/Substance Use Disorder (MH/SUD) benefits and medical and surgical benefits.

Wherever the Plan provides MH/SUD Services, coverage will generally be provided to the same extent as medical and surgical Services.

This means the Plan:

- May not apply more restrictive financial or treatment limitations on Benefits for MH/SUD Services when compared to Benefits for medical and surgical Services.

- May not apply more restrictive annual or lifetime maximum dollar limits on MH/SUD Services than are applied to medical and surgical Services.

- Must cover Non-Network Benefits for MH/SUD Services to the same extent as Non-Network Benefits for medical and surgical Services.

- Prior authorization requirements for MH/SUD Services must be comparable to or less restrictive than those for physical health services.

However, the Plan may apply cost-containment methods as long as those methods are consistent with parity requirements under federal law. Common cost-containment methods for MH/SUD Services may include the following:

- Cost sharing: Co-payments, Coinsurance and Annual Deductibles

- Limitations on the number of office visits or inpatient/outpatient days

- The terms and conditions of the amount, duration or scope of Benefits

- Need for Prior Authorization and proof of Medical Necessity

35

Federal guidelines for MH/SUD Services as required under the MHPAEA are continually evolving, however, the Plan and its Benefits Administrators are making a good faith effort to comply with current guidelines as we understand them.

## Patient Protection and Affordable Care Act

The Patient Protection and Affordable Care Act (PPACA), as amended, is a federal law intended to extend health care benefits and coverage to most Americans by 2014.

The PPACA, sometimes referred to as Health Care Reform or the Affordable Care Act (ACA), imposes mandates on both insurers and employers who provide group health benefits to their employees and their dependents.

Federal guidelines for certain health care benefits and coverage as required under the PPACA are continually evolving, however, the Plan and its Benefits Administrators are making a good faith effort to comply with current guidelines as we understand them.

## Qualified Medical Child Support Orders

The Plan extends Benefits to an Employee's noncustodial Child, as required by a Qualified Medical Child Support Order (QMCSO). A QMCSO is a court or agency order that does both of the following:

- Meets all applicable legal requirements for qualification.

- Creates, recognizes or assigns to a Child of an Employee (alternative recipient) the right to receive health benefit coverage under the Plan.

An alternative recipient is any Child of a participant who is recognized by a medical child support order as having a right to enrollment under a participant's program for group health benefits.

A medical child support order has to satisfy certain specific conditions to be qualified. The Eligibility and Enrollment Vendor will notify you if the Company receives a medical child support order that applies to you and will provide you a copy of the Plan's procedures used for determining whether the medical child support order is qualified. A medical child support order will generally not be considered to be qualified if it requires the Plan to provide certain benefits or options that are not otherwise provided by the Plan. Participants and beneficiaries can obtain, free of charge, a copy of such procedures from the Eligibility and Enrollment Vendor.

If the Eligibility and Enrollment Vendor determines the order to be qualified, your Child named in the order will be eligible for coverage as required by the order. You must then enroll the Child in the Plan and pay any applicable contributions for coverage of the Child. If a QMCSO is issued for your Child and you are eligible but not participating in the Plan at that time, you must enroll yourself and your Child in the Plan and pay any applicable contributions.

Federal guidelines for medical child support orders as required under ERISA are continually evolving, however, the Plan and its Eligibility and Enrollment Vendor are making a good faith effort to comply with current guidelines as we understand them.

36

**Genetic Information Nondiscrimination Act (GINA)**

The Genetic Information Nondiscrimination Act (GINA) is a federal law prohibiting discrimination against an Employee, dependent or Spouse on the basis of an individual's genetic information. Genetic information is defined as information about an individual's genetics based on genetic tests of an individual's family members or information about the manifestation of a disease or disorder within an individual's family. Genetic information includes any request for or receipt of genetic services (including genetic testing, counseling or education), or participation in clinical research that includes such services, by the individual or family member.

Federal guidelines related to GINA are constantly evolving, however, the Plan is making a good faith effort to comply with current guidelines as we understand them.

**Women's Health and Cancer Rights Act of 1998 (WHCRA)**

An individual who has had or is receiving mastectomy-related Benefits under this Plan and who elects breast reconstruction in connection with the mastectomy will receive coverage in a manner determined in consultation with the attending physician and patient for reconstruction of the breast on which the mastectomy was performed, surgery and reconstruction of the other breast to give a symmetrical appearance, any needed prostheses and coverage for treatment of physical complications of all stages of the mastectomy, including lymphedema. This coverage is subject to any annual deductible, co-payment or coinsurance percentage levels applicable to other medical and surgical Benefits provided under the Plan.

**The Children's Health Insurance Program Reauthorization Act of 2009 (CHIPRA)**

*Medicaid and the Children's Health Insurance Program (CHIP) Offer Free or Low-Cost Health Coverage to Children and Families*

If you are eligible for health coverage under the Plan, but are unable to afford the premiums, some states have premium-assistance programs that can help pay for coverage. These states use funds from their Medicaid or CHIP programs to help people who are eligible for employer- sponsored health coverage, but need assistance in paying their health premiums.

- If you or your dependents are already enrolled in Medicaid or CHIP and you live in a state that participates in CHIP, you can contact your state Medicaid or CHIP office to find out if premium assistance is available.

- If you or your dependents are **not** currently enrolled in Medicaid or CHIP and you think you or any of your dependents might be eligible for either of these programs, you can contact your state Medicaid or CHIP office or dial **877-KIDS NOW (877-543-7669)** or **insurekidsnow.gov** to find out how to apply.

- If you qualify, you can ask the state if it has a Medicaid or CHIP program

37

that might help you pay the contributions for health coverage under the Program.

- If you or your dependents are not eligible for Medicaid or CHIP, you will not be eligible for these premium assistance programs but you may be able to buy individual insurance coverage through the Health Insurance Marketplace. For more information, visit **www.healthcare.gov.**

Once it is determined that you or your dependents are eligible for premium assistance under Medicaid or CHIP, the Program is required to permit you and your dependents to enroll in the Program — as long as you and your dependents are eligible, but not already enrolled in the Program. This is called a special enrollment opportunity in the Program, but you must request coverage within 60 days of being determined eligible for premium assistance.

Alternatively, if you and your dependents are eligible, but not enrolled in the Program, and you lose your eligibility for premium assistance under Medicaid or CHIP, you are entitled to a special enrollment opportunity in the Program, but you must request coverage within 60 days of losing eligibility for premium assistance.

Federal guidelines related to premium assistance are constantly evolving; however, the Program is making a good faith effort to comply with current guidelines as we understand them.

For information on which states have a premium assistance program or for more information on special enrollment rights, you can contact either:

| U.S. Department of Labor<br>Employee Benefits Security Administration<br>**dol.gov/ebsa**<br><br>**866-444-EBSA (866-444-3272)** | U.S. Department of Health and Human Services<br>Centers for Medicare and Medicaid Services<br>**cms.hhs.gov**<br><br>**877-267-2323 (choose option 4), ext. 61565** |
|---|---|

## Protecting the Privacy of Your Protected Health Information – Notice of HIPAA Privacy Rights

The privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA) went into effect April 14, 2003, and require that we send you updated notices regarding the privacy of your health information. You have received a summary of those rights from the Plan. HIPAA provides you with certain rights in connection with the privacy of your health information. The Program will not use or disclose your protected health information (PHI) for purposes other than treatment, payment or Program administrative functions without your written authorization or as otherwise required or permitted by federal law.

You have the right to inspect and copy, request amendment or correction, request a restriction on the use or disclosure, and request an accounting of certain uses and disclosures of your PHI. The Plan maintains a Notice of Privacy Practices that

38

provides information to individuals whose PHI will be used or maintained by the Plan.

### Newborns' and Mothers' Health Protection Act

To the extent this Program provides Benefits for Hospital lengths of stay in connection with childbirth, the Program will cover the minimum length of stay required for deliveries (i.e., a 48- hour Hospital stay after a vaginal delivery or a 96-hour stay following a delivery by cesarean section). The mother's or newborn's attending physician, after consulting with the mother, may discharge the mother or her newborn earlier than the minimum length of stay otherwise required by federal law. No Provider authorization is required from the Program or any Benefits Administrator for prescribing a length of stay less than 48 or 96 hours. This coverage is subject to any applicable annual deductible, co-payment or coinsurance percentage levels.

Federal guidelines for minimum Hospital stays related to childbirth as required under Newborns' and Mothers' Health Protection Act (NMHPA) are continually evolving, however, the Program and its Benefits Administrators are making a good faith effort to comply with current guidelines as we understand them.

# Claims Procedures

### Introduction

In accordance with applicable law, the Plan will allow an authorized representative to act on a Claimant's behalf in pursuing or appealing a benefit claim. Each Component Plan may identify a process for documenting and verifying an authorized representative. A general overview of the claims procedures for the Health Plan are provided below. A more specific claims procedure may be provided in each Component's portion of the SPD. In the event that any Component Plan fails to properly identify an ERISA compliant claims and appeal process, the process below shall be applied and the name of the relevant administrator shall replace the Health Plan's administrator.

### Health Claims

Full and final authority to adjudicate claims and make determinations as to their payability by and under the Plan belongs to and resides solely with the Plan Administrator. The Plan Administrator shall make claims adjudication determinations after full and fair review and in accordance with the terms of this Plan, applicable law, and with ERISA. To receive due consideration, claims for benefits and questions regarding said claims should be directed to the Third-Party Administrator. The Plan Administrator may delegate to the Third-Party Administrator responsibility to process claims in accordance with the terms of the Plan and the Plan Administrator's directive(s).

Written proof that expenses eligible for Plan reimbursement and/or payment were Incurred, as well as proof of their eligibility for payment by the Plan, must be provided to the Plan Administrator

39

via the Third-Party Administrator. Although a provider of medical services and/or supplies may submit such claims directly to the Plan by virtue of an Assignment of Benefits, ultimate responsibility for supplying such written proof remains with the Claimant. The Plan Administrator may determine the time and fashion by which such proof must be submitted. No benefits shall be payable under the Plan if the Plan Administrator determines that the claims are not eligible for Plan payment, or, if inadequate proof is provided by the Claimant or entities submitting claims to the Plan on the Claimant's behalf.

A call from a Provider who wants to know if an individual is covered under the Plan, or if a certain procedure is covered by the Plan, prior to providing treatment is not a "claim," since an actual claim for benefits is not being filed with the Plan. These are simply requests for information, and any response is not a guarantee of benefits, since payment of benefits is subject to all Plan provisions, limitations and Exclusions. Once treatment is rendered, a Clean Claim must be filed with the Plan (which will be a "Post-service Claim"). At that time, a determination will be made as to what benefits are payable under the Plan.

A Claimant has the right to request a review of an Adverse Benefit Determination. If the claim is denied at the end of the appeal process, as described below, the Plan's final decision is known as a Final Internal Adverse Benefit Determination. If the Claimant receives notice of a Final Internal Adverse Benefit Determination, or if the Plan does not follow the claims procedures properly, the Claimant then has the right to request an independent external review. The external review procedures are described below.

The claims procedures are intended to provide a full and fair review. This means, among other things, that claims and appeals will be decided in a manner designed to ensure the independence and impartiality of the persons involved in making these decisions.

Benefits will be payable to a Claimant, or to a Provider that has accepted an Assignment of Benefits as consideration in full for services rendered.

According to Federal regulations which apply to the Plan, there are four types of claims: Pre-service (Urgent and Non-urgent), Concurrent Care and Post-service.

1. Pre-service Claims. A "Pre-service Claim" occurs when issuance of payment by the Plan is dependent upon determination of payability prior to the receipt of the applicable medical care; however, if the Plan does not require the Claimant to obtain approval of a medical service prior to getting treatment, then there is no "Pre-service Claim".

Urgent care or Emergency medical services or admissions will not require notice to the Plan prior to the receipt of care. Furthermore, if in the opinion of a Physician with knowledge of the Claimant's medical condition, pre-determination of payability by the Plan prior to the receipt of medical care (a Pre-service Claim) would result in a delay adequate to jeopardize the life or health of the Claimant, hinder the Claimant's ability to regain maximum function (compared to treatment without delay), or subject the Claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim, said claim may be deemed to be a "Pre-service Urgent Care Claim".

40

In such circumstances, the Claimant is urged to obtain the applicable care without delay, and communicate with the Plan regarding their claim(s) as soon as reasonably possible.

If, due to Emergency or urgency as defined above, a Pre-service claim is not possible, the Claimant must comply with the Plan's requirements with respect to notice required after receipt of treatment, and must file the claim as a Post-service Claim, as herein described.

Pre-admission certification of a non-Emergency Hospital admission is a "claim" only to the extent of the determination made – that the type of procedure or condition warrants Inpatient confinement for a certain number of days. The rules regarding Pre-service Claims will apply to that determination only. Once a Claimant has the treatment in question, the claim for benefits relating to that treatment will be treated as a Post-service Claim.

2. <u>Concurrent Claims</u>. If a Claimant requires an on-going course of treatment over a period of time or via a number of treatments, the Plan may approve of a "Concurrent Claim." In such circumstances, the Claimant must notify the Plan of such necessary ongoing or routine medical care, and the Plan will assess the Concurrent Claim as well as determine whether the course of treatment should be reduced or terminated. The Claimant, in turn, may request an extension of the course of treatment beyond that which the Plan has approved. If the Plan does not require the Claimant to obtain approval of a medical service prior to getting treatment, then there is no need to contact the Plan Administrator to request an extension of a course of treatment, and the Claimant must simply comply with the Plan's requirements with respect to notice required after receipt of treatment, as herein described.

3. <u>Post-service Claims</u>. A "Post-service Claim" is a claim for benefits from the Plan after the medical services and/or supplies have already been provided.

### *When Claims Must Be Filed*
Post-service health claims (which must be Clean Claims) must be filed with the Third-Party Administrator within 365 days of the date charges for the service(s) and/or supplies were Incurred. Claims filed later than that date shall be denied. Benefits are based upon the Plan's provisions at the time the charges were Incurred.

A Pre-service Claim (including a Concurrent claim that also is a Pre-service claim) is considered to be filed when the request for approval of treatment or services is received by the Third-Party Administrator in accordance with the Plan's procedures.

A Post-service Claim is considered to be filed when the following information is received by the Third-Party Administrator, together with the industry standard claim form:

1. The date of service.
2. The name, address, telephone number and tax identification number of the Provider of the services or supplies.
3. The place where the services were rendered.
4. The Diagnosis and procedure codes.

41

5. Any applicable pre-negotiated rate.
6. The name of the Plan.
7. The name of the covered Employee.
8. The name of the patient.

Upon receipt of this information, the claim will be deemed to be initiated with the Plan.

The Third-Party Administrator will determine if enough information has been submitted to enable proper consideration of the claim (a Clean Claim). If not, more information may be requested as provided herein. This additional information must be received by the Third-Party Administrator within 45 days (48 hours in the case of Pre-service urgent care claims) from receipt by the Claimant of the request for additional information. **Failure to do so may result in claims being declined or reduced.**

### Timing of Claim Decisions

The Plan Administrator shall notify the Claimant, in accordance with the provisions set forth below, of any Adverse Benefit Determination (and, in the case of Pre-service claims and Concurrent claims, of decisions that a claim is payable in full) within the following timeframes:

1. <u>Pre-service Urgent Care Claims</u>:

   a. If the Claimant has provided all of the necessary information, as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the claim.
   b. If the Claimant has not provided all of the information needed to process the claim, then the Claimant will be notified as to what specific information is needed as soon as possible, but not later than 24 hours after receipt of the claim.
   c. The Claimant will be notified of a determination of benefits as soon as possible, but not later than 48 hours, taking into account the medical exigencies, after the earliest of:
   i. The end of the period afforded the Claimant to provide the information.
   ii. The Plan's receipt of the specified information.
   d. If there is an Adverse Benefit Determination, a request for an expedited appeal may be submitted orally or in writing by the Claimant. All necessary information, including the Plan's benefit determination on review, may be transmitted between the Plan and the Claimant by telephone, facsimile, or other similarly expeditious method. Alternatively, the Claimant may request an expedited review under the external review process.

