UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PAUL WILSON, TYLER HOUSTON, and JAMES BESTERFIELD on behalf of themselves and all others similarly situated, | § § § § § | No.  1:25-CV-00085-DAE |
| | § | |
| *Plaintiffs,* | § § | |
| | § | |
| vs. | § § | |
| | § | |
| WHOLE FOOD MARKET, INC., and THE WHOLE FOODS MARKET, INC. BENEFITS ADMINISTRATIVE COMMITTEE, | § § § § § | |
| | § | |
| *Defendants.* | § § | |
| | § | |

<u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS</u>

The matter before the Court is Defendants Whole Foods Market, Inc.

("Whole Foods") and the WFM Benefits Administrative Committee's (the

"Committee") (collectively, "Defendants") Motion to Dismiss Plaintiffs'

Complaint (the "Motion").  (Dkt. # 23.)  The Court finds this matter suitable for

disposition without a hearing.[1]  After careful consideration of the memoranda in

---

[1] Plaintiffs Paul Wilson, Tyler Houston, and James Besterfield (collectively "Plaintiffs") requested that the Court grant oral argument on Defendants' Motion. (Dkt. # 31.)  The Court, however, upon consideration of the parties' briefings, exercises its discretion to decide the motion based on the written submissions offered by the parties and therefore **DENIES** Plaintiffs' request for oral argument,

support of and in opposition to the motion, the Court, for the reasons that follow,

**DENIES** Defendants' Motion to Dismiss.

BACKGROUND

Plaintiffs Paul Wilson, Tyler Houston, and James Besterfield (collectively "Plaintiffs") bring this putative class action against Defendants Whole Foods and the Committee, asserting two causes of action for violations of the Employee Retirement Income Security Act ("ERISA").  (Dkt. # 1 at 1, 4, 15–20.) Specifically, Plaintiffs allege that Defendants (1) unlawfully impose a discriminatory tobacco surcharge on participants in Whole Foods' employer-sponsored group health plan, and (2) breached their fiduciary duties in relation to the imposition of this surcharge.  (Id. at 15–20.)  Defendants move to dismiss Plaintiffs' Complaint.  (Dkt. # 23.)  They argue that dismissal is proper because Plaintiffs lack standing and because Plaintiffs have failed to state a claim upon which relief can be granted.  (Id. at 1.)  Before turning to Defendants' arguments, the Court will lay out the relevant statutory and regulatory framework and the factual background.

---

(Dkt. # 31).  Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216 (5th Cir. 1998) ("The district court possesses the inherent power to control its docket.").

2

I.    <u>Statutory and Regulatory Framework</u>

Under ERISA, group health plans are prohibited from discriminating against participants on the basis of "a health-related factor."  29 U.S.C. § 1182(b)(1).  Specifically, ERISA provides that a group health plan

> may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

<u>Id.</u>  However, the statute carves out an exception, allowing group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention," otherwise known as "wellness programs."  29 U.S.C. § 1182(b)(2)(B).  Taken together, these provisions permit group health plans to "surcharge plan participants who do not comply with such 'wellness programs,' and . . . offer incentives to plan participants who engage in wellness programs, without running afoul of ERISA's nondiscrimination rules in Section 1182."  <u>Chirinian v. Travelers Companies, Inc.</u>, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *1 (D. Minn. July 29, 2025).

To qualify for the § 1182(b)(2)(B) exception, though, a plan's wellness program must comply with certain requirements.  <u>See</u> Public Health Service Act ("PHSA") § 2705, 42 U.S.C. § 300gg-4(j)(3) (articulating requirements for wellness programs); 29 U.S.C. § 1185d(a)(1) (providing that

PHSA provisions "shall apply to group health plans" under ERISA).  These requirements include that a wellness program must (1) "be reasonably designed to promote health or prevent disease;" (2) make available the "full reward" to all similarly situated individuals; and (3) "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard."  42 U.S.C. § 300gg-4(j)(3)(B)–(E).  The statute further clarifies what it means for the "full reward" to be made available to all similarly situated individuals, specifying that this requirement is not met "unless the wellness program allows . . . for a reasonable alternative standard . . . for obtaining the reward for any individual for whom, for that period, it is unreasonably difficult due to a medical condition to satisfy the otherwise applicable standard" or "for whom . . . it is medically inadvisable to attempt to satisfy the otherwise applicable standard."  Id. at § 300gg-4(j)(3)(D).

In 2013, the Department of Labor ("DOL") incorporated these requirements into federal regulations that further defined the standards that qualifying wellness programs must meet.  Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33181–86, 33160 (June 3, 2013) (codified at 29 C.F.R. § 2590.702).  When the DOL issued these regulations, the agency specified that its intent was that "every individual

participating in the program should be able to receive the full amount of any reward or incentive, regardless of any health factor." Id. at 33160.

Under these regulations, outcome-based wellness programs, including tobacco cessation programs,[2] must meet five conditions, two of which are at issue in this case. 29 C.F.R. § 2590.702(f)(4). First, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." Id. at § 2590.702(f)(4)(iv). The DOL explains that, for an outcome-based wellness program, "a reward . . . is not available to all similarly situated individuals for a period unless the program allows a reasonable alternative standard . . . for obtaining the reward for any individual who does not meet the initial standard[.]" Id. at § 2590.702(f)(4)(iv)(A). Second, the plan "must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward . . . including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be

---

[2] Federal regulations differentiate between four types of wellness programs: participatory, health-contingent, activity-only, and outcome-based. See 29 C.F.R. § 2590.702(f)(1). The requirements for wellness programs vary based on the type of wellness program offered. See id. § 2590.702(f)(2)–(4). The parties do not dispute that the program at issue here is an outcome-based program. (See Dkts. ## 23 at 7; 26 at 19.)

accommodated." Id. at § 2590.702(f)(4)(v). Such a disclosure is not required if "plan materials merely mention that such a program is available, without describing its terms[.]" Id.

II.    Factual Background

The named plaintiffs in this action are current and former Whole Foods employees who paid and continue to pay a tobacco surcharge to maintain health insurance coverage under the Whole Foods Market Group Benefit Plan (the "Plan"). (Dkt. # 1 at 4–5.) Plaintiffs challenge the lawfulness of that surcharge. (See Dkt. # 1.)

Under the Plan, tobacco users are charged a $30 surcharge per paycheck, or approximately $780 annually.[3] (Id. at ¶ 24; Dkt. # 23 at Ex. B, 33.)[4] To avoid the surcharge, participants can enroll in a tobacco cessation program, Whole Foods' Quit for Life program. (Dkts. ## 1 at ¶ 24; 23 at Ex. B, 32–33.)

---

[3] Prior to 2024, the surcharge was $20 per paycheck, amounting to approximately $520 annually. (Dkt. # 1 at ¶ 24.)

[4] The Court may consider Defendants' Exhibit B, the 2024 Benefits Enrollment Guide, because Defendants attached it to their Motion, it is referenced in the Complaint, and it is central to Plaintiffs' claims. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (noting that when ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims); Franks v. Prudential Health Care Plan, 164 F. Supp. 2d 865, 872 (W.D. Tex. 2001) (considering plan documents attached to a defendant's motion to dismiss because they were referenced in the plaintiff's complaint and were central and necessary to its claims).