2. <u>Pre-service Non-urgent Care Claims:</u>
   a. If the Claimant has provided all of the information needed to process the claim, in a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after receipt of the claim, unless an extension has been requested, then prior to the end of the 15-day extension period.
   b. If the Claimant has not provided all of the information needed to process the claim, then the Claimant will be notified as to what specific information is needed as soon as possible. The Claimant will be notified of a determination of benefits in a

42

reasonable period of time appropriate to the medical circumstances, either prior to the end of the extension period (if additional information was requested during the initial processing period), or by the date agreed to by the Plan Administrator and the Claimant (if additional information was requested during the extension period).

3. Concurrent Claims:
    a. Plan Notice of Reduction or Termination. If the Plan Administrator is notifying the Claimant of a reduction or termination of a course of treatment (other than by Plan amendment or termination), notification will occur before the end of such period of time or number of treatments. The Claimant will be notified sufficiently in advance of the reduction or termination to allow the Claimant to appeal and obtain a determination on review of that Adverse Benefit Determination before the benefit is reduced or terminated. This rule does not apply if benefits are reduced or eliminated due to plan amendment or termination.  A similar process applies for claims based on a rescission of coverage for fraud or misrepresentation.
    b. Request by Claimant Involving Urgent Care. If the Plan Administrator receives a request from a Claimant to extend the course of treatment beyond the period of time or number of treatments involving urgent care, notification will occur as soon as possible, taking into account the medical exigencies, but not later than 24 hours after receipt of the claim, as long as the Claimant makes the request at least 24 hours prior to the expiration of the prescribed period of time or number of treatments. If the Claimant submits the request with less than 24 hours prior to the expiration of the prescribed period of time or number of treatments, the request will be treated as a claim involving urgent care and decided within the urgent care timeframe.
    c. Request by Claimant Involving Non-urgent Care. If the Plan Administrator receives a request from the Claimant for a claim not involving urgent care, the request will be treated as a new benefit claim and decided within the timeframe appropriate to the type of claim (either as a Pre-service Non-urgent claim or a Post-service claim).
    d. Request by Claimant Involving Rescission.  With respect to rescissions, notification to Claimant shall be issued within 30 days and Notification of an Adverse Benefit Determination on Appeal shall be provided within 30 days.

4. Post-service Claims:
    a. If the Claimant has provided all of the information needed to process the claim, in a reasonable period of time, but not later than 30 days after receipt of the claim, unless an extension has been requested, then prior to the end of the 15-day extension period.
    b. If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the claim, the notice of extension shall specifically describe the required information, and the Claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.
    c. If the Claimant has not provided all of the information needed to process the claim and additional information is requested during the initial processing period, then the Claimant will be notified of a determination of benefits prior to the end of the extension period, unless additional information is requested during the extension period, then the Claimant will be notified of the determination by a date agreed to by the Plan Administrator and the Claimant.

43

5.  <u>Extensions:</u>
a.  Pre-service Urgent Care Claims. No extensions are available in connection with Pre-service urgent care claims.
b.  Pre-service Non-urgent Care Claims. This period may be extended by the Plan for up to 15 days, provided that the Plan Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to the expiration of the initial 15-day processing period of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision.
c.  Post service Claims. This period may be extended by the Plan for up to 15 days, provided that the Plan Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to the expiration of the initial 30-day processing period of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision.

6.  <u>Calculating Time Periods</u>. The period of time within which a benefit determination is required to be made shall begin at the time a claim is deemed to be filed in accordance with the procedures of the Plan.

***Notification of an Adverse Benefit Determination***
The Plan Administrator shall provide a Claimant with a notice, either in writing or electronically (or, in the case of Pre-service urgent care claims, by telephone, facsimile or similar method, with written or electronic notice following within three days), containing the following information:

1.  Information sufficient to allow the Claimant to identify the claim involved (including date of service, the health care Provider, the claim amount, if applicable, and a statement describing the availability, upon request, of the Diagnosis code and its corresponding meaning, and the treatment code and its corresponding meaning).
2.  A reference to the specific portion(s) of the Plan Document upon which a denial is based.
3.  Specific reason(s) for a denial, including the denial code and its corresponding meaning, and a description of the Plan's standard, if any, that was used in denying the claim.
4.  A description of any additional information necessary for the Claimant to perfect the claim and an explanation of why such information is necessary.
5.  A description of the Plan's review procedures and the time limits applicable to the procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an Adverse Benefit Determination on final review.
6.  A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's claim for benefits.
7.  Upon request, the identity of any medical or vocational experts consulted in connection with a claim, even if the Plan did not rely upon their advice (or a statement that the identity of the expert will be provided, upon request).
8.  Any rule, guideline, protocol or similar criterion that was relied upon in making the determination (or a statement that it was relied upon and that a copy will be provided to the Claimant, free of charge, upon request).
9.  In the case of denials based upon a medical judgment (such as whether the treatment is Medically Necessary or Experimental), either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical

44

circumstances, or a statement that such explanation will be provided to the Claimant, free of charge, upon request.

10. In a claim involving urgent care, a description of the Plan's expedited review process.

## Appeal of Adverse Benefit Determinations

### *Full and Fair Review of All Claims*

In cases where a claim for benefits is denied, in whole or in part, and the Claimant believes the claim has been denied wrongly, the Claimant may appeal the denial and review pertinent documents. The claims procedures of this Plan provide a Claimant with a reasonable opportunity for a full and fair review of a claim and Adverse Benefit Determination. More specifically, the Plan provides:

1. A 180-day timeframe following receipt of a notification of an initial Adverse Benefit Determination within which to appeal the determination. The Plan will not accept appeals filed after a 180-day timeframe.

2. The opportunity to submit written comments, documents, records, and other information relating to the claim for benefits.

3. The opportunity to review the Claim file and to present evidence and testimony as part of the internal claims and appeals process.

4. A review that does not afford deference to the previous Adverse Benefit Determination and that is conducted by an appropriate named fiduciary of the Plan, who shall be neither the individual who made the Adverse Benefit Determination that is the subject of the appeal, nor the subordinate of such individual.

5. A review that takes into account all comments, documents, records, and other information submitted by the Claimant relating to the claim, without regard to whether such information was submitted or considered in the prior benefit determination.

6. That, in deciding an appeal of any Adverse Benefit Determination that is based in whole or in part upon a medical judgment, the Plan fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment, who is neither an individual who was consulted in connection with the Adverse Benefit Determination that is the subject of the appeal, nor the subordinate of any such individual.

7. Upon request, the identity of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with a claim, even if the Plan did not rely upon their advice.

8. If applicable, a discussion of the basis for disagreeing with the disability determination made by either (a) the Social Security Administration; or (b) an independent medical expert that has conducted a full medical review of the Claimant if presented by the Claimant in support of the claim.

9. That a Claimant will be provided, free of charge: (a) reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim in possession of the Plan Administrator or Third Party Administrator; (b) information regarding any voluntary appeals procedures offered by the Plan; (c) information regarding the Claimant's right to an external review process; (d) any internal rule, guideline, protocol or other similar criterion relied upon, considered or generated in making the adverse determination; and (e) an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances.

10. That a Claimant will be provided, free of charge, and sufficiently in advance of the date that the notice of Final Internal Adverse Benefit Determination is required, with new or

45

additional evidence considered, relied upon, or generated by the Plan in connection with the Claim, as well as any new or additional rationale for a denial at the internal appeals stage, and a reasonable opportunity for the Claimant to respond to such new evidence or rationale.

### *Requirements for First Level Appeal*

The Claimant must file the appeal in writing (although oral appeals are permitted for Pre-service urgent care claims) within 180 days following receipt of the notice of an Adverse Benefit Determination.

For Pre-service Health Claims, all Pre-service Health claims must be sent to the Claim Administrator. To file any Health Claim appeal in writing, follow the instructions on the Notice of Adverse Benefit Determination or contact the following:

> Blue Cross Blue Shield of Texas
> Claims Division
> P.O. Box 660044
> Dallas, TX 75266-0044
> Website: www.bcbstx.com

To file any appeal in writing, the Claimant's appeal must be addressed as follows:

Claim Review Section
Blue Cross and Blue Shield of Texas
P.O. Box 660044
Dallas, Texas 75266-0044

It shall be the responsibility of the Claimant or authorized representative to submit an appeal under the provisions of the Plan. Any appeal must include:

1. The name of the Employee/Claimant.
2. The Employee/Claimant's member identification number.
3. The group name or identification number.
4. All facts and theories supporting the claim for benefits.
5. A statement in clear and concise terms of the reason or reasons for disagreement with the handling of the claim.
6. Any material or information that the Claimant has which indicates that the Claimant is entitled to benefits under the Plan.

### *Timing of Notification of Benefit Determination on Review*

The Plan Administrator shall notify the Claimant of the Plan's benefit determination on review within the following timeframes:

1. Pre-service Urgent Care Claims: As soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the appeal.
2. Pre-service Non-urgent Care Claims:  Within a reasonable period of time appropriate to the medical circumstances, but not later than 30 days after receipt of the appeal.

46

3. <u>Concurrent Claims</u>: The response will be made in the appropriate time period based upon the type of claim: Pre-service Urgent, Pre-service Non-urgent or Post-service.
4. <u>Post-service Claims</u>: Within a reasonable period of time, but not later than 60 days per internal appeal.

<u>Calculating Time Periods.</u> The period of time within which the Plan's determination is required to be made shall begin at the time an appeal is filed in accordance with the procedures of this Plan, without regard to whether all information necessary to make the determination accompanies the filing.

### *Manner and Content of Notification of Adverse Benefit Determination on Review*

The Plan Administrator shall provide a Claimant with notification, with respect to Pre-service urgent care claims, by telephone, facsimile or similar method, and with respect to all other types of claims, in writing or electronically, of a Plan's Adverse Benefit Determination on review, setting forth:

1. Information sufficient to allow the Claimant to identify the claim involved (including date of service, the health care Provider, the claim amount, if applicable, and a statement describing the availability, upon request, of the Diagnosis code and its corresponding meaning, and the treatment code and its corresponding meaning).
2. Specific reason(s) for a denial, including the denial code and its corresponding meaning, and a description of the Plan's standard, if any, that was used in denying the claim, and a discussion of the decision.
3. A reference to the specific portion(s) of the summary plan description on which the denial is based.
4. The identity of any medical or vocational experts consulted in connection with a claim, even if the Plan did not rely upon their advice (or a statement that the identity of the expert will be provided, upon request).
5. A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits.
6. Any rule, guideline, protocol or similar criterion that was relied upon, considered, or generated in making the determination will be provided free of charge. If this is not practical, a statement will be included that such a rule, guideline, protocol or similar criterion was relied upon in making the determination and a copy will be provided to the Claimant, free of charge, upon request.
7. A description of any additional information necessary for the Claimant to perfect the claim and an explanation of why such information is necessary.
8. A description of available internal appeals and external review processes, including information regarding how to initiate an appeal.
9. A description of the Plan's review procedures and the time limits applicable to the procedures. This description will include information on how to initiate the appeal and a statement of the Participant's right to bring a civil action under section 502(a) of ERISA following an Adverse Benefit Determination on final review.
10. In the case of denials based upon a medical judgment (such as whether the treatment is Medically Necessary or Experimental), either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances, will be provided. If this is not practical, a statement will be included that such explanation will be provided to the Claimant, free of charge, upon request.

47

11. Information about the availability of, and contact information for, an applicable office of health insurance consumer assistance or ombudsman established under applicable federal law to assist Participants with the internal claims and appeals and external review processes.

12. The following statement: "You and your Plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency".

### *Furnishing Documents in the Event of an Adverse Determination*

In the case of an Adverse Benefit Determination on review, the Plan Administrator shall provide such access to, and copies of, documents, records, and other information described in the provision relating to "Manner and Content of Notification of Adverse Benefit Determination on Review" as appropriate.

### *Decision on Review*

The decision by the Plan Administrator or other appropriate named fiduciary of the Plan on review will be final, binding and conclusive and will be afforded the maximum deference permitted by law. All claim review procedures provided for in the Plan must be exhausted before any legal action is brought.

### *Requirements for Second Level Appeal (Health Plan Only)*

The Claimant must file an appeal regarding a claim and applicable Adverse Benefit Determination, in writing within 60 days following receipt of the notice of the first level Adverse Benefit Determination.

### *Two Levels of Appeal (Health Plan Only)*

The Health Plan requires two levels of appeal by a Claimant before the Plan's internal appeals are exhausted. For each level of appeal, the Claimant and the Plan are subject to the same procedures, rights, and responsibilities as stated within this Plan. Each level of appeal is subject to the same submission and response guidelines.

Once a Claimant receives an Adverse Benefit Determination in response to an initial claim for benefits, the Claimant may appeal that Adverse Benefit Determination, which will constitute the initial appeal. If the Claimant receives an Adverse Benefit Determination in response to that initial appeal, the Claimant may appeal that Adverse Benefit Determination as well, which will constitute the Final Internal Appeal. If the Claimant receives an Adverse Benefit Determination in response to the Claimant's second appeal, such Adverse Benefit Determination will constitute the Final Internal Adverse Benefit Determination, and the Plan's internal appeals procedures will have been exhausted.

### *Deemed Exhaustion of Internal Claims Procedures and De Minimis*

Exception to the Deemed Exhaustion Rule

48

A Claimant will not be required to exhaust the internal claims and appeals procedures described above if the Plan fails to adhere to the claims procedures requirements. In such an instance, a Claimant may proceed immediately to make a claim in court. However, the internal claim and appeals procedures will not be deemed exhausted (meaning the Claimant must adhere to them before bringing a claim in court) in the event of a de minimis violation that does not cause, and is not likely to cause, prejudice or harm to the Claimant as long as the Plan Administrator demonstrates that the violation was for good cause or due to matters beyond the control of the Plan, the violation occurred in the context of an ongoing, good faith exchange of information between the Plan and the Claimant, and the violation is not reflective of a pattern or practice of non- compliance.

If a Claimant believes the Plan Administrator has engaged in a violation of the claims procedures and would like to pursue an immediate review, the Claimant may request that the Plan provide a written explanation of the violation, including a description of the Plan's basis for asserting that the violation should not result in a "deemed exhaustion" of the claims procedures. The Plan will respond to this request within ten days. If a court rejects a request for immediate review because the Plan has met the requirements for the "de minimis" exception described above, the Plan will provide the Claimant with notice of an opportunity to resubmit and pursue an internal appeal of the claim.

### *External Review Process*
The Federal external review process does not apply to a denial, reduction, termination, or a failure to provide payment for a benefit based on a determination that a Claimant or beneficiary fails to meet the requirements for eligibility under the terms of a group health plan.

The Federal external review process, in accordance with the current Affordable Care Act regulations, applies only to:

1. Any eligible Adverse Benefit Determination (including a Final Internal Adverse Benefit Determination) by a plan or issuer that involves medical judgment (including, but not limited to, those based on the plan's or issuer's requirements for Medical Necessity, appropriateness, health care setting, level of care, or effectiveness of a covered benefit; or its determination that a treatment is Experimental or Investigational), as determined by the external reviewer.
2. A rescission of coverage (whether or not the rescission has any effect on any particular benefit at that time).

Standard external review
Standard external review is an external review that is not considered expedited (as described in the "expedited external review" paragraph in this section).

1. Request for external review. The Plan will allow a Claimant to file a request for an external review with the Plan if the request is filed within four months after the date of receipt of a notice of a Final Internal Adverse Benefit Determination. If there is no corresponding date four months after the date of receipt of such a notice, then the request must be filed by the first day of the fifth month following the receipt of the notice. For example, if the date

49

of receipt of the notice is October 30, because there is no February 30, the request must be filed by March 1. If the last filing date would fall on a Saturday, Sunday, or Federal holiday, the last filing date is extended to the next day that is not a Saturday, Sunday, or Federal holiday.