When participants complete the program, the surcharge will be removed but only on a prospective basis.  (Id.)  Specifically, the Plan states that when a participant completes the program, they will pay the non-tobacco user rate on the first of the following month but "will not receive a refund for any previous surcharge payments."  (Dkt. # 23 at Ex. B, 33; see Dkt. # 23 at Ex. A, 11 ("If you complete the tobacco cessation program, you will receive the non-tobacco user discount on your medical premium contributions effective the first of the month following your completion of the program, but you will not be eligible for the discount retroactive to the beginning of the calendar year.").)[5]  In addition to this surcharge, the Plan imposes on tobacco users higher rates for Voluntary Life and Accidental Death & Dismemberment ("AD&D") insurance and critical illness coverage.  (Dkts. # 1 at ¶ 28; 23 at Ex. B, 35.)

In Count I of their Complaint, Plaintiffs allege that Defendants' tobacco surcharge is unlawful because it is imposed through a wellness program that does not comply with the statutory and regulatory requirements governing such programs.  (Dkt. # 1 at ¶¶ 48–54.)  Imposing this type of surcharge in the absence of a compliant program, Plaintiffs contend, violates ERISA.  (Id. at ¶ 2.)

---

[5] The Court will also consider Defendants' Exhibit A, the 2022 Summary Plan Description, because Defendants attached it to their Motion, it is referenced in the Complaint, and it is central to Plaintiffs' claims.  See In re Katrina, 495 F.3d at 205.

Plaintiffs assert that the wellness program is non-compliant in two respects. First, they allege that the program fails to provide the "full reward" to "all similarly situated individuals" because it does not offer retroactive reimbursement dating back to the beginning of the Plan year to participants who complete the program. (Dkt. # 1 at ¶¶ 50–51.) Rather, participants in the program can only avoid the surcharge on a prospective basis, which is not the "full reward." (Id.) Second, the Plan's program does not provide the proper notice to participants because it (1) "fails to provide contact information for obtaining a reasonable alternative standard;" (2) "fail[s] to provide any information on a reasonable alternative that would enable participants to avoid the surcharge for the entire year;" and (3) "fails to provide the requisite statement that recommendations of participants' individual physicians would be accommodated." (Id. at ¶¶ 32, 52.) According to Plaintiffs, these alleged deficiencies render the tobacco surcharge unlawful under ERISA. (Id. at ¶¶ 1, 48–54.)

In Count II, Plaintiffs allege that Defendants breached their fiduciary duties to Plan participants in connection with the imposition and collection of the allegedly unlawful surcharges. (Id. at ¶¶ 55–67.) Plaintiffs assert violations of 29 U.S.C. §§ 1104 and 1106, the sections governing fiduciary duties and prohibited transactions under ERISA. (Id.) Plaintiffs bring their suit individually and on behalf of all other similarly situated individuals. (Id. at ¶ 37.) They seek

declaratory relief, injunctive relief, various other forms of equitable relief, including disgorgement, restitution, and surcharge, as well as relief to the Plan. (Id. at 20–22.)

On March 31, 2025, Defendants filed a motion to dismiss Plaintiffs' complaint, asserting lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Dkt. # 23.) Plaintiffs filed a response in opposition on May 1, 2025, (Dkt. # 26), and Defendants replied on May 29, 2025, (Dkt. # 28). The parties also filed several notices of supplemental authority and responses to those notices, which the Court considered in making its ruling. (Dkts. ## 27; 29; 30; 32; 33; 34; 35.)

## LEGAL STANDARD

### I. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when a court lacks statutory or constitutional authority to adjudicate the claim. Home Builders Assoc. of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should consider the

"jurisdictional attack before addressing any attack on the merits." <u>Ramming v.</u>
<u>United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  The Court must first address
subject matter jurisdiction because, without it, the case can proceed no further.
<u>Ruhrgas Ag v. Marathon Oil Co.</u>, 526 U.S. 574, 583 (1999); <u>Ramming</u>, 281 F.3d at
161.

      In considering a Rule 12(b)(1) motion to dismiss for lack of subject
matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the
complaint supplemented by undisputed facts evidenced in the record, or (3) the
complaint supplemented by undisputed facts plus the court's resolution of disputed
facts." <u>Den Norske Stats Oljeselskap As v. HeereMac Vof</u>, 241 F.3d 420, 424 (5th
Cir. 2001) (citation omitted).

II.    <u>Rule 12(b)(6)</u>

      Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a
complaint for "failure to state a claim upon which relief can be granted."  When
analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all
well pleaded facts as true, viewing them in the light most favorable to the
plaintiff.'" <u>United States ex rel. Vavra v. Kellogg Brown & Root, Inc.</u>, 727 F.3d
343, 346 (5th Cir. 2013) (quoting <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d
191, 205 (5th Cir. 2007)).  The court "must consider the complaint in its entirety,
as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Funk v. Stryker Corp.</u>, 631 F.3d 777, 783 (5th Cir. 2011) (quoting <u>Tellabs Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). However, a court reviewing a complaint is not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u>

DISCUSSION

Defendants move to dismiss Plaintiffs' claims because (1) Plaintiffs lack standing to bring their claims; (2) Plaintiffs fail to state a claim that the tobacco surcharge is unlawfully imposed; and (3) Plaintiffs fail to state a claim for breach of fiduciary duty. (Dkt. # 23 at 9.) The Court will address each argument in turn.

I.    <u>Standing</u>

Under section 2 of Article III of the Constitution, federal courts have jurisdiction over a dispute "only if it is a case or controversy. This is a bedrock

11

requirement." <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997); <u>see also</u> <u>Miss. State</u>

<u>Democratic Party v. Barbour</u>, 529 F.3d 538, 544 (5th Cir. 2008). "[S]tanding is an

essential and unchanging part of the case-or-controversy requirement." <u>Lujan v.</u>

<u>Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992).

   To establish standing, "a plaintiff must show: (1) [they have] suffered,

or imminently will suffer, a concrete and particularized injury-in-fact; (2) the

injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is

likely to redress the injury." <u>Hous. Chronicle Publ'g Co. v. City of League City,</u>

<u>Tex.</u>, 488 F.3d 613, 617 (5th Cir. 2007); <u>see</u> <u>TransUnion LLC v. Ramirez</u>, 594 U.S.

413, 423 (2021).  Plaintiffs, who invoked the Court's jurisdiction, have the burden

of establishing these elements. <u>Lujan</u>, 504 U.S. at 561.

   Moreover, a plaintiff must prove, and not merely assert, standing to

sue in order to meet the case or controversy requirement of Article III. <u>Doe v.</u>

<u>Tangipahoa Parish Sch. Bd.</u>, 494 F.3d 494, 496 (5th Cir. 2007).  However,

"'[w]hen considering whether a plaintiff has Article III standing, a federal court

must assume *arguendo* the merits of his or her legal claim.'" <u>N. Cypress Med. Ctr.</u>

<u>Operating Co. v. Cigna Healthcare</u>, 781 F.3d 182, 191 (5th Cir. 2015) (quoting

<u>Cole v. Gen. Motors Corp.</u>, 484 F.3d 717, 723 (5th Cir. 2007)).  Finally,

"standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for

each claim that they press and for each form of relief that they seek[.]"

TransUnion, 594 U.S. at 431.

Defendants argue that Plaintiffs lack standing because they have failed

to show an injury that is traceable to Defendants' conduct. (Dkts. ## 23 at 10; 28

at 2.) Defendants assert that the "alleged statutory violation underlying the

Complaint is not the imposition of the tobacco surcharge, but rather that [Whole

Foods] did not offer a retroactive refund of the surcharge once a participant

completed the cessation program." (Dkt. # 23 at 10.) Accordingly, because

Plaintiffs do not allege that they participated in the program, attempted to

participate in the program, or would have participated in the program had a

retroactive reimbursement been offered, Plaintiffs have not suffered an injury that

is traceable to the alleged conduct at issue, namely the design of the program. (Id.

at 10–11.) Further, any injury Plaintiffs do allege would not be redressable through

judicial relief, as "even if [Whole Foods] had operated the tobacco wellness

program in the exact way that Plaintiffs claim it should have been run, [Plaintiffs]

would have still paid the tobacco surcharge for the entire Plan year because they

never took steps to participate in or complete the cessation program they

challenge." (Id. at 12.)