2. <u>Preliminary review</u>. Within five business days following the date of receipt of the external review request, the Plan will complete a preliminary review of the request to determine whether:

a. The Claimant is or was covered under the Plan at the time the health care item or service was requested or, in the case of a retrospective review, was covered under the Plan at the time the health care item or service was provided.
b. The Adverse Benefit Determination or the Final Internal Adverse Benefit Determination does not relate to the Claimant's failure to meet the requirements for eligibility under the terms of the Plan (e.g., worker classification or similar determination).
c. The Claimant has exhausted the Plan's internal appeal process (unless the Claimant is not required to exhaust the internal appeals process under the final regulations) and rendered the appeal available for standard external review.
d. The Claimant has provided all the information and forms required to process an external review. Within one business day after completion of the preliminary review, the Plan will issue a notification in writing to the Claimant. If the request is complete but not eligible for external review, such notification will include the reasons for its ineligibility and contact information for the Employee Benefits Security Administration (toll-free number 866-444-EBSA (3272)). If the request is not complete, such notification will describe the information or materials needed to make the request complete and the Plan will allow a Claimant to perfect the request for external review within the four-month filing period or within the 48-hour period following the receipt of the notification, whichever is later.

3. <u>Referral to Independent Review Organization</u>. The Plan will assign an independent review organization (IRO) that is accredited by URAC or by a similar nationally recognized accrediting organization to conduct the external review. Moreover, the Plan will take action against bias and to ensure independence. Accordingly, the Plan will contract with (or direct the Third-Party Administrator to contract with, on its behalf) at least three IROs for assignments under the Plan and rotate claims assignments among them (or incorporate other independent unbiased methods for selection of IROs, such as random selection). In addition, the IRO may not be eligible for any financial incentives based on the likelihood that the IRO will support the denial of benefits.

4. <u>Reversal of Plan's decision</u>. Upon receipt of a notice of a final external review decision reversing the Adverse Benefit Determination or Final Internal Adverse Benefit Determination, the Plan will provide coverage or payment for the claim without delay, regardless of whether the plan intends to seek judicial review of the external review decision and unless or until there is a judicial decision otherwise.

Expedited external review

1. Request for expedited external review. The Plan will allow a Claimant to make a request for an expedited external review with the Plan at the time the Claimant receives:

   a. An Adverse Benefit Determination if the Adverse Benefit Determination involves a medical condition of the Claimant for which the timeframe for completion of a standard internal appeal under the final regulations would seriously jeopardize the life or health of the Claimant or would jeopardize the Claimant's ability to regain maximum function and the Claimant has filed a request for an expedited internal appeal.

   b. A Final Internal Adverse Benefit Determination, if the Claimant has a medical condition where the timeframe for completion of a standard external review would seriously jeopardize the life or health of the Claimant or would jeopardize the Claimant's ability to regain maximum function, or if the Final Internal Adverse Benefit Determination concerns an admission, availability of care, continued stay, or health care item or service for which the Claimant received Emergency Services, but has not been discharged from a facility.

2. Preliminary review. Immediately upon receipt of the request for expedited external review, the Plan will determine whether the request meets the reviewability requirements set forth above for standard external review. The Plan will immediately send a notice that meets the requirements set forth above for standard external review to the Claimant of its eligibility determination.

3. Referral to Independent Review Organization. Upon a determination that a request is eligible for external review following the preliminary review, the Plan will assign an IRO pursuant to the requirements set forth above for standard review. The Plan will provide or transmit all necessary documents and information considered in making the Adverse Benefit Determination or Final Internal Adverse Benefit Determination to the assigned IRO electronically or by telephone or facsimile or any other available expeditious method. The assigned IRO, to the extent the information or documents are available and the IRO considers them appropriate, will consider the information or documents described above under the procedures for standard review. In reaching a decision, the assigned IRO will review the claim de novo and is not bound by any decisions or conclusions reached during the Plan's internal claims and appeals process.

4. Notice of final external review decision. The Plan's (or Third-Party Administrator's) contract with the assigned IRO will require the IRO to provide notice of the final external review decision, in accordance with the requirements set forth above, as expeditiously as the Claimant's medical condition or circumstances require, but in no event more than 72 hours after the IRO receives the request for an expedited external review. If the notice is not in writing, within 48 hours after the date of providing that notice, the assigned IRO will provide written confirmation of the decision to the Claimant and the Plan.

51

**Claim for Disability Benefits**

<u>Notification of Decision on Disability Claim</u>

In the case of a claim for benefits based upon a determination of a Participant's "disability", as defined under the terms of the applicable Benefit Program, the Claims Administrator shall notify the Claimant of the benefit determination within a reasonable period of time, but not later than forty-five (45) days after receipt of the claim by the Benefit Program. The Claims Administrator may extend this period, for a period of up to thirty (30) days; provided that the Claims Administrator: (1) determines that such an extension is necessary due to matters beyond the control of the Component Plan and (2) notifies the Claimant prior to the expiration of the initial 45-day period of the circumstances requiring the extension and the date by which the Component Plan expects to render a decision. If, prior to the end of the first 30-day extension, the Claims Administrator determines that, due to matters beyond the control of the Benefit Program, a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional thirty (30) days, provided that the Claims Administrator or its delegate notifies the Claimant, prior to the expiration of the first 30- day extension period, of the circumstances requiring the extension and the date as of which the Component Plan expects to render a decision. In the case of any extension under this paragraph, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and, if such extension is necessary due to a failure of the Claimant to submit the information necessary to decide the claim, a description of the additional information needed to resolve those issues. The Claimant will be afforded at least forty-five (45) days from receipt of such notice to provide the specified information. If an extension of time is necessary, the period for making the claim determination shall be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

<u>Method and Contents of Denial Notices on Disability Claims</u>
The Claims Administrator shall provide the Claimant with written or electronic notification of an Adverse Benefit Determination. Such notification shall set forth, in a manner that is intended to be understood by the Claimant:

- the specific reason or reasons for the Adverse Benefit Determination;
- reference to the specific Component Plan provisions upon which the determination is based;
- a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why the material or information is necessary;
- a description of the review procedures under the Component Plan and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under ERISA §502(a) following an Adverse Benefit Determination on review;

52

- effective for claims filed after April 1, 2018, a discussion of the decision that includes the basis for disagreeing with or not following: (a) the views of health care professionals treating the Claimant and vocational professionals who evaluated the Claimant that have been presented by the Claimant; (b) the views of medical or vocational experts whose advice was obtained on behalf of the Component Plan in connection with the denial, regardless of whether the advice was relied on in making the denial; and (c) a disability determination made by the Social Security Administration regarding the Claimant, if presented to the Benefit Program;
- if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the Adverse Benefit Determination, either the specific rule, guideline, protocol, or other similar criterion, or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the Adverse Benefit Determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the Claimant upon request (or, effective for claims filed after April 1, 2018, either the specific internal rules, guidelines, protocols, standards or other similar criteria of the Component Plan relied upon in making the adverse benefit determination or, alternatively, a statement that such rules guidelines, protocols, standards or other similar criteria of the Component Plan do not exist);
- if the Adverse Benefit Determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Component Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; and effective for claims filed after April 1, 2018, a statement that the Claimant is entitled to receive, free and upon request, documents relevant to the Claimant's claim for Benefits.

Effective for claims filed after April 1, 2018, such notice of adverse benefit determination shall be written in a culturally and linguistically appropriate manner.

Review of Denied Disability Claim

Within one hundred eighty (180) days after receipt of a notice of an Adverse Benefit Determination as provided above, the Claimant may request, in writing, a review of his claim by the one or more fiduciaries appointed by the Plan Administrator to conduct a review of the claim.

Appeal Procedures

The Claimant will be given the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits. The Claimant will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits. In conducting its review, the fiduciary will consider all comments, documents, records, and other information relating to the claim submitted by the Claimant, whether or not such information was submitted or considered in the initial benefit determination.

The review will not afford deference to the initial Adverse Benefit Determination and will be conducted by an appropriate named fiduciary of the Component Plan who is neither the individual who made the Adverse Benefit Determination that is the subject of the Internal Appeal, nor the subordinate of that individual. If the Adverse Benefit Determination is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental,

53

investigational, or not medically necessary or appropriate, the appropriate named fiduciary will consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. The health care professional will be an individual who is neither an individual who was consulted in connection with the Adverse Benefit Determination that is the subject of the Internal Appeal, nor the subordinate of any such individual. Any medical or vocational expert whose advice was obtained on behalf of the Component Plan in connection with a Claimant's Adverse Benefit Determination will be identified, without regard to whether the advice was relied upon in making the benefit determination.

Effective for claims filed after April 1, 2018, the Claims Administrator shall provide you, free of charge, with any new or additional evidence considered, relied upon, or generated by or on behalf of the Claims Administrator in connection with the claim and, if applicable, the rationale for the decision if the denial is upheld.  The Claims Administrator shall provide this information to you as soon as possible and sufficiently in advance of the date on which the denial notice on review is required to be provided.

<u>Notice of Denied Appeal – Timing of Notification</u>
An Internal Appeal of an Adverse Benefit Determination involving a disability claim by a Claimant shall be decided and notice of the decision on Internal Appeal shall be given to the Claimant within a reasonable period of time, but not later than forty-five (45) days after receipt by the named fiduciary of a written request for review of the claim by the Benefit Program, unless the named fiduciary determines that special circumstances require an extension of time for processing the claim. If the named fiduciary determines that an extension of time for processing is required, the named fiduciary will notify the Claimant, in writing, prior to the termination of the initial 45-day period. In no event shall such extension exceed a period of forty-five days from the end of the initial 45-day period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Component Plan expects to render the determination on review.

<u>Contents of Notice of Decision on Appeal</u>
The named fiduciary shall provide the Claimant with written or electronic notice of the benefit determination on review. In the case of an Adverse Benefit Determination, the notice shall set forth, in a manner calculated to be understood by the Claimant:

- the specific reason or reasons for the Adverse Benefit Determination;
- reference to the specific Component Plan provisions upon which the benefit determination is based;
- a statement that the Claimant is entitled to receive, upon request and without charge, reasonable access to and copies of all documents, records, and other information: (i) relied on in making the determination, (ii) submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination, (iii) that demonstrates compliance with the administrative processes and safeguards required in making the determination, or (iv) that constitutes a statement of policy or guidance with respect to the Component Plan concerning the denied treatment option or benefit for the Claimant's diagnosis, without regard to whether the statement was relied on;

54

- effective for claims filed after April 1, 2018, a discussion of the decision that includes the basis for disagreeing with or not following: (a) the views of health care professionals treating the Claimant and vocational professionals who evaluated the Claimant that have been presented by the Claimant; (b) the views of medical or vocational experts whose advice was obtained on behalf of the Component Plan in connection with the denial, regardless of whether the advice was relied on in making the denial; (c) a disability determination made by the Social Security Administration regarding the Claimant, if presented to the Benefit Program;

- if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the Adverse Benefit Determination, either the specific rule, guideline, protocol, or other similar criterion, or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the Adverse Benefit Determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the Claimant upon request (or, effective for claims filed after April 1, 2018, either the specific internal rule, guideline, protocol, standard or other similar criteria of the Component Plan relied upon in making the adverse benefit determination or, alternatively, a statement that such rules guidelines, protocols, standards or other similar criteria of the Component Plan do not exist);

- if the Adverse Benefit Determination is based on medical necessity or experimental treatment or a similar exclusion or limit, either an explanation of the scientific or clinical judgment, applying the terms of the Component Plan to the claimant's medical condition, or a statement that this will be provided without charge on request; and

- a statement describing any voluntary appeal procedures offered by the Component Plan and your right to obtain information about these procedures, a statement of the Claimant's right to bring a civil action under ERISA §502(a), and, effective for claims filed after April 1, 2018, a description of any applicable contractual limitations period that applies to your right to bring such an action, including the calendar date on which such period expires for the claim.

Effective for claims filed after April 1, 2018, such notice of determination on appeal shall be written in a culturally and linguistically appropriate manner.

## All Other Claims Filed

Notification of Decision on Other Claims

If the case of a claim that is neither a claim for Benefits under a Group Health Plan or a claim for disability benefits under a Component Plan (an "Other Claim"), which is wholly or partially denied, the Claims Administrator shall notify the Claimant of the Adverse Benefit Determination within a reasonable period of time, but not later than ninety (90) days after receipt of the claim by the Benefit Program. The Claims Administrator may extend this period, for a period of up to ninety (90) days; provided that the Claims Administrator: (1) determines that special circumstances exist that require an extension of time for processing the claim and (2) notifies the Claimant prior to the expiration of the initial 90-day period of the circumstances requiring the extension and the date by which the Component Plan expects to render a decision. If such an extension is necessary due to the Claimant's failure to submit the information necessary to decide the claim, the notice of extension shall specifically describe the additional information required. The Claimant shall be given at least forty-five (45) days from receipt of such notice to provide the specified information. If such extension is necessary, the period for making the

55

claim determination shall be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

Method and Contents of Denial Notices on Other Claims
In the event that an Other Claim is wholly or partially denied, the Claims Administrator shall provide the Claimant with written or electronic notification of the Adverse Benefit Determination. Such notification shall set forth, in a manner that is intended to be understood by the Claimant:

- the specific reason or reasons for the Adverse Benefit Determination;
- reference to the specific Component Plan provisions upon which the determination is based;
- a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why the material or information is necessary; and
- a description of the review procedures under the Component Plan and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under ERISA §502(a) following an Adverse Benefit Determination on review.

Review of Denied Other Claims
Within sixty (60) days after receipt of a notice of an Adverse Benefit Determination as provided above, the Claimant may request, in writing, that the Claims Administrator review his claim.

Appeal Procedures
The Claimant will be given the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits. The Claimant will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits. In conducting its review, the Claims Administrator or its delegate will consider all comments, documents, records, and other information relating to the claim submitted by the Claimant, whether or not such information was submitted or considered in the initial benefit determination.

Notice of Denied Appeal – Timing of Notification
An Internal Appeal of an Adverse Benefit Determination involving an Other Claim shall be decided and notice of the decision on Internal Appeal shall be given to the Claimant within a reasonable period of time, but not later than sixty (60) days after receipt by the Claims Administrator of a written request for review of the claim by the Benefit Program, unless the Claims Administrator determines that special circumstances require an extension of time for processing the claim. If the Claims Administrator determines that an extension of time for processing is required, the Claims Administrator will notify the Claimant, in writing, prior to the termination of the initial 60-day period. In no event shall such extension exceed a period of sixty (60) days from the end of the initial 60-day period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Component Plan expects to render the determination on review.

Contents of Notice of Decision on Appeal

56

The Claims Administrator shall provide the Claimant with written or electronic notice of the benefit determination on review. In the case of an Adverse Benefit Determination, the notice shall set forth in a manner calculated to be understood by the Claimant:

- the specific reason or reasons for the Adverse Benefit Determination;
- reference to the specific Component Plan provisions upon which the benefit determination is based;
- a statement that the Claimant is entitled to receive, upon request and without charge, reasonable access to and copies of all documents, records, and other information: (i) relied on in making the determination, (ii) submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination, or (iii) that demonstrates compliance with the administrative processes and safeguards required in making the determination; and
- a statement of the Claimant's right to bring a civil action under ERISA §502(a).

### *Final Determination*

Except as otherwise provided herein, the determination upon exhaustion of the applicable Internal Appeal procedures will be final and conclusive.

Please note that such decision is based only on whether or not Benefits are available under the applicable Benefit Program, and is not a determination as to whether the pending service or treatment is necessary or appropriate for you.

## *Appointment of Authorized Representative*

A Claimant may designate another individual to be an authorized representative and act on his or her behalf and communicate with the Plan with respect to a specific benefit claim or appeal of a denial.

Should a Claimant designate an authorized representative, all future communications from the Plan will be conducted with the authorized representative instead of the Claimant, unless the Third-Party Administrator is otherwise notified in writing by the Claimant. A Claimant can revoke the authorized representative at any time. A Claimant may authorize only one person as an authorized representative at a time.

Recognition as an authorized representative is completely separate from a Provider accepting an Assignment of Benefits, requiring a release of information, or requesting completion of a similar form. An Assignment of Benefits by a Claimant shall not be recognized as a designation of the Provider as an authorized representative. Assignment and its limitations under this Plan are described below.