Defendants misunderstand the nature of Plaintiffs' claims. As another

court has noted, "ERISA's antidiscrimination rules prohibit [Defendants] from

imposing a tobacco surcharge, unless 'all of the [regulatory] requirements' of its outcome-based wellness program are 'satisfied.'" <u>Chirinian</u>, 2025 WL 2147271, at *5 (quoting 29 C.F.R. § 2590.702(f)(4)); <u>see</u> 29 C.F.R. § 2590.702(f)(4); 78 Fed. Reg. 33158, 33160 (explaining that the regulations provide "criteria for a program of health promotion or disease prevention . . . *that must be satisfied* in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status" (emphasis added)); <u>see also</u> 29 U.S.C. § 1182(b)(2)(B) (laying out exception to ERISA's anti-discrimination provisions for discounts established in connection with wellness programs); 42 U.S.C. § 300gg-4(j)(1)(C) (explaining that wellness programs must comply with the requirements of the section to be lawful). Here, like in <u>Chirinian</u>, Plaintiffs assert that Defendants' program does not meet all of the regulatory and statutory requirements.  (Dkt. #1 at ¶¶ 51–52, 31–33.)  If that is the case, which the Court assumes for the purposes of analyzing standing, <u>North Cypress</u>, 781 F.3d at 191, then Defendants *cannot* impose a surcharge on tobacco users, and the surcharge Plaintiffs have paid and are paying is unlawful.  <u>See</u> 42 U.S.C. § 300gg-4(j)(1)(C); 29 C.F.R. § 2590.702(f)(4).  In other words, "if the surcharge is illegal, it matters not whether [Plaintiffs] can get out of paying it and whether [they] knew of those steps. Rather [Plaintiffs have] the right to not to be charged an illegal surcharge in the first instance."  <u>Bailey v. Sedgwick Claims</u>

Mgmt. Servs. Inc., No. 2:24-CV-02749-TLP-TMP, 2025 WL 2779899, at *6 (W.D. Tenn. Sept. 26, 2025).

Defendants urge the Court to find Plaintiffs lack standing because "[b]are allegations that a defendant violated a statute, without pleading how that specific violation caused Plaintiffs to suffer a concrete injury that is traceable to the defendant's challenged conduct, do not satisfy Article III's standing requirements." (Dkt. # 23 at 10, citing TransUnion, 594 U.S. at 440, Spokeo, Inc. v. Robins, 578 U.S. 330, 330–31 (2016).)  Rather, the alleged violations "must affect the plaintiff in a personal and individual way."  (Id., quoting Spokeo, 578 U.S. at 330–31.) Defendants accurately state the law but, as explained above, fail to realize that Plaintiffs here *have* experienced a personal, concrete harm.  Defendants imposed a surcharge on Plaintiffs.  Plaintiffs allege that the imposition of this surcharge, as carried out by Defendants, is unlawful because it violates ERISA.  These allegations are plainly sufficient under the very cases Defendants cite.  See TransUnion, 594 U.S. at 426–28 (comparing a plaintiff who suffered property damage as a result of a defendant's alleged violation of a statute with a plaintiff who suffered no property damage because of the violation and so was "merely seeking to ensure a defendant's 'compliance with regulatory law'").

In sum, Plaintiffs have suffered a concrete and particularized injury-in-fact.  They paid a tobacco surcharge of $20 per paycheck, $520 over the course

of the year.  (Dkt. # 1 at ¶¶ 24, 7–10); <u>TransUnion</u>, 594 U.S. at 425 (monetary harms are "traditional" and "obvious" tangible harms that "readily qualify as concrete injuries under Article III"); <u>Young Conservatives of Texas Found. v. Smatresk</u>, 73 F.4th 304 (5th Cir. 2023) ("[A]n economic injury is the quintessential injury upon which to base standing." (cleaned up)).  That injury is fairly traceable to Defendants' alleged conduct because, as described previously, the surcharge can only be imposed if it is in connection with a *compliant* wellness program. Plaintiffs allege that Defendants are administering a non-compliant program and are therefore charging them illegally.  Traceability is satisfied.  And contrary to Defendants' claims, Plaintiffs' injury is likely to be redressed by a favorable judgment.  In their suit, Plaintiffs are seeking a refund of the allegedly unlawful surcharge, a declaration that the surcharge is unlawful, and an injunction prohibiting Defendants from violating ERISA, among other relief.  These forms of relief would redress Plaintiffs' injury.

Accordingly, Plaintiffs have standing to pursue their claims in Count I of the Complaint—that Defendants' imposition of the surcharge is unlawful under ERISA.[6]

---

[6] Indeed, this ruling aligns with all decisions on this issue cited by the parties or discovered by the Court in its own review.  <u>See</u> <u>Mehlberg v. Compass Grp. USA, Inc.</u>, No. 24-CV-04179-SRB, 2025 WL 1260700, at *3–4 (W.D. Mo. Apr. 15, 2025); <u>Bokma v. Performance Food Grp., Inc.</u>, 783 F. Supp. 3d 882, 893–95 (E.D. Va. 2025); <u>Waggoner v. Carle Found.</u>, No. 24-cv-2217, Dkt. # 27 at *17–18 (C.D.

Defendants also argue that Plaintiffs "lack standing to assert claims regarding the sufficiency of notice provided to Plan participants because 'informational injuries do not confer Article III standing." (Dkt. # 23 at 12.)  They insist that Plaintiffs must allege a "downstream consequence" as a result of the allegedly deficient notice, and because they do not do so, dismissal is proper.  (Id.)  Again, this argument arises out of a misunderstanding of Plaintiffs' alleged injury and claim.  Plaintiffs assert not that the failure to notify injured them but that the failure to notify in accordance with the statutory and regulatory requirements rendered the surcharge they paid unlawful.  As already explained, Plaintiffs have standing to raise that challenge.  See Bailey, 2025 WL 2779899, at *6 (rejecting the defendant's argument that a failure to allege downstream consequences is fatal to standing in nearly identical suit).

Finally, although not raised by Defendants, the Court further finds that Plaintiffs have standing to make their breach of fiduciary duty claims.  TransUnion, 594 U.S. at 431 ("[S]tanding is not dispensed in gross[.]").  Plaintiffs' fiduciary duty claims are tied to their claims that Defendants' imposition of the tobacco surcharge is unlawful.  Plaintiffs assert that Defendants breached their fiduciary

---

Ill. Sept. 16, 2025); Knight v. LHC Group, Inc., No. 6:25-cv-00263, Dkt. # 52 at *5–8 (W.D. La. Nov. 18, 2025); Chirinian, 2025 WL 2147271, at *5; Fisher v. GardaWorld Cash Serv. Inc., No. 3:24-CV-00837-KDB-DCK, 2025 WL 2484271, at *6 (W.D.N.C. Aug. 28, 2025); Bailey, 2025 WL 2779899, at *6–7; Lipari-Williams v. Missouri Gaming Co., LLC, 339 F.R.D. 515, 523–24 (W.D. Mo. 2021).

duties in many ways, including by administering a wellness program in a manner that violated ERISA and its implementing regulations, by assessing and collecting the allegedly unlawful surcharge, by failing to act solely in the interests of participants and beneficiaries, and by retaining the surcharges collected.  (Dkt. #1 at ¶¶ 55–67.)  Because these claims depend on whether Defendants have violated ERISA through its imposition of the tobacco surcharge, Plaintiffs have standing to bring their fiduciary duty claims for the same reasons described above.  See Bailey, 2025 WL 2779899, at *7; Waggoner v. Carle Found., No. 24-cv-2217, Dkt. # 27 at *18, n.3.[7]

Finding that Plaintiffs have standing, the Court now turns to the merits of their claims.