### Autopsy

Upon receipt of a claim for a deceased Claimant for any condition, Illness or Injury is the basis of such claim, the Plan maintains the right to request an autopsy be performed upon said Claimant. The request for an autopsy may be exercised only where not prohibited by any applicable law.

57

**Payment of Benefits**

Where benefit payments are allowable in accordance with the terms of this Plan, payment shall be made in U.S. Dollars (unless otherwise agreed upon by the Plan Administrator). Payment shall be made, in the Plan Administrator's discretion, to an assignee of an Assignment of Benefits, but in any instance may alternatively be made to the Claimant, on whose behalf payment is made and who is the recipient of the services for which payment is being made. Should the Claimant be deceased, payment shall be made to the Claimant's heir, assign, agent or estate (in accordance with written instructions), or, if there is no such arrangement and in the Plan Administrator's discretion, the institute and/or Provider who provided the care and/or supplies for which payment is to be made – regardless of whether an Assignment of Benefits occurred.

*Medicaid Coverage*

A Claimant's eligibility for any State Medicaid benefits will not be taken into account in determining or making any payments for benefits to or on behalf of such Claimant. Any such benefit payments will be subject to the State's right to reimbursement for benefits it has paid on behalf of the Claimant, as required by the State Medicaid program; and the Plan will honor any Subrogation rights the State may have with respect to benefits which are payable under the Plan.

*Limitation of Action*

A Claimant cannot bring any legal action against the Plan for a claim of benefits until 90 days after all appeal processes have been exhausted. After, if the Claimant wants to bring a legal action against the Plan, he or she must do so within three years of the date he or she is notified of the final decision on the final appeal, or he or she will lose any rights to bring such an action against the Plan.

## Coordination of Benefits and Rights of Recovery

Coordination of Benefits (COB) applies to you if you are covered by more than one health benefits plan, including any one of the following:

■    Another employer sponsored health benefits plan.
■    A medical component of a group long-term care plan, such as skilled nursing care.
■    No-fault or traditional "fault" type medical payment benefits or personal injury protection benefits under an auto insurance policy.
■    Medical payment benefits under any premises liability or other types of liability coverage.
■    Medicare or other governmental health benefit.

If coverage is provided under two or more plans, Coordination of Benefits determines which plan is primary and which plan is secondary. The plan considered primary pays its benefits first, without regard to the possibility that another plan may cover some expenses. Any remaining expenses may be paid under the other plan, which is considered secondary. The secondary plan may determine its benefits based on the benefits paid by the primary plan. How much this Plan will reimburse you, if anything, will also depend in part on the allowable expense.

58

The Plan has a right to recover amounts wrongfully paid to you. In addition, the Plan has a right to reimbursement and subrogation in the event it pays Benefits to you for an illness or injury for which a third person is liable or legally responsible.

The Plan will have a first priority lien against, and will be entitled to recovery of, the first dollars paid or payable to you or on your behalf by a Third Party. It is important to note that the Welfare Plan's lien applies regardless of how the claims, awards, recoveries or amounts paid or payable by or on behalf of a Third Party are classified or characterized by the parties, the courts or any other person or entity, including, for example, amounts paid to or for the benefit of the Participant for general damages, and regardless of whether (i) the Participant is made whole for his or her losses and claim(s) for Benefits following the Welfare Plan's recovery, (ii) the Third Party is at fault or has had made an admission of fault and (iii) there has been an entry of judgment against the Third Party.

# Article VI - Authority to Amend Plan

The Company reserves the right, in its sole and absolute discretion, to amend or terminate the Plan (or any Benefit Program) at any time. Any amendment to or termination of the Plan (or any Benefit Program) must be evidenced, in writing, by an action of the Company or its authorized delegate. The Benefits Administrative Committee (the "BAC") is the authorized delegate and the Chairperson of the BAC is specifically authorized to sign Plan amendments and or a Plan termination.

Any provision of the Plan (or any Benefit Program) which, on its effective date, is in conflict with the requirements of federal statutes or regulations, or applicable state law provisions not otherwise preempted by ERISA is hereby amended to conform to the minimum requirements of such statutes and regulations.

# EXHIBIT
# B



CURATED BENEFITS · FOR THE WHOLE YOU ·

WHOLE FOODS MARKET

**2024 Annual Benefits Enrollment**

# *Investing in Your Growth and Happiness*

At Whole Foods Market, our mission is to nourish people and the planet. One of the ways we support that mission is by promoting Team Member growth and happiness. Offering benefits to support your physical, emotional, and financial wellness journey is a key goal.

We understand everyone's needs are different and sometimes those needs change. That's why we continue to make significant investments to evolve our benefits to help you thrive. Our benefits are designed to provide choice and flexibility so you can select the options that best support you and your family's needs. We are proud of the enhancements made to our 2024 benefits lineup and ask that you take the time to review the options carefully.

Many appreciations for all you do.

Julie Cunningham

Vice President, Total Rewards



2



# *What's Inside*

**Welcome** ................................................................................................... 4

**Refresh Your Benefits for 2024** ................................................................ 5

**Eligibility** ...................................................................................................7

**Benefits Enrollment** ................................................................................. 9

**Medical and Prescription** ........................................................................11

**Health Care Funding Accounts** ...............................................................24

**Dental**........................................................................................................26

**Vision** ........................................................................................................27

**Flexible Spending Accounts** ....................................................................28

**Income Protection Benefits** .....................................................................29

**Voluntary Benefits** ................................................................................... 31

**Additional Benefits** ..................................................................................32

**Contribution Rates** ..................................................................................33

**Your 2024 Benefit Elections Worksheet**...................................................37

**Contacts** ...................................................................................................38

# *Welcome to Your Whole Foods Market 2024 Benefits Guide*

Use this Benefits Guide to see what is new. Next, visit **mywfmbenefits.com** to learn more about your options. Then on October 16, start selecting your 2024 benefits using MyApps on Innerview, then going to the Benefits Enrollment Portal.

Inside this guide, you'll find all the information you need to make your benefit elections, including:

- Details about the benefit options available to you in 2024
- Eligibility guidelines and information on how and when to enroll
- Additional programs and resources available to help manage your overall health, protect your finances, and more.



### 📢 Take Action!

Be sure to enroll in the benefits you need—and want—for 2024 by 8 p.m. CT on October 27, 2023.

Take action during Annual Enrollment if you want to make changes to your current WFM coverage, contribute to an HSA or FSA, and enroll in new coverage in 2024.

See **page 9** to learn more.

# *Refresh Your Benefits for 2024*

Read on for information about our 2024 benefit enhancements and other changes.

## Medical Plan Options

Team Members in the continental U.S. will have two medical plan options to choose from. The plans available are based on your home zip code on file in Workday.

- The **Whole Health Plan (WHP)** — available to U.S. Team Members in 13 select markets. Explore **wfm.employershealthnetwork.com** for more detailed information about the WHP and its services. See **page 16** for details.
- The **NEW** **National Select (National Select)** — available to U.S. Team Members outside of Whole Health Plan markets and Hawaii. The plan is administered by BlueCross BlueShield of Texas.
- The **National Choice Plan (National Choice)** — available to all U.S. Team Members outside of Hawaii. The plan is administered by BlueCross BlueShield of Texas.
- **Hawaii Medical Service Association (HMSA)** — Hawaii Team Members continue to have the option to enroll in the **Hawaii PPO** through HMSA.

Go to **benefits.wholefoods.com** to see what options are available to you.

## 2024 Contributions

Although WFM continues to experience increases in health care premiums, we are pleased to announce that for the third consecutive year, Team Members will **not see an increase** in payroll contribution rates for the existing medical plans. See **page 33** for contribution details.

## Lower In-Network Deductible

Effective January 1, 2024, in-network deductibles will be reduced. See **page 12** for details on the National Choice Plan and **page 18** for details on the Whole Health Plan.



## Health Care Funding Accounts

When you enroll in the National Choice Plan or the Whole Health Plan, you have the option to choose a Health Care Funding Account; either a Health Savings Account (HSA) or a Personal Wellness Account (PWA). If you elect the National Select Plan, it will automatically come with a PWA. WFM makes a significant contribution to your account to help pay for health care expenses. See what's new with these accounts below and get more details starting on **page 24**.

### Increase to Health Savings Account (HSA) IRS Maximum

The HSA IRS maximum contribution limit is increasing for 2024. WFM's contribution counts toward this maximum.

| Coverage Level | IRS Contribution Maximum | WFM's Contribution | Your Maximum Contribution |
|---|---|---|---|
| **Team Member Only** | $4,150 | $1,000 | $3,150 |
| **Team Member + Dependents** | $8,300 | $1,500 | $6,800 |

If you are age 55 or reaching age 55 during the year, you can contribute an additional $1,000 in catch-up contributions.

**Note:** As a participating Team Member, it is your responsibility to ensure that you are eligible to contribute to an HSA and do not contribute more than the IRS maximum contribution amount. See **page 25** for HSA eligibility rules.

## Dependent Care Flexible Spending Account (FSA) Maximum for Highly Compensated Employees

If you are a Highly Compensated Employee (HCE), as defined by IRS IRC Section 414(q), your Dependent Care FSA contribution is subject to a limit. Please visit **benefits.wholefoods.com** for the 2024 maximum.

 

### Planning to Switch From the PWA to the HSA in 2024?

If you were enrolled in the National Plan or Whole Health Plan and elected the PWA in 2023, but plan to choose the HSA in 2024, it's important to note that an HSA-Compatible PWA will automatically be opened for you to be used for eligible dental and vision expenses going forward. Any remaining balance in your 2023 PWA will be rolled into an HSA-Compatible PWA, and the funds will be available to you after January 9, 2024.

The deadline to file claims incurred prior to January 1, 2024, for PWA expenses, is March 31, 2024. After this date, funds will be eligible for **dental and vision expenses only**.

# *Eligibility*

When it comes to choosing your benefits, it's important to understand what you are eligible for, so that you can make an informed decision about coverage. Eligibility rules vary based on where you live. Review the table below to learn more.

| Benefit | You (Team Member) | Your Dependents |
|---|---|---|
| **Medical** | You are eligible for coverage on the first of the month following 60 days of employment at WFM if you are classified as full-time and regularly work 30 or more hours per week or are in an ACA full-time stability period. **Team Members must make an election within 30 days of their date of hire or change in eligibility status.**<br><br>**Hawaii Team Members:** You are eligible for coverage on the first of the month following four consecutive weeks of employment at WFM if you are classified to regularly work 20 or more hours per week or are in an ACA full-time stability period. | • Spouse<br>• Domestic partner<br>• Child(ren) (up to age 26). This includes:<br>  – Biological children<br>  – Adopted children<br>  – Stepchildren<br>  – Legal guardianship children<br>  – Disabled children (covered under WFM medical plan and disabled prior to age 26 and are dependent on you for support)<br>  – Domestic partner's children (if your domestic partner is covered)<br><br>*\*Eligible proof of dependent status must be provided within 30 days of election; otherwise, coverage will be denied.* |
| **Dental and Vision** | You are eligible for coverage on the first of the month following 60 days of employment at WFM if you are classified as full-time and regularly work 30 or more hours per week.<br><br>**Hawaii Team Members:** You are eligible for coverage on the first of the month following four consecutive weeks of employment at WFM if you are classified as full-time. | |
| **Health Savings Account (HSA)**<br><br>*Not available to Hawaii Team Members.* | You are eligible on the first of the month following 60 days of employment at WFM if you are classified as full-time and regularly work 30 or more hours per week or are in an ACA full-time stability period.<br><br>You also must be enrolled in the National Choice Plan or Whole Health Plan in order to elect the HSA. See eligibility provisions on **page 25**. | You may use your HSA for your spouse or tax-eligible dependents (anyone that you can claim as your dependent on your tax return) only.<br><br>**Note:** You may not use your HSA for your domestic partner or your domestic partner's children, unless they are tax dependents. |
| **Personal Wellness Account (PWA)**<br><br>*Not available to Hawaii Team Members.* | You are eligible on the first of the month following 60 days of employment at WFM if you are classified as full-time and regularly work 30 or more hours per week or are in an ACA full-time stability period.<br><br>You also must be enrolled in the National Choice Plan, the National Select Plan or Whole Health Plan to elect the PWA. | You may use your PWA for your spouse or tax-eligible dependents as long as they are enrolled in the WFM benefit plans as your dependents.<br><br>**Note:** You may not use your PWA for your domestic partner or your domestic partner's children, unless they are tax dependents. |

| Benefit | You (Team Member) | Your Dependents |
|---|---|---|
| **Flexible Spending Accounts (FSAs)** | You are eligible on the first of the month following 60 days of employment at WFM if you are classified as full-time and regularly work 30 or more hours per week.<br><br>**Hawaii Team Members:** You are eligible for coverage on the first of the month following four consecutive weeks of employment at WFM if you are classified as full-time. | You may use your FSA for your spouse or tax-eligible dependents. |
| **Life and Accidental Death & Dismemberment (AD&D) Insurance** | You are eligible for coverage on the first of the month following 60 days of employment at WFM if you are classified as full-time and regularly work 30 or more hours per week.<br><br>**Hawaii Team Members:** You are eligible for coverage on the first of the month following four consecutive weeks of employment at WFM if you are classified as full-time. | Your spouse/domestic partner and eligible children, if you elect the minimum coverage amount for yourself. See **page 29** for details. |
| **Disability** | You are eligible for coverage and automatically enrolled in STD and LTD on the first of the month following 60 days of employment at WFM or if you move into a benefits-eligible role as full-time and regularly work 30 or more hours per week.<br><br>**Hawaii Team Members:** You are eligible for coverage if you have worked at WFM for at least four consecutive weeks and are classified as full-time. | N/A |



### Adding a Dependent?

If you are electing to cover dependents for the first time, you must verify their eligibility during the benefits enrollment process. Your newly added dependents will not be added to your coverage until the dependent eligibility verification process is complete. If you are not able to provide the required documentation within 30 days of the benefit enrollment process, please contact the Whole Foods Market Benefits Service Center to discuss your options.



# *Benefits Enrollment*

Annual Benefits Enrollment is Monday, October 16 - Friday, October 27.

## When to Enroll

In general, benefit elections made during Annual Benefits Enrollment are effective January 1 of the following year and remain in effect for the entire calendar year, unless you experience a qualified life event. See below for more information.

### 2024 Annual Benefits Enrollment

Annual Benefits Enrollment begins on **October 16 and ends at 8 p.m. CT on October 27.** If you do not take action during Annual Benefits Enrollment, you will not be able to change your benefits during the year unless you experience a qualified life event such as marriage, divorce or the birth/adoption of a dependent child.



### If You Do Not Take Action During Annual Benefits Enrollment

If you currently have WFM coverage and do not elect your benefits during Annual Benefits Enrollment, you will receive the same coverage you have today at the 2024 contribution rates, except you will not be able to contribute to an FSA or an HSA (if you are enrolled in the National Choice Plan or Whole Health Plan).

If you do not currently have WFM coverage and do not actively elect your benefits during Annual Enrollment, you will not have any coverage in 2024.

### Making Changes During the Year

Once you elect benefits during Annual Benefits Enrollment, they will remain effective through the end of the calendar year, unless you have a qualified life event as defined by the IRS, such as:

- Marriage, divorce, legal separation or annulment
- Birth, adoption or placement of a child for adoption
- Your spouse/domestic partner acquires or loses coverage through his/her employer
- Your child gains or loses eligibility for your coverage
- A change in your place of residence that causes a loss or gain of coverage

When you have a major life event that can affect your coverage, you have generally 31 calendar days from the event to make changes to your benefits that are consistent with the applicable life event.




### Have a Benefits Question?

The Whole Foods Market Benefits Service Center is your dedicated resource for support related to your Whole Foods Market benefits. If you have questions about benefits eligibility, deductions, how to enroll or general benefit questions, experienced Service Center Representatives are available to help.

Call the Whole Foods Market Benefits Service Center at **888-681-2249**, 7 a.m. to 8 p.m. CT, Monday through Friday.



# How to Access the Benefits Service Center

**1. My Apps with single sign-on**



**2. By phone: 888-681-2249, Option 1.**

When you call the Whole Foods Market Benefits Service Center, you'll be connected with an experienced Service Center Representative who can help you understand your benefit plans, answer any questions, and help you enroll.