---

[7] The Court notes that one court that considered this issue found that the plaintiff lacked standing to assert her claims for breach of fiduciary duty because it found that the plaintiff was required to allege a concrete, non-speculative injury to the *Plan*, not herself.  Williams v. Bally's Mgmt. Grp., LLC, No. CV 1:25-00147-MSM-PAS, 2025 WL 3078747, at *5–6 (D.R.I. Nov. 4, 2025).  However, the Williams court appears to conflate the merits of a fiduciary breach claim, which does require loss or harm to the Plan, with the standing inquiry.  See Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan, 960 F.3d 190 (5th Cir. 2020) (discussing loss to the plan under the merits of the fiduciary duty claim).  Accordingly, this Court respectfully declines to follow Williams and instead agrees with the analyses in Bailey and Waggoner.  The Court will address whether Plaintiffs have sufficiently alleged loss to the Plan in its merits analysis.

18

II.    <u>Count I – Unlawful Imposition of a Discriminatory Tobacco Surcharge</u>

In Count I, Plaintiffs challenge Defendants' imposition of the tobacco surcharge as a violation of 29 U.S.C. § 1182(b).  They assert that because the surcharge is discriminatory under ERISA, and the wellness program that might otherwise permit such discrimination fails to qualify for the enumerated exception, the surcharge is unlawful.  (Dkt. # 1 at ¶¶ 48–52.)  Specifically, Plaintiffs allege two defects in the program: (1) the Plan does not provide retroactive reimbursements to participants who complete the program thereby depriving participants of the "full reward;" and (2) the Plan materials fail to comply with ERISA's notice requirements regarding the availability of a "reasonable alternative standard."  (<u>Id.</u> at ¶¶ 48–52, 31–33.)  Defendants dispute both contentions. However, because the Court finds that Plaintiffs have plausibly stated a claim for unlawful imposition of a discriminatory tobacco surcharge based on Defendants' failure to provide the "full reward," the Court does not reach Plaintiffs' second basis for this claim, i.e., that the surcharge is unlawful because Defendants fail to comply with ERISA's notice requirements.

In their Complaint, Plaintiffs allege that Defendants' wellness program does not provide retroactive reimbursements for the entire Plan year but instead provides only prospective relief.  (Dkt. # 1 at ¶¶ 23–27.)  Plaintiffs contend that by failing to provide retroactive reimbursements, "Defendants deny

19

participants the 'full reward,' rendering the wellness program discriminatory and noncompliant with ERISA's regulatory framework." (<u>Id.</u> at ¶ 27.)

While Defendants concede that the Plan does not offer retroactive reimbursements, they argue that ERISA and the PHSA impose no such requirement. (Dkt. # 23 at 13–15.) According to Defendants, the Plan makes available the "full award" to participants because once a participant completes the program, they pay "the same amount in premiums as a non-tobacco user on a going forward basis." (<u>Id.</u> at 14.) This gives participants the "same reward," and the best interpretation of the applicable statutes requires nothing further. (<u>Id.</u> at 13–120.) Plaintiffs counter that Defendants' position cannot be reconciled with the text of the statute, federal regulations, the Department of Labor's interpretation of those regulations, or case law. (Dkt. # 26 at 11.) They argue that Defendants' interpretation reads the word "full" out of the statute. (<u>Id.</u> at 11–12.) Further, Defendants' interpretation ignores DOL guidance that clarifies explicitly that the "full award" includes reimbursement for surcharges paid for that plan year. (<u>Id.</u> at 12–14.)

No one disputes that, to lawfully impose a tobacco surcharge on Plan participants, the Plan's wellness program must provide the "full reward" to those who complete the "reasonable alternative standard."  42 U.S.C. § 300gg-

4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4).  The question before the Court, then, is the meaning of "full reward."

As an initial matter, the parties disagree over the weight the Court may properly give both the federal regulations and the DOL's interpretations of those regulations.  (See Dkts. ## 23 at 15–20; 26 at 17–19.)  Defendants argue that under Loper Bright Enterprises v. Raimondo, courts may no longer treat "a properly promulgated agency regulation . . . as the controlling legal rule[.]"  (Dkt. # 23 at 15, citing Loper Bright, 603 U.S. 369, 371–74 (2024)).  Instead, courts must independently interpret the statute, and that interpretation controls.  (Id.)  Plaintiffs challenge Defendants' reading of Loper Bright, arguing that the Supreme Court's decision "did not authorize courts to disregard regulations that were properly promulgated under an agency's statutory authority."  (Dkt. # 26 at 18.)

And, Plaintiffs argue, even under Loper Bright, courts may still defer to an agency's reasonable interpretation of its own regulations, unless that interpretation is "plainly erroneous" or inconsistent with the regulation.  (Id. at 17, citing Auer v. Robbins, 519 U.S. 452, 461 (1997) and Kisor v. Wilkie, 588 U.S. 558, 588–89 (2019).)  Defendants respond that Auer deference is not warranted here because the agency's "interpretation conflicts with the relevant unambiguous statutory authority."  (Dkt. # 28 at 7–8.)  And regardless, "the DOL's interpretation

of its regulations is not at issue here" because "the Court must interpret the statute itself[.]"  (Id. at 7.)

In the wake of Loper Bright, courts are no longer permitted to defer to an agency's interpretation of a statute simply because the statute is ambiguous. Loper Bright, 603 U.S. at 413.  However, an agency's interpretation of a statute within its purview still amounts to valuable persuasive authority.  See id. at 394 ("[C]ourts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes. Such interpretations constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance[.]" (cleaned up)); Lopez v. Garland, 116 F.4th 1032, 1036 (9th Cir. 2024) ("[A]fter Loper Bright Enterprises, we may look to agency interpretations for guidance, but do not defer to the agency."); Seldon v. Garland, 120 F.4th 527, 531 (6th Cir. 2024) (noting the same); Clinkenbeard v. King, No. CV 23-3151 (JRT/LIB), 2024 WL 4355063, at *4 (D. Minn. Sept. 30, 2024), aff'd sub nom. Clinkenbeard v. Murdock, No. 24-3127, 2025 WL 926451 (8th Cir. Mar. 27, 2025); Mohammed v. Stover, No. 3:23-CV-757 (SVN), 2024 WL 5146440, at *4 (D. Conn. Dec. 17, 2024); see also Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (explaining that, while an agency's interpretation is "not controlling," it may still have "power to persuade" based on "the thoroughness

evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements").

With respect to an agency's interpretations of its own regulations, courts must defer to the agency's interpretation if the regulation is ambiguous and the agency's interpretation is reasonable. Kisor, 588 U.S. at 563 (citing Auer, 519 U.S. 453). However, Auer deference is not warranted "when an agency interprets a rule that parrots the statutory text." Kisor, 588 U.S. at 568, n.5 (citing Gonzales v. Oregon, 546 U.S. 243, 257 (2006)); Williams, 2025 WL 3078747, at *9; see also Buescher v. N. Am. Lighting, Inc., 791 F. Supp. 3d 873, 906 (C.D. Ill. 2025) ("In practice, Auer deference is Chevron deference applied to regulations rather than statutes. In the past, the fact of overlapping regulations and statutes may not have mattered—deference is deference, after all. But now, deferring to the DOL's interpretation of its regulation under Auer, when deference to the DOL's interpretation of the effectively identical language of the PHSA would be forbidden, would seem to be an improper end run around Loper Bright." (cleaned up)). Indeed, when a regulation simply repeats a statutory phrase, "the question . . . is not the meaning of the regulation but the meaning of the statute." Gonzales, 546 U.S. at 257.