The Whole Foods Market Benefits Service Center is available at **888-681-2249**, with extended business hours from 7 a.m. to 8 p.m. CT, Monday through Friday, during Annual Benefits Enrollment to serve all shifts. When you call, your Service Center Representative will ask you to provide the following information to confirm your identity and ensure a personalized experience:

- First and last name
- Last four digits of your Social Security Number
- Address
- Date of birth

If an alternative language is needed, Spanish-speaking representatives are available to help. In addition, there is the option to request an interpreter for additional languages.



# *Medical and Prescription Coverage*

WFM offers comprehensive medical plans to meet the needs of our Team Members. Eligibility for the medical plans is determined by your home ZIP code based on the address WFM has on file in Workday. When you enroll, you will only see the medical plan options you are eligible for in the benefits enrollment portal.

- The **National Choice Plan (Choice)** offers a national network of providers through BlueCross BlueShield of Texas (begins on **page 12**). With this plan, you choose your Health Care Funding Account— Health Savings Account (HSA) or Personal Wellness Account (PWA) (begins on **page 24**).

- The **National Select Plan (Select)** is available in select markets where the Whole Health Plan is not available (except Hawaii). The plan offers a national network of providers through BlueCross BlueShield of Texas (begins on **page 13**). With this plan, you will be enrolled in a Personal Wellness account (PWA).

- The **Whole Health Plan (WHP)** is available in select markets, with a Preferred Tier local network of providers through Employers Health Network (EHN)* and an Expanded Tier national network of providers through Aetna Signature Administrators (ASA) (begins on **page 16**). With this plan, you choose your Health Care Funding Account—Health Savings Account (HSA) or Personal Wellness Account (PWA) (begins on **page 24**).

- **Prescription coverage** through Prime Therapeutics is automatically available with the Choice, Select, and WHP (see **page 20**) and provides access to over 60,000 in-network pharmacies.

- The **Hawaii Preferred Provider Organization (PPO)** through HMSA for Team Members in Hawaii (see **page 23**).

*\* For New York Metro area residents, the Preferred Tier network is provided by Northwell Direct. Visit **wfm.employershealthnetwork.com** for details.*



### Find an In-Network Provider

You always save money on care by using in-network providers. You can find a provider by visiting the benefit provider's website and using the Provider Search feature. Or call the Whole Foods Market Benefits Service Center at **888-681-2249**, from 7 a.m. to 8 p.m. CT, Monday through Friday, to speak to a Service Center Representative who can help you find a provider in your network.

## How the National Choice Plan (BCBSTX) Pays for Benefits
Review the medical and prescription plan details in the table below.

| National Choice Plan (BCBSTX) with HSA or PWA | | |
|---|---|---|
| **Plan Feature** | **In-Network** | **Out-of-Network** |
| **HSA or PWA Funding** | $1,000 Individual<br>$1,500 Family (includes all other coverage tiers) | |
| **Annual Deductible**<br>• Individual<br>• Family | $3,200<br>$5,000 | $7,500<br>$10,500 |
| **Out-of-Pocket Maximum**<br>• Individual<br>• Family | $6,650<br>$13,300 | $13,300<br>$26,200 |
| You Pay | | |
| **Preventive Care** | $0 not subject to deductible | 60% after deductible |
| **Office Visits** (PCP/Specialist) | 25% after deductible | 60% after deductible |
| **Urgent Care Visits** | 25% after deductible | 60% after deductible |
| **Lab Services** (X-ray, blood work) | 25% after deductible | 60% after deductible |
| **Inpatient Hospital Services** | 25% after deductible | 60% after deductible |
| **Outpatient Hospital Services** | 25% after deductible | 60% after deductible |
| **Emergency Room Care** | 25% after deductible | 25% after deductible |



## NEW National Select Plan (BCBSTX)

The new National Select Plan through BlueCross BlueShield provides a unique blend of national coverage with lower deductibles than the National Choice Plan, copays for doctor's visits, and more. The plan comes with a Preferred Wellness Account (PWA) to help you pay for care.

| National Select Plan (BCBSTX) with PWA | | |
|---|---|---|
| **Plan Feature** | **In-Network** | **Out-of-Network** |
| **PWA Funding** | $500 Individual<br>$1,000 Family (includes all other coverage tiers) | |
| **Annual Deductible**<br>• Individual<br>• Family | $1,600<br>$3,200 | $7,500<br>$10,500 |
| **Out-of-Pocket Maximum**<br>• Individual<br>• Family | $3,325<br>$6,650 | $13,300<br>$26,200 |
| You Pay | | |
| **Preventive Care** | $0 not subject to deductible | 60% after deductible |
| **Office Visits** (PCP) | $30 copay | 60% after deductible |
| **Office Visits** (Specialist) | $60 copay | 60% after deductible |
| **Urgent Care Visits** | $60 copay | 60% after deductible |
| **Lab Services** (X-ray, blood work) | 25% after deductible | 60% after deductible |
| **Inpatient Hospital Services** | 25% after deductible | 60% after deductible |
| **Outpatient Hospital Services** | 25% after deductible | 60% after deductible |
| **Emergency Room Care** | $200 copay then 25%, after deductible | $200 copay then 25% after deductible |



## Programs and Resources

The National Choice and National Select Plans provide broad, national access to top doctors and hospitals wherever you might need care. In partnership with BCBSTX, these plans offer the following programs and resources designed to help you access quality affordable care when you need it:

 **Your Primary Care Provider (PCP)**

Your PCP is your partner in improving and maintaining your health and well-being. While you do not need a referral from your PCP to see a specialist, your PCP can help create a baseline of care and connect you with additional providers and resources. Remember, you pay nothing for in-network preventive care visits, like your annual physical, which offers a prime opportunity to get to know your PCP and create a pathway for a healthy future.

 **Virtual Visits Powered by MDLive**

MDLive connects you with a doctor or behavioral health provider anytime, by phone or video, for the treatment of:

- Routine illness like cold and flu
- Behavioral health needs
- Dermatology issues like rashes
- And more

MDLive sick visits cost less than an urgent care or ER visit, and you pay a flat fee for behavioral health visits based on the services you receive before you meet the deductible (see **page 15** for details).

 **Virtual Back and Joint Care through Hinge Health**

Available to National Choice and National Select Plan enrollees, Hinge Health helps you conquer back and joint pain, recover from injuries, prepare for surgery, and stay healthy and pain-free. Their programs pair wearable sensor-guided exercise therapy with a clinical care team including physical therapists, health coaches, and physicians.



## Making the Most of the National Plan: Know Where to Go

When you need immediate medical care and your doctor isn't available, you have several alternatives to the emergency room that can provide quality care, save you time and cost less. See the table below for guidance.

| Medical Care Options | Virtual Visits through BCBSTX (Powered by MDLive) | Urgent Care | Emergency Room |
|---|---|---|---|
| **When You Might Use It** | • Fever<br>• Headache<br>• Sinus infection<br>• Sore throat<br>• Cold & flu<br>• Bronchitis<br>• Urinary tract infection<br>• Rashes | • Sprains<br>• Fractures<br>• Stitches | • Persistent pain<br>• Trouble breathing<br>• Dizziness |
| **Your Cost for the Visit** | **Before the deductible has been met:**<br>• $44 per sick visit<br>• $80 – $175 per behavioral health visit<br>**After the deductible has been met:** 25% | 25% after deductible at an in-network facility | For a true emergency:<br>• National Choice and Whole Health Plan: 25% after deductible<br>• National Select: $200 copay, then 25% after the deductible |
| **Average Wait Time** | A few minutes | About an hour | A few hours |
| **Access** | 24/7/365 by phone or video conference<br>**888-680-8646** | Extended business hours | 24/7 |



## Do You Have a Primary Care Physician?

Having a primary care physician (PCP) is the first step in maintaining better health and saving on health care costs. Think of your PCP as your partner in creating a healthier you. Your PCP can make sure you get the age-appropriate preventive care you need and help you find a specialist if you need one.



## The Whole Health Plan

The Whole Health Plan (WHP) is available in 13 select markets. Eligibility is based on your home ZIP code. The WHP is offered in:

Arizona: Phoenix/Tucson
California: Greater Los Angeles/Orange County/San Diego
Colorado: Denver
Florida: Miami/Orlando
New York: New York Metro*
Texas: Austin/Dallas-Fort Worth/El Paso/Houston/San Antonio
Washington: Seattle

*For New York Metro area residents, the Preferred Tier network is provided by Northwell Direct. Visit **wfm.employershealthnetwork.com** for details.*

Consistent with the National Choice Plan, when you enroll in the WHP, you get to choose the type of Health Care Funding Account to pair with: a Health Savings Account (HSA) or a Personal Wellness Account (PWA). See **page 24** for more information about both accounts. Also, when you enroll in the WHP, you'll automatically receive in-network prescription coverage.

## The WHP Network Advantage

While many medical plans simply offer you the opportunity to choose between in- and out-of-network providers, the WHP has two in-network tiers, both with access to high-quality vetted care providers. In addition to the Expanded Tier that has the same level of benefit as the National Choice Plan, the Preferred Tier has even lower deductibles and out-of-pocket maximums. You can use either at any time, and your money spent goes toward both tier deductibles.

- **Preferred Tier:** Access a curated network of recognized local providers, clinics and hospitals that have partnered with us to offer services at an even greater benefit (see **page 18** for details) through Employers Health Network (EHN), administered by WebTPA. You also have access to the Whole Health Primary Care Provider Network, which offers primary care services at no cost* through a large selection of locations.

- **Expanded Tier:** Access a national network of providers, clinics and hospitals through Aetna (Aetna Signature Administrators) to receive care at the standard benefit level (see **page 18** for details) similar to the National Choice Plan, administered by WebTPA.

- **Out-of-Network Tier:** The WHP provides a benefit for services received from out-of-network providers. Remember, you generally pay less for in-network services.

*\* If you elect the HSA, this care is subject to the Preferred Tier Deductible. If you elect the PWA, this care is not subject to the deductible.*

### The Core of Care

With the WHP, you have easy access to the caring and nurturing relationships you want with the convenience of technology designed to simplify and facilitate services and care when you need it. From Health Resource Coordinators (HRCs) who work closely with Preferred Providers, specialists, and hospitals to align your health and wellness goals, to virtual urgent care, virtual behavioral health, and virtual musculoskeletal support in your moment of need and everything in between, you are surrounded by a team of professionals committed to empowering you throughout your healthcare journey.

The WHP's focus on the Core of Care enables you to receive zero cost* primary care with local, brand-recognized health systems when you elect the PWA and visit a Whole Health Primary Care Provider. All members have free access to concierge level service with an HRC. See **page 18** for more details.

### Making the Most of the Whole Health Plan: Know Your Care Team

The WHP is built on two relationships to meet your unique needs as a WHOLE person:

- Your relationship with your Primary Care Provider (PCP) to meet all your medical needs, and

- Your relationship with your Health Resource Coordinator (HRC) to work with you to understand your resources and help you coordinate your care.

### The Whole Health Plan has the foundation of three pillars to support our approach to care:

- **Care:** Facilitates convenient access to care and the necessary time for meaningful connections through intentional partnerships with local healthcare systems and provider partners while still valuing choice.

- **Cost:** Enables you to minimize your healthcare expenses through a tiered network approach and multiple options for common care needs at little-to-no cost when you elect the PWA.*

- **Coordination:** Provides free access to an HRC, your link and single point of contact between all healthcare touchpoints, both internally (TMS) and externally (plan administrators and providers)—from benefit plan details to doctor visits to specialty and supportive services!

*If you elect the HSA, this care is subject to the Preferred Tier deductible.*

### Core Partners:

- **Virtual Urgent Care**
  When you need care after hours, weekends, holidays or anytime your Primary Care Provider is not available, virtual care is there.

- **Virtual Behavioral/Mental Health Care**
  Mental health is an important part of your overall health. As a WHP member, you can easily access convenient online mental health care that is always confidential.

- **Virtual Back and Joint Care**
  The WHP partners with Hinge Health to help you conquer back and joint pain, recover from injuries, prepare for surgery, and stay healthy and pain-free. Their programs pair wearable sensor-guided exercise therapy with a clinical care team including physical therapists, health coaches, and physicians.

### Get Started

- To reach out to a Concierge Health Resource Coordinator, call **844-380-4554**.

- For WHP plan details, introductory videos on how the WHP works, and more, scan the QR code or visit **wfm.employershealthnetwork.com.**



### How the Whole Health Plan Pays for Benefits

Review the medical plan details and how the plan covers benefits depending on which network provider you use in the table below. Keep in mind that, if you choose the HSA, the deductible must be met before the plan begins to pay benefits for most services. With the PWA, the annual deductible will not apply to certain services (as shown below).

| Plan Feature | Preferred Medical and Wellness Providers* | Whole Health Plan with HSA or PWA | | |
| --- | --- | --- | --- | --- |
| | | In-Network | | Out-of-Network |
| | | Preferred Tier | Expanded Tier | |
| **HSA or PWA Funding** | $1,000 Individual / $1,500 Family | | | |
| **Annual Deductible** <br> ● Individual <br> ● Family | $0 (PWA only) | $1,700 <br> $3,400 | $3,200 <br> $5,000 | $7,500 <br> $10,500 |
| **Out-of-Pocket Maximum** <br> ● Individual <br> ● Family | $0 (PWA only) | $3,325 <br> $6,650 | $6,650 <br> $13,300 | $13,300 <br> $26,200 |
| **You Pay** | | | | |
| **Preventive Care** | $0, not subject to deductible | $0, not subject to deductible | $0 not subject to deductible | 60% after deductible |
| **Office Visits** (PCP/Specialist) | PCP: $0 (PWA only)** <br><br> Specialist: N/A | 25% after deductible | 25% after deductible | 60% after deductible |
| **Urgent Care Visits** | N/A | 25% after deductible | 25% after deductible | 60% after deductible |
| **Lab Services** (X-ray, blood work) | 25%** | 25% after deductible | 25% after deductible | 60% after deductible |
| **Inpatient Hospital Services** | N/A | 25% after deductible | 25% after deductible | 60% after deductible |
| **Outpatient Hospital Services** | N/A | 25% after deductible | 25% after deductible | 60% after deductible |
| **Emergency Room Care** | N/A | 25% after deductible | 25% after deductible | 25% after deductible |

*To learn more about preferred medical and wellness providers, visit **wfm.employershealthnetwork.com**.*

**If you elect the HSA, this care is subject to the Preferred Tier deductible. If you elect the PWA, this care is not subject to the deductible.*

## Making the Most of the Whole Health Plan

Whole Health is the personal, convenient, and integrated health plan that enables Team Members to make better informed health and wellness decisions by partnering with committed, trusted providers and supportive, knowledgeable coordinators for a seamless, consistent, and value-driven experience.

| Medical Care Options | Preferred Primary Care Providers (PCPs) | Urgent Care | Emergency Room |
|---|---|---|---|
| When You Might Use It | • Preventive care<br>• Common illnesses<br>• Chronic disease management<br>• Health coaching referrals | • Sprains<br>• Fractures<br>• Stitches | • Persistent pain<br>• Trouble breathing<br>• Dizziness |
| Your Cost for the Visit | **PWA members:** $0<br>**HSA members:**<br>• Preventive care: $0<br>• All other services: 25% after deductible | 25% after deductible at an in-network facility | 25% after deductible for a true emergency |
| Average Wait Time | Wait times may vary | About an hour | A few hours |
| Access | Select a preferred PCP at **wfm.employershealthnetwork.com** | Extended business hours | 24/7 |

Visit **wfm.employershealthnetwork.com** to see a list of available providers.

**Whole Health Primary Care Network**

The Whole Health PCPs are a curated network of primary care providers invested in your healthcare outcomes. Whole Health PCPs work closely with Health Resource Coordinators to align your health and well-being experience, and work with an integrated team of specialists and hospitals.