Upon its consideration of the relevant law and the parties' arguments, the Court will follow the guidance of Loper Bright and Gonzales and will conduct

an independent statutory interpretation in the first instance, aided by the DOL's interpretation of the relevant statutes and regulations, to determine the meaning of "full reward."  The Court will also assume without deciding that <u>Auer</u> deference to the DOL's interpretations of its own regulations is not required here.  In this case, the statute and regulations at issue involve nearly identical language, at least with respect to the "full reward" requirement.  <u>Compare</u> 42 U.S.C. § 300gg-4(j)(3)(D) <u>with</u> 29 C.F.R. § 2590.702(f)(4)(iv).  This Court agrees with the <u>Buescher</u> court that, "deferring to the DOL's interpretation of its regulation under <u>Auer</u> . . . would seem to be an improper end run around <u>Loper Bright</u>" and so declines to do so at this time.  791 F. Supp. 3d at 906.  However, the Court notes that one other court confronted with this issue considered an argument by the plaintiff that the phrase "full reward" originated from the Department of Labor's 2006 wellness program regulations.  <u>Waggoner</u>, No. 24-cv-2217, Dkt. # 27 at *45–46.  Because Congress adopted this language almost verbatim from the DOL's regulations, the plaintiff argued that the court should defer to the DOL's interpretation.  <u>Id.</u>  Given the parties' limited briefing on this issue, the Court declines to make a definitive ruling at this stage regarding the application of <u>Auer</u> deference to this case.  Instead, because the Court agrees with Plaintiffs that the "full reward" requirement requires retroactive reimbursement, as is described further below, and because the Court

reaches that conclusion without relying on Auer deference, the Court does not and

need not reach the question.[8]

The Court finds that to make available the "full reward" to "all

similarly situated individuals," a wellness program must provide retroactive

reimbursements of all tobacco surcharges paid that Plan year.  The PHSA defines

_____

[8] The Court notes, however, that nothing in its decision should be taken to call into
question the enforceability of duly promulgated regulations.  Loper Bright
explicitly acknowledges Congress' power to delegate to an agency the authority to
"fill up the details" of a statutory scheme.  Loper Bright, 603 U.S. at 394–95.  And
Loper Bright directs courts to "respect" such delegations, so long as the agency has
acted within the scope of its delegated authority.  Id. at 395, 412.  The Court here
discerns no basis for concluding that the DOL exceeded its authority to promulgate
regulations implementing ERISA.  See 29 U.S.C. § 1135 (empowering the
Secretary of Labor to "prescribe such regulations as he finds necessary or
appropriate to carry out" the statutory provisions securing employee benefit
rights); see also 42 U.S.C. § 300gg-4(n) ("Nothing in [the relevant PHSA] section
shall be construed as prohibiting the Secretaries of Labor, Health and Human
Services, or the Treasury from promulgating regulations in connection with this
section.").  Accordingly, to the extent Defendants intend to argue that the
implementing regulations are somehow invalid, that argument is unpersuasive.  See
Bokma, 783 F. Supp. 3d at 896 (rejecting attempt to disregard regulations in light
of Loper Bright and stating that "[t]he DOL regulations addressing requirements
for outcome-based wellness programs did not suddenly lose their force and effect
in the immediate aftermath of Loper Bright"); Chirinian, 2025 WL 2147271, at
*10.  However, where, as here, the Court is charged with interpreting the meaning
of an ambiguous statutory phrase that is identical to the language of the regulation,
the Court understands Loper Bright and Gonzales to require an independent
statutory analysis at the outset, with agency interpretations serving as a "tool at
[its] disposal."  Loper Bright, 603 U.S. at 419, 413, 394–95; see Gonzales, 546
U.S. at 257 (requiring courts to analyze the meaning of the statute not the
regulation where the language is identical).  Nevertheless, the Court cautions that
its analysis on this issue is limited to the present context and may not extend to
other scenarios, such as those in which the statutory and regulatory language differ,
or those in which a regulation supplements rather than mirrors the statutory text.

"reward" as including the "absence of a surcharge."  42 U.S.C. § 300gg-4 (j)(3)(A)

("A reward may be in the form of a discount or rebate of a premium or

contribution, a waiver of all or part of a cost-sharing mechanism (such as

deductibles, copayments, or coinsurance), *the absence of a surcharge*, or the value

of a benefit that would otherwise not be provided under the plan. (emphasis

added)).  However, both the PHSA and ERISA's implementing regulations require

not simply that the "reward" be made available to all similarly situated individuals,

but that the "*full* reward" be made available.  42 U.S.C. § 300gg-4(j)(3)(D)

(emphasis added); 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis added).  It is "a

cardinal principle of statutory construction that we must give effect, if possible, to

every clause and word of a statute."  <u>Williams v. Taylor</u>, 529 U.S. 362, 404 (2000)

(internal quotations and citation omitted).  Were the Court to interpret "full reward"

as Defendants suggest—namely, that the "full reward" entails only the absence of a

surcharge on a going forward basis—the word "full" would not be given effect.

Put differently, if all that ERISA and its implementing regulations require is that

participants who complete the program stop paying the surcharge in future pay

periods, the statute and regulations could have accomplished that objective merely

by providing that the "reward" must be made available.  The term "full reward,"

then, must entail something *more* than merely the absence of the surcharge.

26

Examining the statutory language in context reinforces this reading. See W. Virginia v. Env't Prot. Agency, 597 U.S. 697, 721 (2022) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotations omitted)).  The PHSA and 29 C.F.R. § 2590.702 also mandate that plans give "individuals eligible for the program the opportunity to qualify for the reward under the program at least once per year."  42 U.S.C. § 300gg-4(j)(3)(C); 29 C.F.R. § 2590.702(f)(4)(iii).  If the Court were to adopt Defendants' interpretation of "full reward," group health plans could, in theory, offer the reasonable alternative standard at the very end of the plan year and participants would not be able to recover their prior payments.  This would effectively allow plans to discriminate on the basis of a health factor for most of the plan year.  The Court declines to interpret the statute in a way that leads to that result.  See 29 U.S.C. § 1182(b)(1) ("A group health plan . . . may not require any individual . . . to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor[.]"); see also 78 Fed. Reg. at 33164 (emphasizing that wellness programs are not to be a "subterfuge for discrimination or underwriting based on a health factor").  Therefore, the Court understands "full reward" to include a reimbursement for prior payments made during that plan year.

27

The Court's conclusion is bolstered by the Department of Labor's regulations and the DOL's interpretations of those regulations. In addition to enumerating the requirements for wellness programs, 29 C.F.R. § 2590.702 provides several examples of compliant and non-compliant programs. Of particular note, example 6 describes a program that allows a participant to "avoid the surcharge *for the plan year* by participating in the program[.]" 29 C.F.R. § 2590.702(f)(vi) (emphasis added). The regulations explain that this program is compliant because it "provides a reasonable alternative standard . . . to qualify for the reward[.]" Id. The DOL's preamble to the 2013 regulations further clarifies that:

> [W]hile an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward* must be provided to that individual as is provided to individuals who meet the initial standard *for that plan year* . . . Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period *before an alternative was satisfied* (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as . . . the individual receives the *full amount of the reward*.