## Prescriptions

When you enroll in a WFM medical plan, you will receive in-network prescription coverage through Prime Therapeutics. You can choose from any of the over 60,000 retail pharmacies in the Prime network for your 30-day prescriptions. For 90-day prescriptions, you can select either CVS or Walgreens as your designated 90-day retail pharmacy. The designation must be made during Annual Benefits Enrollment. You will also have access to Amazon Pharmacy for direct-to-home mail order service.  Read on for more information about how the prescription coverage works in each of the medical plans.

### National Choice and National Select Plans In-Network Prescription Benefits

| Type of Drug | 30-day supply | 90-day supply |
|---|---|---|
| **Preventive: Standard*** | $0, not subject to deductible | $0, not subject to deductible |
| **Preventive: Expanded** | Cost-sharing percentage as per below, not subject to deductible | Cost-sharing percentages as per below, not subject to deductible |
| **Generic** | 10% after deductible | 10% after deductible |
| **Brand Name Formulary** | 25% after deducible | 25% after deductible |
| **Non-Formulary** | 50% after deductible | 50% after deductible |
| **Specialty** | 50% after deductible | N/A |

*If included on the ACA Drug List.*



### Taking a Specialty Medication?
If you take a specialty medication, Accredo will be the specialty pharmacy. Accredo provides 24/7/365 access to pharmacists, free home delivery, and online tools to help you learn more about your medication.



**Whole Health Plan In-Network Prescription Benefits**

| Type of Drug | Standard Benefit | | Expanded Benefit* | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 30-Day Supply | 90-Day Supply | 30-Day Supply | | 90-Day Supply | |
| | | | HSA | PWA | HSA | PWA |
| Preventive: Standard** | $0, not subject to deductible | | $0, not subject to deductible | | | |
| Preventive: Expanded | Cost-sharing percentages as per below, not subject to deductible | | $0 for generics; $25 max for preferred brand; non-preferred brand not included, not subject to deductible | | | |
| Generic | 10% after deductible | | 10% with $2 min and $25 max, after deductible | 10% with $2 min and $25 max, not subject to deductible | 10% with $6 min and $75 max, after deductible | 10% with $6 min and $75 max, not subject to deductible |
| Preferred Brand | 25% after deductible | | 25% with $50 max, after deductible | 25% with $50 max, after deductible | 25% with $150 max, after deductible | 25% with $150 max, after deductible |
| Non-Preferred Brand | 50% after deductible | | 50% after deductible | 50% after deductible | 50% after deductible | 50% after deductible |
| Specialty | 50% after deductible | N/A | 50% after deductible | 50% after deductible | N/A | |

*Expanded Benefits are offered to established patients of the Whole Health Primary Care Network in the Whole Health Plan (WHP), and offered on items that Whole Health PCPs in this network prescribes.*

**If included on the ACA Drug List.*

## Taking a Maintenance Medication? Try a 90-Day Supply

In the National Choice, National Select, and Whole Health Plan, if you take a long-term or maintenance medication or treat an ongoing chronic condition, you have options for how you receive your 90-day supply. This does not apply to 30-day prescriptions.

- **CVS or Walgreens Retail Pharmacies:** You can receive up to a 90-day supply at CVS or Walgreens retail pharmacies nationwide. You must elect which retail chain, CVS or Walgreens, as your designated 90-day retail pharmacy location during Annual Benefits Enrollment. Like other benefits, this election will remain until the following Annual Benefits Enrollment or if you have a qualified life event.

- **Amazon Pharmacy Mail Order:** You have the option to use Amazon Pharmacy for 90-day mail order prescriptions. With Amazon Pharmacy, you can access a pharmacist 24/7/365. The Amazon shopping experience provides clear pricing and easy refills with free home delivery. Register at **pharmacy.amazon.com** and click "get started."

## How the Medical Plans Work

To help you understand how the medical plans work, as well as the differences between them.

| Plan Feature | National Select | National Choice | WHP |
|---|---|---|---|
| **Preventive Care** | Preventive care like annual physicals and screenings are 100% covered when you use an in-network provider (subject to certain guidelines). | | |
| **Annual Deductible** | • You pay copays for primary care, specialist, and urgent care visits and the full cost of other covered services (including prescriptions) until you reach the deductible.<br>• **If you enroll dependents:**<br>  – The plan will pay benefits for any family member who meets the individual deductible.<br>  – Once the family deductible is met, the plan begins to pay benefits for all family members. One family member or a combination of family members can satisfy the family deductible. | • You pay the full cost of covered services (including prescriptions) until you reach the deductible.<br>• **If you enroll dependents:**<br>  – The plan will pay benefits for any family member who meets the individual deductible.<br>  – Once the family deductible is met, the plan begins to pay benefits for all family members. One family member or a combination of family members can satisfy the family deductible. | • You pay no cost for services provided by Whole Health PCPs when you elect the PWA*. You will receive an expanded prescription benefit with more no-cost medication choices if prescribed by a WHP PCP.<br>• The WHP has two In-Network Tiers. The Preferred Tier, deductible is approximately half of the Expanded Tier.<br>• You pay the full cost of covered services and prescriptions until you reach the deductible.<br>• **If you enroll dependents:**<br>  – Due to a lower deductible for the Preferred Tier, and the IRS HSA guidelines, the family deductible must be met before the plan pays benefits for any one person. One family member or a combination of family members can satisfy the family deductible. |
| **Coinsurance** | Once you meet the annual deductible, you and the plan share the cost of covered services:<br>• You pay 25% of the cost of in-network services; the plan pays 75% of the cost of in-network services. | | |
| **Out-of-Pocket Maximum** | • After you reach the out-of-pocket maximum (OOP max), the plan pays 100% of in-network covered expenses for the remainder of the year.<br>• **If you enroll dependents:**<br>  – The plan pays 100% for any family member who meets the individual OOP max.<br>  – Once the family OOP max is met, the plan pays benefits for all family members. One family member or a combination of family members can satisfy the family OOP max. | | |
| **Funding Accounts** | You will be eligible for the PWA. WFM contributes up to $500 for individual and up to $1,000 for family coverage. | You will be eligible for the HSA or the PWA. WFM contributes up to $1,000 for individual and up to $1,500 for family coverage. | |

*If you elect the PWA, this care is not subject to the deductible. If you elect the HSA, certain services may be subject to the Preferred Tier deductible.*

22

# The HMSA PPO (for Hawaii Team Members Only)

The HMSA PPO plan is a Preferred Provider Organization (PPO) plan, which means that you have the flexibility to choose the providers you receive care from. However, you will have lower out-of-pocket costs if you seek care from HMSA Participating Providers. The HMSA PPO plan is available to Team Members living in Hawaii only.

### How the HMSA PPO Plan Pays for Benefits
Review the medical and prescription plan details in the table below.

| HMSA Preferred Provider Organization (PPO) | | |
|---|---|---|
| **Plan Feature** | **Participating Provider** | **Non-Participating Provider** |
| **Annual Deductible*** <br> ● Individual <br> ● Family | $100 <br> $300 | |
| **Out-of-Pocket Maximum** <br> ● Individual <br> ● Family | $2,500 <br> $7,500 | |
| **You Pay** | | |
| **Preventive Care** | 0% (no charge) | 30% after deductible |
| **Office Visits** (PCP/Specialist) | 10% | 30% after deductible |
| **Urgent Care Visits** | 10% | 30% after deductible |
| **Inpatient Lab Services** (X-ray, blood work) | 10% | 30% after deductible |
| **Inpatient Hospital Services** | 10% | 30% after deductible |
| **Outpatient Lab Services** (X-ray, blood work) | 20% | 30% after deductible |
| **Outpatient Hospital Services** | 10% | 30% after deductible |
| **Emergency Room Care** | 20% | 20% |
| **Prescriptions – Retail** (Per 30-day supply) <br><br> ● Generic <br> ● Brand Name Formulary <br> ● Non-Formulary <br> ● Specialty | There is a maximum annual copay per person/per family of $3,600/$4,200 <br> $5 copay <br> $20 copay <br> $20 copay <br> $100 copay | <br><br> 20% after $5 copay <br> 20% after $20 copay <br> 20% after $20 copay <br> 100% |
| **Prescriptions – Mail Order** (Per 84 – 90-day supply) <br> ● Generic <br> ● Brand Name Formulary <br> ● Non-Formulary | <br><br> $10 copay <br> $45 copay <br> $45 copay | Not covered |

*If you use a non-participating provider, you will be responsible for the $100 deductible and the difference between the actual charge and the eligible charge. Once the deductible is met, you will be responsible for the non-participating copay and the difference between the actual charge and the eligible charge.*

## Participating vs. Non-Participating Providers
Using a participating provider can help you get the most out of your benefits. Participating Providers include the following: HMSA, BlueCard PPO Provider, BlueCard Participating Provider, Contracting Provider. To find a provider, visit **www.hmsa.com** or call 948-6111 (Oahu) or 800-776-4672 (toll-free on the Neighbor Islands or Mainland).

# *Health Care Funding Accounts*

When you enroll in the National Choice plan or Whole Health Plan, you have the choice of two Health Care Funding Accounts to pair with your medical coverage. Each account is company-funded and can help you pay for health care expenses for yourself and your eligible dependents.

Here is an overview of how each account works so you can decide which type of account will best meet your needs.

| | Health Savings Account (HSA)* | Personal Wellness Account (PWA) |
|---|---|---|
| **Who owns it?** | Team Member | WFM |
| **Will WFM contribute?** | Yes, WFM will contribute:<br>$1,000 Individual<br>$1,500 Family | Yes, WFM will contribute:<br><br>National Select<br>$500 Individual<br>$1,000 Family<br><br>National Choice & WHP<br>$1,000 Individual<br>$1,500 Family |
| | (One half deposited in January; the balance deposited in July of each plan year. You must be actively employed at the time the deposit is made.) | |
| **Can I contribute?** | Yes, you can contribute pre-tax up to the annual IRS maximum ($4,150 for individual coverage and $8,300 for all other coverage levels) less WFM's contribution. If you are age 55 or reaching age 55 during the year, you can contribute an additional $1,000 in catch-up contributions. | No, the PWA accounts can only receive WFM contributions. |
| **Do dependent expenses qualify?** | Yes, if your dependent is a spouse or a tax-eligible dependent under age 26 (anyone who you can claim as your dependent on your tax return). **Note:** Domestic Partners are not eligible unless they qualify as a tax dependent. | Yes, if your dependent is a spouse or a tax-eligible dependent under age 26 (anyone who you can claim as your dependent on your tax return) and is enrolled in the WFM medical plan as your dependent. **Note:** Domestic Partners are not eligible unless they qualify as a tax dependent. |
| **Do unused funds roll over?** | Yes, and they are yours to keep, even if you leave WFM or retire. | Yes, as long as you re-enroll in a PWA-eligible medical plan the following year. Unused funds in the PWA are forfeited if you leave WFM. |

*Per the USA Patriot Act, your personal information used to establish your HSA account must pass the Customer Identification Program (CIP). You will be notified if your information does not pass CIP and be given instructions for rectifying the CIP issue. If you are unable to rectify the issue, you may be ineligible for any WFM contributions.*

## A Closer Look at the HSA

Here's how a Health Savings Account (HSA) works.

| Start it. | Grow it. | Use it. | Keep it. |
|---|---|---|---|
| If you enroll in the National Choice or Whole Health Plan through WFM and choose the HSA as your Health Care Funding Account, **you will need to consent to the HSA terms and conditions when you enroll at benefits. wholefoods.com.** You will receive a debit card in the mail. | You can make pre-tax contributions (up to IRS limits) and can start, stop or change your contributions at any time. WFM contributes: $1,000 if you enroll in individual coverage and $1,500 if you enroll in family coverage. | Use your HSA funds to pay for eligible medical, dental and vision expenses for yourself and your eligible dependents. Withdrawals for qualified health care expenses are tax free.* | There is no "use it or lose it" rule – you can carry over your HSA funds year over year for future health care expenses. You can even take it with you if you leave or retire from WFM. |

*The IRS requires documentation to ensure the expenses are HSA compliant. Receipts must include, date and description of service or purchase, dollar amount (after insurance, if applicable, name of provider or merchant). An Explanation of Benefits (EOB) from the medical carrier typically has all this required information.*

## HSA Eligibility Rules

To enroll in the HSA, you must enroll in the National Choice Plan or the Whole Health Plan. In addition:

- You can't have other health coverage unless it is a qualified high deductible health plan.
- You or your spouse can't have a general purpose Health Care Flexible Spending Account (FSA) or Health Reimbursement Account (HRA) in the same year.
- If you are enrolled in Medicare, you are not eligible to receive WFM contributions or contribute to the HSA.
- You can't be enrolled in TRICARE or have received Veterans Administration (VA) health benefits in the previous three months.
- You can't be claimed as a dependent by someone else.



# *Dental*

You have three dental plan options all provided by Cigna Dental: The Dental Health Maintenance Organization (DHMO) Plan, the Low Plan and the High Plan.

**Note:** You are eligible for the DHMO if there is a DHMO provider within 10 miles of your home ZIP code. Eligibility is determined by your home ZIP code based on the address that WFM has on file for you in Workday. It is important to update your information in Workday as it changes. When you enroll, you will only see the dental plan options you are eligible for in the benefits enrollment portal.

| Plan Feature | DHMO | Low Plan | High Plan |
|---|---|---|---|
| | In-Network Only | In- and Out-of-Network | |
| **Annual Deductible** (Does not apply to preventive and diagnostic services) | None | $50 per person | $50 individual $150 family |
| **Preventive and Diagnostic** (Exams, cleanings, X-rays, space maintainers, fluoride*, sealants*) | You pay $0 (100% covered) | You pay $0 (100% covered) | You pay $0 (100% covered) |
| **Basic Restorative** (Fillings, extractions, root canals and pulp therapy, treatment of gum and mouth tissue disease) | Copays vary by procedure ($12 – $460) | You pay 20% after deductible | You pay 20% after deductible |
| **Major Restorative** (Inlays, crowns, fixed/removable bridges, full or partial dentures) | Copays vary by procedure ($335 – $875) | You pay 50% after deductible | You pay 50% after deductible |
| **Orthodontia** | 24-month treatment fees**: Children to age 19: $2,184 Adults: $2,904 | Not covered | You pay 50% after deductible Lifetime Orthodontia Maximum: $1,200 |
| **Annual Maximum** (Does not apply to preventive and diagnostic services) | None | $1,000 per person | $1,500 per person |

*Fluoride is limited to members who are younger than 19 years old, and sealants are limited to members who are younger than 14 years old.
**Cases beyond 24 months require additional payments.

## Find a Cigna Provider

Using a Cigna network provider will help you save money no matter what dental plan you're in.

- **If you elect the Cigna DHMO:** You only receive benefits when you use a Cigna DHMO network provider.
- **If you elect the Low Plan or High Plan:** You can visit a provider outside the Cigna network, but you'll receive a greater benefit if you stay in-network.

Visit **www.cigna.com** to locate a provider today.

# *Vision*

WFM offers the option to elect vision coverage through Vision Service Plan (VSP), which helps cover the cost of regular eye exams and other vision care expenses.

| Plan Feature | In-Network | Out-of-Network |
|---|---|---|
| **Exam** (Once every calendar year) | $10 copay | Plan pays up to $45 |
| **Materials Copay** (Applies to lenses and frames) | $10 copay | $10 copay |
| **Lenses*** (Once every calendar year) <br>• Single vision <br>• Bifocal <br>• Trifocal | $0 copay | • Plan pays up to $30 <br>• Plan pays up to $50 <br>• Plan pays up to $65 |
| **Lens Enhancements** <br>• UV lens coating <br>• Tints/Photochromic adaptive lenses <br>• Standard progressive lenses <br>• Premium progressive lenses <br>• Custom progressive lenses | $0 copay <br>$0 copay <br><br>$0 copay <br>$95 – $105 copay <br>$150 – $175 copay | • Not covered <br>• Plan pays up to $5 <br><br>• Plan pays up to $50 <br>• Plan pays up to $50 <br>• Plan pays up to $50 |
| **Frames** (Once every calendar year) <br>• Retail allowance <br>• Discount over allowance | $200 allowance <br>20% off amount over allowance | Plan pays up to $70 |
| **Contact Lenses*** <br>• Elective | $200 allowance <br>Includes a 15% discount for fit and evaluation | Plan pays up to $105 |

*The vision plan covers either lenses with frames or contact lenses in one calendar year, but not both. If you choose to switch to eyeglasses or contacts, they are covered during the next calendar year.*



## Enjoy Additional Discounts and Savings

As a vision plan participant, you can enjoy additional discounts and savings on glasses and prescription sunglasses, contact lenses and even laser vision correction, including:

- 20% off additional glasses, including prescription sunglasses from any VSP provider within 12 months of your last vision exam.
- 15% off the cost of a contact lens exam (fitting and evaluation).
- Average 15% off the regular price or 5% off the promotional price of laser vision correction.