78 Fed. Reg. at 33163 (emphasis added). The preamble goes on to give a specific example:

> [I]f a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.

Id.  Indeed, even when an individual does not satisfy the reasonable alternative standard until the end of the year, the preamble states that the plan must still reimburse the individual for the payments made during that plan year, although plans can choose the manner in which the reimbursement is provided.  See id.  ("In some circumstances, an individual may not satisfy the reasonable alternative standard until the end of the year. In such circumstances, the plan or issuer may provide a retroactive payment of the reward for that year within a reasonable time after the end of the year, but may not provide pro rata payments over the following year (a year after the year to which the reward corresponds).").

Considering the foregoing, the Court concludes that the best reading of the statute is that the "full reward" requires retroactive reimbursement for payments made during that plan year.  See Loper Bright, 603 U.S. at 400 (noting that courts may "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity.").

Defendants make a number of arguments that do not alter the Court's conclusion.  First, Defendants contend that interpreting "full reward" to include retroactive reimbursement would contradict and render meaningless the statutory term "adherence."  (Dkt. # 23 at 13, 16–18, citing 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(j)(3)(A) (allowing group health plans to offer a reward "in return for adherence" to wellness programs).)  In Defendants' view, "until Plan

participants participate in a cessation program, they are not adhering to a program, and as such, are not entitled to the reward of the absence of a surcharge." (Id. at 17.)  The Court is not persuaded by this argument.  Like its sister courts, the Court finds no conflict between the requirement that participants "adhere" to a wellness program and that they be refunded for all surcharges paid that plan year if they do so.  Mehlberg., 2025 WL 1260700, at *5–6; Waggoner, No. 24-cv-2217, Dkt. # 27 at *42–43.  Plaintiffs do not assert that participants do not have to complete, or "adhere," to the reasonable alternative standard in order to qualify for the "full reward."  These are distinct requirements.

Next, Defendants argue that the interpretation of "full reward" including retroactive refunds is belied by the DOL's own 2014 FAQ.  (Dkt. # 23 at 18.)  Upon the Court's review of this FAQ, though, the Court does not find the FAQ to contradict or undermine this reading.  FAQs about Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation, U.S. DEP'T OF LAB. (Jan. 9, 2014), https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-18 [https://perma.cc/FN3G-H4N8].  Question 8 of the FAQ and its response discuss the limitations on opportunities for enrollment in a wellness program, not the meaning of the full reward.  The Court is therefore unpersuaded by Defendants' argument.

Finally, Defendants contend that Plaintiffs' claim fails because Plaintiffs do not allege "the threshold statutory requirement that engaging in tobacco abstinence would have been medically inadvisable or unreasonably difficult[.]" (Dkts. ## 28 at 6; 23 at 13–14, citing 42 U.S.C. § 300gg-4(j)(3)(D)(i).) Putting aside whether the medical hardship standard applies to outcome-based programs, which Plaintiffs dispute, the Court disagrees with Defendants. Defendants' argument reflects the same misunderstanding of Plaintiffs' claims that the Court addressed in its standing analysis. See supra, Discussion, I. As explained by the Magistrate Judge in Knight, "it is of no matter that Plaintiff elected not to participate in the Plan's tobacco counseling program, and thus did not allege a personal medical condition, because Plaintiff has plausibly . . . alleged that the tobacco cessation wellness program . . . falls short of ERISA and both the PHSA and the DOL's 2013 regulations." Knight., No. 6:25-cv-00263, Dkt. # 52 at *14. The same logic applies here. Plaintiffs' claim does not depend on whether or not they were even eligible to participate in the cessation program; rather, the question is whether the cessation program is non-compliant, thereby rendering the surcharge Plaintiffs paid unlawful. Accordingly, they were not required to allege medical hardship, and failure to do so does not warrant dismissal of their unlawful surcharge claim.

For all the foregoing reasons, the Court rejects Defendants' arguments that ERISA and its implementing regulations do not require retroactive rebates of tobacco surcharges.  Because retroactive reimbursement is required, Plaintiffs have plausibly alleged that Defendants violated 29 U.S.C. § 1182 by charging Plan participants a tobacco surcharge in the absence of a compliant wellness program. The Court therefore **DENIES** Defendants' Motion as to Count I.

III.    Count II – Breach of Fiduciary Duty

In Count II, Plaintiffs allege that Defendants breached their fiduciary duties to Plan participants in violation of 29 U.S.C. §§ 1104 and 1106.  (Dkt. # 1 at ¶¶ 55–67.)  Plaintiffs assert breaches by both Whole Foods and the Committee. Plaintiffs allege that both Defendants breached their fiduciary duties by (1) prioritizing their own financial interest over the interests of Plan participants; (2) failing to properly disclose material information about the wellness program to participants; (3) administering a Plan that does not conform with ERISA's anti-discriminatory provisions; (4) acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of participants; and (5) failing to act prudently and diligently to ensure program compliance.  (Id. at ¶¶ 62, 65.) Plaintiffs also allege that the Committee specifically breached its duties by administering a program that disproportionately benefited Whole Foods at the expense of Plan participants and failing to act solely in the interest of participants

32

and beneficiaries.  (Id. at ¶ 62.)  And Plaintiffs allege that Whole Foods breached

its duties by (1) failing to adequately monitor the Committee; (2) causing the Plan

to engage in transactions that constituted a direct or indirect exchange of Plan

assets for the benefit of a party in interest; and (3) dealing with Plan assets for its

own benefit.  (Id. at ¶¶ 61, 63–64.)  Plaintiffs bring this cause of action pursuant to

29 U.S.C. § 1132(a)(2).  (Id. at ¶ 67.)

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides that "[a] civil

action may be brought . . . by the Secretary, or by a participant, beneficiary or

fiduciary for appropriate relief under section 1109 of this title."  Under ERISA

§ 409(a), 29 U.S.C. § 1109(a):

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this subchapter shall be personally liable to make good
> to such plan any losses to the plan resulting from each such breach,
> and to restore to such plan any profits of such fiduciary which have
> been made through use of assets of the plan by the fiduciary . . .

It is undisputed that the Plan is an employee benefit plan subject to

ERISA regulations.  However, Defendants argue that Count II of Plaintiffs'

Complaint must be dismissed because (1) Plaintiffs do not allege qualifying

fiduciary acts or prohibited transactions, and (2) Plaintiffs do not allege a loss to

the plan, which Defendants argue is required to state a claim under § 1132(a)(2).

(Dkt. # 23 at 21–23.)  The Court will address each of Defendants' arguments

before addressing whether Plaintiffs have sufficiently alleged that Defendants

breached a duty under ERISA.

I.    Fiduciary Act or Prohibited Transaction

Under ERISA, "[a] person assumes fiduciary status in three ways:"

(1) "as a named fiduciary in the instrument establishing the employee benefit plan,

ERISA §§ 402(a)(1)–(2), 29 U.S.C. §§ 1102(a)(1)–(2);" (2) "by becoming a named

fiduciary pursuant to a procedure specified in the plan instrument, ERISA

§ 402(a)(2), 29 U.S.C. § 1102(a)(2);" and (3) "as a 'functional fiduciary' under the

broad authority, control, or advice provisions of ERISA § 3(21)(A), 29 U.S.C.