# *Flexible Spending Accounts*

You can choose to contribute to a Flexible Spending Account (FSA) for additional tax savings and to help pay for eligible health care and dependent care expenses.

## Understanding the Accounts

Review the table below to understand your FSA options and determine which account(s) are best for you.

| Frequently Asked Questions | Health Care FSA | HSA-Compatible FSA | Dependent Care FSA |
|---|---|---|---|
| **Which medical plan must I enroll in to participate?** | National Select Plan, National Choice Plan with PWA, Whole Health Plan with PWA, HMSA PPO, or waive coverage | National Choice with HSA or Whole Health Plan with HSA | All benefits-eligible Team Members are eligible, regardless of medical plan enrollment |
| **Who owns the account?** | Whole Foods Market | | |
| **Will WFM contribute?** | No | | |
| **How much can I contribute?*** | $3,050** | $3,050** | $5,000*** |
| **When will the funds be available?** | Your full contribution is available immediately | Your full contribution is available immediately | As they are deducted from your paycheck |
| **What can I use the funds for?** | Medical, prescription, dental, vision, and other eligible services | Funds can be used for dental and vision expenses only | Qualified childcare and elder care expenses that allow you (and your spouse, if married) to work |
| **How do I use/access the funds?** | Use the debit card provided by WEX, the FDA administrator, or pay with personal funds and request reimbursement | | |
| **When do claims have to be filed?** | March 31, 2025 is the deadline to submit claims for eligible expenses incurred during 2024 (if your employment ends before year end, claims must be submitted within 90 days of your termination date) | | |
| **Do funds roll over?** | No[†] | | |

\*  *For Highly Compensated Employees (HCEs), as that term is defined by the IRS in IRC Section 414(q), your Health Care and Dependent Care FSA contributions may be capped. Please visit benefits.wholefoods.com for the maximum.*

\*\*  *If you elect $3,050 and the IRS increases the 2024 annual maximum after Annual Benefits Enrollment, your contribution will automatically be increased to the new IRS annual maximum prior to the first pay period of 2024.*

\*\*\* *If you are married and your spouse files taxes separately, your contribution is limited to $2,500. Your total household contribution cannot exceed the IRS annual limit or the income of you or your spouse, whichever is lower. Consult a tax advisor for details.*

[†]  *Funds that remain in the account at the end of the year are forfeited according to IRS rules.*



## Manage Your Account Online

At **www.wexinc.com,** you can check your FSA, HSA, or PWA balance, request a reimbursement, designate a beneficiary, or update your profile and preferences.

# *Income Protection Benefits*

Life doesn't always go as expected. That's why we provide you with access to additional benefits designed to protect you and your family from the financial impact of unforeseen  circumstances.

## Life and Accidental Death and Dismemberment (AD&D)

Now administered by Aflac, Life and AD&D insurance benefits offer financial protection for you and your family in the event of your death or injury due to an accident. You may choose to elect Voluntary Life Insurance coverage for yourself that is equal to an increment of your annual earnings up to a maximum amount of $750,000. When you elect and are approved for at least 1x your annual earnings of Team Member Voluntary Life Insurance, you will automatically receive Team Member Basic Life Insurance and Basic AD&D Insurance equal to 1x your annual earnings up to a maximum of $300,000 at no additional cost to you.

Voluntary Life Insurance coverage, including for Team Members, spouses/domestic partners, and children, is fully Team Member paid. Team Member contributions are deducted on a pre-tax basis from your paycheck. See the table below for your coverage options.

| Coverage Summary | Coverage Amount |
|---|---|
| **Company-Paid Team Member Basic Life Insurance** | 1x your annual earnings (up to a maximum of $300,000) when Team Member Voluntary Life Insurance is elected and approved. This benefit will not be effective until the Evidence of Insurability (EOI) is approved. Evidence of Insurability (EOI), and may impact the effective date of your Basic Life and Basic AD&D |
| **Team Member Voluntary Life Insurance** | 1x, 2x, 3x, 4x, or 5x your annual earnings (up to a maximum of $750,000.) Amounts greater than $500,000 require Evidence of Insurability (EOI), and may impact the effective date of your insurance. This benefit will not be effective until the Evidence of Insurability (EOI) is approved.<br><br>**Note**: Please refer to the Plan Booklet for more information on plan coverage and limitations. |
| **Spouse/Domestic Partner (DP) Life Insurance\*** | 50% of Team Member Voluntary Life Insurance coverage amount. (Benefit amount is subject to age reductions based on the Team Member's age.<br><br>**Note**: Please refer to the Plan Booklet for more information on plan coverage and limitations. |
| **Child(ren) and DP Child(ren) Life Insurance\*** | $10,000 (Children are eligible for coverage up to age 26.) |

**AD&D Insurance** Team Members who enroll in and are approved for Voluntary Life Insurance automatically receive AD&D coverage at no additional cost. The AD&D coverage is equal to the combined coverage amount of the Team Member Basic Life Insurance and Team Member Voluntary Life Insurance. AD&D Insurance pays benefits in the event of death and/or certain accidents. This coverage provides a benefit equal to 25%–100% of your combined Life Insurance benefit, depending on the type of loss.

*\* You must purchase Team Member coverage to elect this coverage. You must elect a Team Member only coverage amount of at least $10,000 in order to elect child/domestic partner child Life Insurance. Spouse/domestic partner coverage may also be subject to EOI.*

### Making Changes During 2024 Annual Benefits Enrollment

During 2024 Annual Benefits Enrollment only, you can elect or increase your existing Team Member Voluntary Life Insurance without providing EOI for coverage under $500,000. Any election exceeding $500,000 requires EOI. Please refer to the Plan Booklet for more information on plan coverage and limitations.

## Disability Insurance

Disability insurance helps you meet your financial needs if you become unable to work for an extended period of time. Short-Term Disability (STD) is offered through Sedgwick, and Long-Term Disability (LTD) is offered through Aflac. If you elect STD and/or LTD, Whole Foods Market pays 50% of the cost and you pay the remaining half, which is deducted on a pre-tax basis from your paycheck. Benefits-eligible new hires and Team Members who move into a benefits-eligible role as full-time and regularly work 30 or more hours per week are automatically enrolled in STD and LTD.

Team Members in California, New York, New Jersey or Rhode Island should contact their TMS representative to assess the coverage already provided by state-mandated disability plans.

**Hawaii Team Members:** The voluntary STD is in addition to the Hawaii Statutory Temporary Disability Insurance you may be eligible to receive, as outlined at the bottom of this page.

### A Closer Look at the Disability Coverage Options Available to You

| Coverage Summary | STD* | LTD |
|---|---|---|
| **What It Is** | Provides income protection benefits if you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury and have a 20% or more loss in weekly earnings due to the same sickness or injury. | Provides income protection benefits if you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury for a period of at least 180 days and have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury. |
| **When Benefits Begin** | On the 8th day of your disability | On the 180th day of your disability |
| **Benefit Duration** | Benefits are paid out for up to 25 weeks for any single disability, depending on your diagnosis and condition. *In most cases, healthy pregnancies will receive benefits for six weeks (eight weeks for a Cesarean delivery).* | As long as you are disabled and unable to work, disability payments will continue until you reach the maximum period of payment. The maximum period of payment is determined by your age at the time of your disability and whether your disability is the result of a pre existing condition. For most disabilities, the maximum period of payment will be until age 65. |
| **Payments and Maximums**\*\* | 60% of your base weekly earnings, up to a maximum of $1,500 per week | 60% of your salary, up to a maximum of $10,000 per month |

*\* STD benefits will not be paid for any disability resulting from any illness, injury or pregnancy that occurred before you were covered under WFM's STD Plan.*

*\*\* Earnings and salary do not include overtime, bonuses, or any special compensation. Benefit payments are reduced by the amount of disability benefits you receive under any state disability law and other sources of compensation.*

### Hawaii Statutory Temporary Disability Insurance (TDI)

Employers are required to cover employees who work 20 hours per week for 14 consecutive weeks (does not need to be consistent nor with only one employer). While TDI is similar to STD, coverage begins with a seven calendar day waiting period after the onset of disability; benefits begin on the eighth day for up to 26 weeks of benefits; the benefit is equal to 58% of average weekly wage up to a maximum weekly benefit set annually by the Hawaii DOL ($640 in 2023).

# *Voluntary Benefits*

WFM offers additional voluntary benefits to help you protect your income and give you peace of mind.

### Auto and Home Program

The new Auto and Home Program through Aon Everyday provides access to special discounts on insurance policies for auto, home, boat, RV, and rentals. A variety of payment options are available, including payroll deductions. Learn more on Innerview.

Starting Jan. 1, 2024, call **800-438-6381** to talk to an Auto and Home representative about a new policy or to switch your existing policy to a discounted policy (even if not up for renewal). You'll need to provide your date of birth and Team Member ID.

### Accident, Critical Illness, and New Hospital Indemnity Insurance

We know life doesn't always go as expected, which is why we're providing you with access to a variety of additional benefits designed to protect you and your family from the financial impact of a qualifying injury or critical illness. Remember, these options are separate from your medical plan election.

| | Accident Insurance | Critical Illness Insurance | Hospital Indemnity Insurance |
|---|---|---|---|
| **What It Is** | Helps offset out-of-pocket expenses for qualifying accidents or injuries | Helps cover out-of-pocket costs related to a qualifying medical condition | Helps cover out-of-pocket costs related to a qualifying hospitalization |
| **What It Covers** | • Hospitalization<br>• Fractures<br>• Dislocations<br>• Surgical procedures<br>• Physical therapy<br>• Ambulance<br>• And more | • Some cancers<br>• Heart attack<br>• Stroke<br>• Paralysis<br>• Coma<br>• Kidney failure<br>• Major organ transplant<br>• And more | • Birth of a child<br>• Illness<br>• Surgery with hospital stay<br>• And more |
| **Benefit Amount** | Varies depending upon the accident and treatment received. For benefit amount details, **click here.**<br><br>Eligible to receive a $50 payment when you complete a covered wellness screening and file a claim with Aflac | You have a choice of a $10,000, $20,000 or $30,000 benefit.<br><br>Your spouse and child(ren) may receive 50% of your benefit.<br><br>Eligible to receive a $50 payment when you complete a covered wellness screening and file a claim with Aflac | Varies depending upon the type of hospitalization. For benefit amount details, **click here**.<br><br>Eligible to receive a $50 payment when you complete a covered wellness screening and file a claim with Aflac |
| **How It Works** | Lump-sum payment directly to you, so you get to decide how to spend the benefit. | Lump-sum payment directly to you, so you get to decide how to spend the benefit. Guidelines dictate benefit payment for each illness and circumstances under which it's paid. | Lump-sum payment directly to you, so you get to decide how to spend the benefit. Guidelines dictate benefit payment for each hospitalization under which it's paid. |

# *Additional Benefits*

WFM offers Team Members a variety of resources and benefits to support and encourage the overall well-being of you and your family.

## Paid Parental Leave

Welcoming a new child is an exciting and important time in any parent's life. WFM provides eligible Team Members with **six weeks of fully paid parental leave**, so you can focus on spending time with your newly born or adopted child.

To be eligible for parental leave, you must have must be a full-time Team Member and have completed 4,000 service hours with WFM at the time of the birth or adoption. Birth and non-birth parents, including adopting parents, are eligible for WFM paid parental leave following the date you become a new parent through a birth or adoption. Paid parental leave may be used to bond with birth or adopted children. You must take paid parental leave within 12 months of the birth or placement of a child.

Paid parental leave is coordinated with FMLA, WFM Short-Term Disability if elected, and any state-mandated income replacement, parental leave, and/or medical leave. For more information, contact Sedgwick at **844-465-6240**.

## Team Member Assistance Program

Team Members and their family members often face challenging daily demands, including issues at work, with family, finances and more. The confidential Team Member Assistance Program (TMAP) can help you achieve a better work-life balance with free, unlimited phone consultations, and up to seven (7) virtual sessions per concern per year. In addition, to unlimited in the moment support and behavioral health coaching, Team Members also have access to a library of mental health resources and work-life support. TMAP is available 24/7 at **TMAP.wholefoods.com** or call **888-WFM-TMAP**.

## Tobacco Cessation Program

If you want to quit tobacco, we want to support your journey and Quit For Life can help. Quit For Life's clinically proven program offers a customized plan, 24/7 personal support, and strategic tools to help you manage cravings. Get coach support, tips to tackle cravings, and a path to quit with recommended daily goals, articles, and videos. Get the tools and online resources you need to quit, free for Team Members. Visit **myquitforlife.com/wfm** or call **866-QUIT-4-LIFE**.

## Healthy Retreats

Ready to achieve and sustain a long-term healthy lifestyle? Participate in a Healthy Retreats program to get the knowledge, tools and support you need. Programs are offered during the year and include a variety of unique and intensive health and wellness experiences to choose from, presented by expert doctors known for cutting-edge preventive medicine. WFM may cover certain transportation and program costs for Team Members and their eligible spouses/domestic partners. PTO or unpaid time off is required to attend. Regular, full-time and part-time Team Members who have completed one year of service and have not had a corrective action within the previous six months, are eligible to apply for participation. Learn more by visiting Innerview.

## Pet Insurance

Pets play a huge role in our lives. To help take the worry out of covering costs for your pet's healthcare, Pet Insurance will reimburse you for covered vet visits, accidents, illness, and more. Go to **aoneveryday.com/wfm** to enroll or call **800-GET-MET8**, Mon.–Fri. 9 a.m.–9 p.m. ET, Sat.–Sun. 10 a.m.–7 p.m. ET. You can change from direct bill to payroll deduction.

32

# *Contribution Rates*

On the following pages are the biweekly Team Member contribution rates for 2024 benefits. Contribution rates are set at the start of each plan year and determined by your service hours listed in Workday on Dec. 31, 2023.

| Medical and Prescription Coverage for the National Choice Plan and Whole Health Plan (Non-Tobacco User) | | | | |
|---|---|---|---|---|
| Service Hours | TM Only | TM + Spouse/DP | TM + Child(ren) | TM + Family |
| < 4,000 | $25.00 | $153.00 | $132.00 | $229.00 |
| 4,000 – 19,999 | $25.00 | $88.00 | $76.00 | $132.00 |
| 20,000 – 39,999 | $0.00 | $35.00 | $30.00 | $53.00 |
| 40,000+ | $0.00 | $0.00 | $0.00 | $0.00 |

| Medical and Prescription Coverage for the National Select Plan (Non-Tobacco User) | | | | |
|---|---|---|---|---|
| Service Hours | TM Only | TM + Spouse/DP | TM + Child(ren) | TM + Family |
| < 4,000 | $53.00 | $229.00 | $199.00 | $341.00 |
| 4,000 – 19,999 | $53.00 | $158.00 | $137.00 | $235.00 |
| 20,000 – 39,999 | $22.00 | $99.00 | $85.00 | $147.00 |
| 40,000+ | $22.00 | $58.00 | $49.00 | $85.00 |

## Tobacco User Surcharge

Have you used tobacco or tobacco products, including cigarettes, pipes, cigars, chewing tobacco, snuff, e-cigarettes, or any other type of smoking or smokeless tobacco, in the last six months? If so, you will pay a $30 per-paycheck tobacco surcharge **in addition to your medical plan contributions**. WFM is committed to helping you live healthy, so if you want to quit tobacco, we want to support your journey. Our tobacco cessation program helps participants gain the knowledge, skills and behavior strategies to quit.