§ 1002(21)(A)."  Perez v. Bruister, 823 F.3d 250, 259 (5th Cir. 2016).  However,

the Supreme Court has made clear that, because ERISA does not prevent persons

with "conflicting loyalties" from serving as a fiduciary of the plan, a person is

subject to fiduciary duties under ERISA only "to the extent that he performs

fiduciary functions as identified by Congress."  Perez, 823 F.3d at 259 (internal

quotations and citation omitted).  "Fiduciary duties may . . . arise either from the

terms of the governing plan or from acts and practices in carrying it out."

Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 251 (5th Cir. 2008).

As such, "in every case charging breach of ERISA fiduciary duty . . .

the threshold question is . . . whether that person was acting as a fiduciary . . .

when taking the action subject to complaint."  Pegram v. Herdrich, 530 U.S. 211,

226 (2000).  ERISA explains that a person operates as a fiduciary "to the extent . . .

he exercises any discretionary authority or discretionary control respecting

management of such plan or exercises any authority or control respecting

management or disposition of its assets, . . . or . . . he has any discretionary

authority or discretionary responsibility in the administration of such plan."  29

U.S.C. § 1002(21)(A).

      "By the very nature of the position, a plan administrator is a fiduciary

with respect to [its] own policy."  Bokma, 783 F. Supp. 3d at 898; see Pegram, 530

U.S. at 222 ("A fiduciary within the meaning of ERISA must be someone acting in

the capacity of manager, administrator, or financial adviser to a 'plan[.]'"); 29

U.S.C. § 1002(21)(A).  In addition, an employer who sponsors a plan subject to

ERISA may also serve as fiduciary of that plan.  Bergeron v. Ochsner Health Sys.,

No. CV 17-519, 2017 WL 3648451, at *6 (E.D. La. Aug. 24, 2017) (citing

Kirschbaum, 526 F.3d at 248).

      Plaintiffs allege that the Committee is a named fiduciary under the

Plan, (Dkt. # 1 at ¶ 12), and the record reflects that the Committee is the Plan

Administrator, (Dkt. # 23 at Ex. A, 32).[9]  The record also reflects that Whole Foods

is the employer-sponsor of the Plan.  (Dkt. # 23 at Ex. A, 32.)  In their Complaint,

---

[9] As explained further above, the Court can properly consider Defendants' Exhibit
A, the 2022 Summary Plan Description.

Plaintiffs allege that, each year, "the Committee administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its wellness programs[.]" (Dkt. # 1 at ¶ 58.) Specifically, the Committee exercised discretionary authority by administering and implementing the unlawful wellness program and by controlling and disseminating the contents of the Summary Plan Description ("SPD") and Benefits Guides. (Id. at ¶¶ 58–59.) Plaintiffs further allege that Whole Foods, as a fiduciary of the Plan who appointed another fiduciary, the Committee, breached its fiduciary duties to supervise and monitor the Committee. (Id. at ¶ 61.) And Plaintiffs allege that both the Committee and Whole Foods breached fiduciary duties in their actions administering and managing the Plan. (Id. at ¶¶ 55–67.)

Defendants contend that Plaintiffs' Complaint targets the design of the tobacco wellness program, and as the design of a Plan is not a fiduciary act or prohibited transaction, Defendants' alleged actions fall outside the reach of 29 U.S.C. §§ 1104 and 1106. (Dkt. # 23 at 21–22.) Furthermore, implementing the Plan in accordance with the Plans terms does not implicate §§ 1104 or 1106 because it does not involve the exercise of any discretionary authority. (Id.; Dkt. # 28 at 9–10.) Therefore, because Plaintiffs' allegations are "settlor functions that

are immune from ERISA's fiduciary duties," Plaintiffs' fiduciary breach claims must be dismissed.  (Dkt. # 28 at 9.)

Decisions regarding the form or structure of a plan do not amount to fiduciary acts under ERISA.  Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999).  These decisions include ones such as "such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."  Id.  Additionally, decisions to modify, amend, or terminate the plan are settlor responsibilities rather than fiduciary ones.  Id. at 445; Kirschbaum, 526 F.3d at 251.

Upon its review of the Complaint, the Court finds that at this stage, Plaintiffs have sufficiently alleged that Defendants acted as ERISA fiduciaries when taking the challenged actions.  While the Court has doubts that merely administering the Plan in accordance with its terms, even when those terms violate ERISA, qualifies as a fiduciary act,[10] the Court does not reach this question

---

[10] Several courts have discussed this question extensively.  See Sec'y of Lab. v. Macy's, Inc., No. 1:17-CV-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021); Waggoner, No. 24-cv-2217, Dkt. # 27 at *52–68; Bailey, 2025 WL 2779899, at *21; Bokma, 783 F. Supp. 3d at 899.  Like the Waggoner and Bailey courts, this Court finds Macy's persuasive and largely agrees with the analysis in that case.  Waggoner, No. 24-cv-2217, Dkt. # 27 at *64–65.  Namely, the Court agrees with the Macy's court that "the distinction between creation (a settlor function) and implementation (a fiduciary function) is illusory where the [plaintiff] alleges . . . that a discriminatory wellness program was implemented as created."  The statutory language makes clear that a fiduciary act is implicated only when the person exercises "discretionary authority" 29 U.S.C. § 1002(21)(A) (emphasis

because Plaintiffs' statements go beyond this type of allegation. Plaintiffs allege that Defendants deposit the surcharge amounts directly into Whole Foods' general accounts instead of placing them in a trust account for the Plan. (Dkt. # 1 at ¶ 34.) They assert that by retaining these funds, Whole Foods earns interest on the withheld surcharges and reduces its own financial contributions to the Plan. (Id. at ¶ 35.) These actions, Plaintiffs allege, constitute self-dealing and violate the requirement that Plan assets be managed exclusively in the interest of participants and beneficiaries. (Id.) Plaintiffs further assert that Defendants failed "to properly disclose material information about the wellness program to participants, thereby misleading or depriving them of the ability to make informed decision [sic] [.]" (Id. at ¶ 65.) Specifically, Plaintiffs allege that Defendants failed to disclose a reasonable alternative standard, failed to disclose contact information and detailed

---

added). As the Waggoner court explained, "simply administering a plan according to its terms, when the *terms themselves* are the basis for claimed breach of fiduciary duty, does not implicate . . . discretionary authority or control[.]" Waggoner, No. 24-cv-2217, Dkt. # 27 at *64–65 (emphasis in original). However, "the Supreme Court has recognized that when a fiduciary's duty—such as the duty of prudence—conflicts with the terms of a plan document, 'the duty of prudence trumps the instructions of a plan document[,]' and thus a plaintiff can still carry their burden to demonstrate a breach of fiduciary duty by showing the defendant 'failed to act with the requisite duty of care.'" Waggoner, No. 24-cv-2217, Dkt. # 27 at *65 (quoting Urlaub v. CITGO Petroleum Corp., 750 F.Supp.3d 863, 876 (N.D. Ill. 2024), citing Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 421 (2014)). As a result, like the Waggoner court, "the relatively absolutist line taken by the Macy's court in this respect does give the court pause[.]" No. 24-cv-2217, Dkt. # 27 at *65. Regardless, the Court does not reach a decision on this question because it finds that that Plaintiff has sufficiently alleged other fiduciary acts.

guidance on how to participate in the alternative program, and failed to disclose any mention that participants' physicians' recommendations will be accommodated.  (Id. at ¶ 32.)  Additionally, Plaintiffs assert that Whole Foods breached its duties by failing to supervise and monitor the Committee and by failing "to monitor the frequency with which the Committee reviewed the terms of the wellness program to ensure compliance with ERISA."  (Id. at ¶ 61.)  The Court finds these allegations pertain to discretionary decisions regarding management of the Plan, discretionary decisions regarding management of the Plan's assets, and discretionary responsibilities in the administration of the Plan.  29 U.S.C. § 1002(21)(A); see Bokma, 783 F. Supp. 3d at 899–900; Waggoner, No. 24-cv-2217, Dkt. # 27 at *65–68.  The Court therefore concludes that Plaintiffs have adequately alleged fiduciary acts.  Pegram, 530 U.S. at 226.