If you complete the tobacco cessation program on or after **January 1, 2024**, you will begin paying non-tobacco user contribution rates on the first of the following month; however, you will not receive a refund for any previous surcharge payments. Information about the program can be found on Innerview.

| Medical and Prescription Coverage for the National Choice Plan and Whole Health Plan (Tobacco User) | | | | |
|---|---|---|---|---|
| Service Hours | TM Only | TM + Spouse | TM + Children | TM + Family |
| < 4,000 | $55.00 | $183.00 | $162.00 | $259.00 |
| 4,000 – 19,999 | $55.00 | $118.00 | $106.00 | $162.00 |
| 20,000 – 39,999 | $30.00 | $65.00 | $60.00 | $83.00 |
| 40,000+ | $30.00 | $30.00 | $30.00 | $30.00 |

## Medical and Prescription Contributions for the National Select Plan (Tobacco User)

| Service Hours | TM Only | TM + Spouse | TM + Children | TM + Family |
|---|---|---|---|---|
| < 4,000 | $83.00 | $259.00 | $229.00 | $371.00 |
| 4,000 – 19,999 | $83.00 | $188.00 | $167.00 | $265.00 |
| 20,000 – 39,999 | $52.00 | $129.00 | $115.00 | $177.00 |
| 40,000+ | $52.00 | $88.00 | $79.00 | $115.00 |

## Medical and Prescription Contributions for the HMSA PPO

| Service Hours | TM Only | TM + Spouse | TM + Children | TM + Family |
|---|---|---|---|---|
| < 4,000 | $9.00 | $225.00 | $187.00 | $313.00 |
| 4,000 – 19,999 | $9.00 | $112.00 | $93.00 | $156.00 |
| 20,000 – 39,999 | $9.00 | $45.00 | $37.00 | $62.00 |
| 40,000+ | $0.00 | $0.00 | $0.00 | $0.00 |

## Dental Coverage

| | TM Only | TM + Spouse/DP | TM + Child(ren) | TM + Family |
|---|---|---|---|---|
| DHMO | $10.83 | $19.83 | $25.80 | $32.45 |
| Low Plan | $11.33 | $19.52 | $18.91 | $29.55 |
| High Plan | $19.13 | $38.29 | $34.46 | $53.67 |

## Vision Coverage

| | TM Only | TM + Spouse/DP | TM + Child(ren) | TM + Family |
|---|---|---|---|---|
| Vision Plan | $3.03 | $5.03 | $5.14 | $8.57 |

## Short-Term Disability and Long-Term Disability Insurance

| | Team Member Coverage Only |
|---|---|
| STD | $0.124 per $10 covered weekly benefit |
| LTD Non-Tobacco User | $0.1066 per $100 covered biweekly payroll |
| LTD Tobacco User | $0.1182 per $100 covered biweekly payroll |

## Accident Insurance and Hospital Indemnity Insurance

| | TM Only | TM + Spouse/DP | TM + Child(ren) | Family |
|---|---|---|---|---|
| Accident | $3.96 | $7.03 | $7.65 | $10.73 |
| Hospital Indemnity | $4.98 | $9.72 | $7.53 | $12.27 |

34

| Voluntary Life and AD&D Insurance | | | | |
|---|---|---|---|---|
| **Team Member Age** | **Team Member**<br>Per $1,000 of coverage<br>Choice of 1x, 2x, 3x, 4x or 5x<br>annual earnings rounded to the<br>next higher $1,000<br>(up to $750,000) | | **Spouse/Domestic Partner***<br>Per $1,000 of coverage<br>Coverage is 50% Team<br>Member benefit | |
| | **Non-Tobacco User** | **Non-Tobacco User** | **Tobacco User*** | |
| <25 | $0.0092 | $0.0152 | $0.0189 | |
| 25-29 | $0.0097 | $0.0162 | $0.0208 | |
| 30-34 | $0.0134 | $0.0217 | $0.0277 | |
| 35-39 | $0.0203 | $0.0342 | $0.0438 | |
| 40-44 | $0.0309 | $0.0508 | $0.0697 | |
| 45-49 | $0.0475 | $0.0789 | $0.1085 | |
| 50-54 | $0.0702 | $0.1145 | $0.1689 | |
| 55-59 | $0.1002 | $0.1662 | $0.2202 | |
| 60-64 | $0.1292 | $0.2165 | $0.2769 | |
| 65-69 | $0.1837 | $0.3097 | $0.3835 | |
| 70-74 | $0.3475 | $0.5866 | $0.7191 | |
| 75+ | $0.8326 | $1.8134 | $2.1688 | |
| $10,000 Child(ren)/<br>Domestic Partner's<br>Child(ren) Life Insurance* | $1.2969 | | | |

*You must purchase Team Member coverage in order to elect this coverage. You must elect a Team Member only coverage amount of $10,000 in order to elect child/domestic partner child Life Insurance. Spouse/domestic partner coverage may also be subject to Evidence of Insurability. The effective date for Basic and Voluntary Life and AD&D insurance may be impacted by Evidence of Insurability.*

**Tobacco Spouse rate is determined by Team Member Tobacco use.*

| Critical Illness Insurance: $10,000 Benefit | | | | |
|---|---|---|---|---|
| **Team Member Age** | **Non-Tobacco User** | | **Tobacco User** | |
| | **TM Only*** | **Spouse/DP** | **TM Only*** | **Spouse/DP** |
| <25 | $0.7972 | $0.7972 | $1.4321 | $1.4321 |
| 25 – 29 | $0.9474 | $0.9474 | $1.5675 | $1.5675 |
| 30 – 34 | $1.3935 | $1.3935 | $2.2220 | $2.2220 |
| 35 – 39 | $1.9651 | $1.9651 | $3.3211 | $3.3211 |
| 40 – 44 | $2.9780 | $2.9780 | $5.1006 | $5.1006 |
| 45 – 49 | $3.8568 | $3.8568 | $6.5544 | $6.5544 |
| 50 – 54 | $6.0698 | $6.0698 | $10.4314 | $10.4314 |
| 55 – 59 | $7.1602 | $7.1602 | $13.8334 | $13.8334 |
| 60 – 64 | $10.4556 | $10.4556 | $20.1528 | $20.1528 |
| 65 – 69 | $20.3781 | $20.3781 | $38.3844 | $38.3844 |
| 70+ | $28.7135 | $28.7135 | $48.7160 | $48.7160 |

35

### Critical Illness Insurance: $20,000 Benefit

| Team Member Age | Non-Tobacco User | | Tobacco User | |
| --- | --- | --- | --- | --- |
| | TM Only* | Spouse/DP | TM Only* | Spouse/DP |
| <25 | $1.5944 | $1.5944 | $2.8641 | $2.8641 |
| 25 – 29 | $1.8949 | $1.8949 | $3.1350 | $3.1350 |
| 30 – 34 | $2.7870 | $2.7870 | $4.4440 | $4.4440 |
| 35 – 39 | $3.9303 | $3.9303 | $6.6423 | $6.6423 |
| 40 – 44 | $5.9560 | $5.9560 | $10.2012 | $10.2012 |
| 45 – 49 | $7.7136 | $7.7136 | $13.1089 | $13.1089 |
| 50 – 54 | $12.1397 | $12.1397 | $20.8627 | $20.8627 |
| 55 – 59 | $14.3204 | $14.3204 | $27.6667 | $27.6667 |
| 60 – 64 | $20.9112 | $20.9112 | $40.3055 | $40.3055 |
| 65 – 69 | $40.7562 | $40.7562 | $76.7689 | $76.7689 |
| 70+ | $57.4269 | $57.4269 | $97.4320 | $97.4320 |

### Critical Illness Insurance: $30,000 Benefit

| Team Member Age | Non-Tobacco User | | Tobacco User | |
| --- | --- | --- | --- | --- |
| | TM Only* | Spouse/DP | TM Only* | Spouse/DP |
| <25 | $2.3916 | $2.3916 | $4.2962 | $4.2962 |
| 25 – 29 | $2.8423 | $2.8423 | $4.7026 | $4.7026 |
| 30 – 34 | $4.1806 | $4.1806 | $6.6660 | $6.6660 |
| 35 – 39 | $5.8954 | $5.8954 | $9.9634 | $9.9634 |
| 40 – 44 | $8.9340 | $8.9340 | $15.3018 | $15.3018 |
| 45– 49 | $11.5704 | $11.5704 | $19.6633 | $19.6633 |
| 50 – 54 | $18.2095 | $18.2095 | $31.2941 | $31.2941 |
| 55 – 59 | $21.4806 | $21.4806 | $41.5001 | $41.5001 |
| 60 – 64 | $31.3668 | $31.3668 | $60.4583 | $60.4583 |
| 65 – 69 | $61.1342 | $61.1342 | $115.1533 | $115.1533 |
| 70+ | $86.1404 | $86.1404 | $146.1480 | $146.1480 |

*Coverage for child(ren) is included in the Team Member contribution rate.*

## How You Pay for Benefits

The costs of some benefits are deducted from your pay on a pre-tax basis. This means you make your contributions before you pay federal or state taxes, as well as Social Security taxes. Lower taxes mean you keep more of what you earn.

| Contributions Deducted Before Taxes | Contributions Deducted After Taxes |
| --- | --- |
| • Medical <br> • Dental <br> • Vision <br> • Health Savings Account <br> • Flexible Spending Accounts <br> • Team Member Life and AD&D insurance <br> • Disability | • Accident, Critical Illness, Hospital Indemnity, Pet, and Home and Auto insurance <br> • Spouse/Domestic Partner and Child Life Insurance <br> • Benefits for your domestic partner and their children (unless they are your tax dependents) |

# *Your 2024 Benefit Elections Worksheet*

Complete the following worksheet to get a full picture of what your benefits for 2024 will look like and understand the cost.

List the benefits you plan to elect and the per-paycheck contributions (shown in this guide). Then, tally up the contributions to see how much you'll pay for your 2024 benefits per pay period.

Keep in mind that tobacco user contribution rates apply to medical, LTD, Voluntary Spouse Life Insurance, and Critical Illness Insurance. Be sure to select the applicable rate when you are tallying your paycheck contribution amounts.

| Your 2024 Benefits | Plan Option/Benefit Amount and/or Coverage Level | Biweekly Paycheck Contribution Amount* |
|---|---|---|
| **Medical** (See **page 33** for contributions) | | |
| • Your 2024 Medical Plan | | $ |
| **Dental** (See **page 34** for contributions) | | |
| • Your 2024 Dental Plan | | $ |
| **Vision** (See **page 34** for contributions) | | |
| • Your 2024 Vision Plan | | $ |
| **Income Protection Benefits** (See **page 34-35** for contributions) | | |
| • Team Member Voluntary Life Insurance | $ | $ |
| • Spouse/Domestic Partner Life Insurance | $ | $ |
| • Children/Domestic Partner's Children Life Insurance | $ | $ |
| • STD | | $ |
| • LTD | | $ |
| **Voluntary Benefits** (See **page 34-36** for contributions) | | |
| • Critical Illness Insurance | $ | $ |
| • Critical Illness Insurance - Spouse | $ | $ |
| • Hospital Indemnity Insurance | $ | $ |
| • Accident Insurance | | $ |
| **Savings and Spending Accounts** <br> **Divide your annual contribution by 26 and include that amount under "paycheck contribution amount"** | | |
| • HSA (Including Catch-Up Contributions) | $ | $ |
| • Health Care FSA or HSA-Compatible FSA | $ | $ |
| • Dependent Care FSA | $ | $ |
| **Your 2024 Per-Paycheck Contribution Total** | | $ |

*Contributions are subject to taxes. Refer to page 36 to review which benefits are pre- and post-tax.*

# *Contacts*

Use the contact information below for access to your benefits.

| Benefit | Benefit Partner | Phone Number | Website |
|---|---|---|---|
| **Whole Foods Market Benefits Service Center** | Empyrean | 888-681-2249, 7 a.m. to 7 p.m. CT, Monday through Friday | **benefits.wholefoods.com** |
| **National Choice and National Select Plans** | | | |
| **Medical (BCBSTX)** | Blue Cross Blue Shield of Texas (BCBSTX) | 800-269-0420 | **bcbstx.com** |
| **Medical In-Network Provider Search** | Blue Cross Blue Shield of Texas (BCBSTX) | 800-269-0420 | **Find a doctor or Hospital Blue Cross Blue Shield of Texas (bcbstx.com)** |
| **Prescription** | Prime Therapeutics | 800-269-0420 | **bcbstx.com** |
| **Virtual Visits** | MDLive | 888-680-8646 | **mdlive.com/wfm** |
| **Whole Health Plan (WHP)** | | | |
| **Medical (WHP)** | WebTPA | 844-380-4554 | **webtpa.com** |
| **In-Network Provider Search** | Preferred Network | 844-380-4554 | **members.ehnconnects.com** |
| **In-Network Provider Search** | Expanded Network | 844-380-4554 | **www.aetna.com/asa** |
| **Prescription** | Prime Therapeutics | 877-278-5206 | **myprime.com** |
| **Virtual Visits** | MDLive | 888-680-8646 | **mdlive.com/wfm** |
| **Care Management** | The Whole Health Care Team | 844-380-4554 | **employershealthnetwork.com** |
| **Hawaii HMSA PPO Plan** | | | |
| **Medical & Prescription** | HMSA | 948-6111 (Oahu) 800-776-4672 (on the Neighbor Islands or Mainland) | **hmsa.com** |
| **Health Care Funding Accounts** | | | |
| **Health Savings Account (HSA)** | WEX | 866-402-2887 | **wexinc.com** |
| **Personal Wellness Account (PWA)** | | | |

| Benefit | Benefit Partner | Phone Number | Website |
|---|---|---|---|
| **Dental** | Cigna | 800-244-6224 | **cigna.com** |
| **Vision** | Vision Service Plan (VSP) | 800-877-7195 | **vsp.com** |
| **Flexible Spending Accounts (FSAs)**<br>● Health Care FSA<br>● HSA-Compatible FSA<br>● Dependent Care FSA | WEX | 866-402-2887 | **wexinc.com** |
| **Life and AD&D** | Aflac | 800-206-8826 | **learn.aflac.com/wholefoods** |
| **Short-Term Disability** | Sedgwick | 844-465-6240 | **sedgwick.com** |
| **Long-Term Disability** | Aflac | 800-206-8826 | **learn.aflac.com/wholefoods** |
| **Accident Insurance** | Aflac | 800-433-3036 | **learn.aflac.com/wholefoods** |
| **Critical Insurance** | | | |
| **Hospital Indemnity Insurance** | | | |
| **Auto and Home Program** | Aon Everyday | 800-438-6381 | **everyday.aon.com/wfm** |
| **Pet Insurance** | MetLife via Aon Everyday | 800-GET-MET8 | **everyday.aon.com/wfm** |
| **Team Member Assistance Program (TMAP)** | Headspace | 888-WFM-TMAP | **TMAP.wholefoods.com** |
| **Tobacco Cessation Program** | Quit For Life | 866-QUIT-4-LIFE TTY 711 | **myquitforlife.com/wfm** |

This is a summary of the Whole Foods Market Benefits Program and is neither an offer nor a guarantee of employment. It does not contain every provision that governs Team Members' rights to benefits. If you have questions about the nature and extent of your benefits, the formal language of the Plan Document, not the informal language of this guide, will govern. Whole Foods Market reserves the right to change, modify or terminate any Team Member benefit plans at any time. All Team Members will be given notice of these changes.



# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| PAUL WILSON, TYLER HOUSTON, and JAMES BESTERFIELD on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WHOLE FOOD MARKET, INC., and THE WHOLE FOODS MARKET, INC. BENEFITS ADMINISTRATIVE COMMITTEE, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.: 1:25-cv-00085-DAE<br><br><br>   CLASS ACTION |

## ORDER

Defendants Whole Foods Market, Inc. ("WFM") and the WFM Benefits Administrative Committee (collectively "Defendants") have moved this Court to dismiss Plaintiffs' Class Action Complaint ("Complaint") for lack of standing under Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

After due consideration and good cause appearing, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiffs' Complaint is hereby **DISMISSED** with prejudice.

Dated: _____

_____
HONORABLE DAVID A. EZRA
UNITED STATES DISTRICT COURT JUDGE