## II.    Loss to the Plan

Next, Defendants assert that ERISA § 502(a)(2) does not provide a remedy where the Plan itself did not suffer a loss.  (Dkt. # 23 at 22.)  Therefore, because Plaintiffs fail to allege a loss to the Plan, their fiduciary breach claims under this section must be dismissed.  (Id. at 23.)  Plaintiffs dispute whether a loss to the Plan is required.  (Dkt. # 26 at 23.)  But, Plaintiffs argue, if loss to the Plan is a necessary element of a § 502(a)(2) claim, they have alleged cognizable losses to the Plan in their Complaint.  (Id.)

To begin with, the Court determines that, under Supreme Court and Fifth Circuit precedent, claims brought pursuant to 29 U.S.C. § 1132(a)(2) *do* require the plaintiff to show loss to the plan.  LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 (2008) (emphasizing that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries"); Schweitzer, 960 F.3d at 194 ("To state a claim under this section, a plaintiff must plausibly allege that a fiduciary breached one of these duties, *causing a loss to the employee benefit plan*." (emphasis added)); McDonald v. Provident Indem. Life Ins. Co., 60 F.3d 234, 237 (5th Cir. 1995); see 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan . . . shall be personally liable to make good to such plan *any losses to the plan* resulting from each such breach, and to restore to such plan *any profits of such fiduciary which have been made through use of assets of the plan* by the fiduciary[.]" (emphasis added)).  The Supreme Court has further clarified that § 502(a)(2) also "encompasses appropriate claims for 'lost profits.'" LaRue, 522 U.S. at 253, n.4 (providing an example under the common law of trusts, which "informs [the] interpretation of ERISA's fiduciary duties," where a trustee would be liable for "any profit which would have accrued to the trust estate if there had been no breach"); see 29 U.S.C. § 1109(a).  Accordingly, to sufficiently state a claim under § 502(a)(2), Plaintiffs must have alleged a loss or harm to the Plan itself.

Here, Plaintiffs allege that Defendants withhold the surcharge amounts from participants' paychecks and deposit them into Whole Foods' general accounts instead of placing them in a trust account for the Plan. (Dkt. # 1 at ¶ 34.) Plaintiffs allege that by holding these funds in their own accounts, Whole Foods earns interest on the withheld surcharges. (Id. at ¶ 35.) And in their prayer for relief, Plaintiffs request disgorgement of any benefits or profits received by Defendants as well as payment to the Plan. (Id. at 21–22.) Viewing the facts in the light most favorable to the Plaintiffs, the Court determines that these allegations, while on the line, are adequate at this stage of the case. See Bailey, 2025 WL 2779899, at *20 (holding that allegations that the defendant commingled the funds with its own and enriched itself at the expense of the plan sufficiently pleaded harm to the plan where the plaintiff sought remedies that would rectify that harm); Mehlberg, 2025 WL 1260700, at *7 (finding an allegation that the defendant kept the tobacco surcharge instead of depositing into the plan to be sufficient at the motion to dismiss stage); Waggoner, No. 24-cv-2217, Dkt. # 27 at *66–68 (holding that an allegation that the defendant retained the amounts collected as part of its own assets instead of placing the funds into a trust account to adequately show loss to the plan at the motion to dismiss stage); Knight., No. 6:25-cv-00263, Dkt. # 52 at *14 (determining that plaintiff's allegations that the defendant deposited the tobacco surcharges into its general accounts as opposed to a trust account

sufficiently stated loss of profit to the plan); cf. Chirinian, 2025 WL 2147271, at
*12 (finding no loss to the plan and distinguishing the plaintiff's allegations from
that of Mehlberg where the plaintiff alleged that the surcharges were deposited into
the plan's trust rather than the defendant's accounts); Chorosevic v. MetLife
Choices, No. 4:05-CV-2394 CAS, 2008 WL 11452579, at *3–4 (E.D. Mo. Apr. 28,
2008) (noting that harm to plan assets is an element of a prima facie case under
§ 502(a)(2) and concluding that the plaintiffs did not allege any ill-gotten profits
obtained through misuse of plan assets); see also In re Nighthawk Oilfield Servs.
Ltd., No. BR 09-34992, 2012 WL 13156742, at *3 (S.D. Tex. Mar. 23, 2012) ("The
term 'plan assets' has been understood by the Fifth Circuit to include 'employee
contributions to benefit plans which are withheld from employees' paychecks and
for deposit into their benefit plans, even though the contributions have not actually
been delivered to the benefit plan.'" (quoting Bannister v. Ullman, 287 F.3d 394,
402 (5th Cir. 2002))).

However, the Court acknowledges that all the facts are not currently
before it.  Defendants' arguments and authority cited are well-taken and may be re-
raised at a later stage when the record can be further developed "and when the
applicable procedural rules permit a more fulsome and searching analysis."
Waggoner, No. 24-cv-2217, Dkt. # 27 at *68 (citing Giese v. Boyce, No. 19-CV-

1245, 2020 WL 12812484 (C.D. Ill. Nov. 2, 2020)).  The Court may ultimately be persuaded to reach a different conclusion.

III.    Breach

Section 1104(a) requires that "a fiduciary . . . discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  It also requires that the fiduciary discharge his duties: (1) "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;" (2) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;" (3) "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so;" and (4) " in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III."  Id.

Section 1106 prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . sale or exchange . . . of any property between the plan and a party in interest . . . [or] transfer to, or use by or for the benefit of a party in

43

interest, or any assets of the plan[.]"  ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1).

The same section also bars a fiduciary from (1) "deal[ing] with the assets of the

plan in his own interest or for his own account; (2) in his individual or in any other

capacity act[ing] in any transaction involving the plan on behalf of a party (or

represent a party) whose interests are adverse to the interests of the plan or the

interests of its participants or beneficiaries;" or (3) "receiv[ing] any consideration

for his own personal account from any party dealing with such plan in connection

with a transaction involving the assets of the plan."  Id. at § 1106(b).

      As discussed above, Plaintiffs have alleged that Defendants retained

the amounts collected from Plan participants in Whole Foods' general accounts

rather than place the funds in a trust account.  (Dkt. # 1 at ¶ 34.)  Plaintiffs have

also alleged that Defendants failed "to properly disclose material information about

the wellness program to participants, thereby misleading or depriving them of the

ability to make informed decision[.]"  (Id. at ¶ 65.)  And, Plaintiffs have alleged

that Whole Foods breached its fiduciary duties by failing to supervise and monitor

the Committee and by failing "to monitor the frequency with which the Committee

reviewed the terms of the wellness program to ensure compliance with ERISA."

(Id. at ¶ 61.)  The Court finds that, at the motion to dismiss stage, these allegations

sufficiently allege breach of a fiduciary duty and prohibited transactions in

violation of 29 U.S.C. §§ 1104 and 1106.  Accordingly, the Court **DENIES**

Defendants' Motion as to Count II.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to

Dismiss Plaintiffs' Complaint.  (Dkt. # 23)

**IT IS SO ORDERED.**

**DATED**: Austin, TX, January 19, 2026.

_____

David Alan Ezra
Senior United States District Judge